**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MADELINE KANE, MARISSA SEPULVEDA AND CATHERINE ANN CAPPELLO, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. _____ |
| v. | ) ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) ) ) | |
| Defendant. | ) ) | |

## <u>NOTICE OF REMOVAL</u>

Loyola University of Chicago ("Loyola"),[1] by its undersigned attorneys, and pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, hereby removes this action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois. In support thereof, Loyola states as follows:

1.     On September 21, 2022, Plaintiffs Madeline Kane, Marissa Sepulveda and Catherine Ann Cappello ("Plaintiffs") filed a complaint against Loyola alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*. ("Title IX") and the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/20, common-law negligence, and other related state-law claims. Plaintiffs' Complaint, captioned *Madeline Kane, Marissa Sepulveda and Catherine Ann Cappello v. Loyola University Chicago*, Case No. 2022 L 08503, was filed in the Circuit Court of Cook County, Illinois, County Department – Law Division (the "State Court Action").

---

[1]     Incorrectly identified in the Complaint as "Loyola University Chicago."

2.      Plaintiffs served Loyola with the Complaint and Summons in this action on October 21, 2022. *See* **Exhibit A**, Sheriff's Office of Cook County, Affidavit of Service (obtained from the Clerk of the Circuit Court of Cook County on-line portal).

3.      Pursuant to 28 U.S.C. § 1446(b)(1), if the grounds for removal are apparent on the face of the initial pleading, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."

4.      Loyola timely files this Notice of Removal on November 18, 2022, 28 days after service of the Complaint and Summons.

5.      Loyola has not filed an answer or any other pleading or motion responsive to the Complaint in the State Action.

6.      This notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure as required by 28 U.S.C. § 1446(a).

## BASIS FOR REMOVAL

7.      Plaintiffs' Complaint alleges that they bring this action based, in part, on purported violations of the Title IX.  Each of the three named Plaintiffs purports to bring a claim under Title IX.

8.      Loyola removes to this Court, which has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 by virtue of the federal question raise in Plaintiffs' Title IX claims.

9. Plaintiffs' Complaint in the State Court Action further alleges purported violations of the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/20 (Count II) and claims of negligence (Count III), negligent training/supervision/retention (Count IV), gross negligence (Count V), breach of fiduciary duty (Count VI), premises liability (Count VII), and fraud (Count VIII).

10. Plaintiffs' state law claims form part of the same case or controversy as Plaintiffs' Title IX claim. Accordingly, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 by virtue of their purported relatedness to Plaintiffs' Title IX claims, over which this Court has original jurisdiction, and 28 U.S.C. § 1441(c).

11. Loyola is the sole defendant in the State Court Action and, therefore, no consent for removal is required from any other defendant.

## VENUE AND PROCEDURAL STEPS

12. The United States District Court for the Northern District of Illinois is the appropriate venue for removal of the State Court Action. Under 28 U.S.C. §1441, a civil action brought in any state court in which the district courts of the United States have original jurisdiction is to be removed to the district court for the district and division embracing the place where the state court action is pending. The State Court Action was filed in the Circuit Court of Cook County, Illinois, which is located in this judicial district.

13. As required by 28 U.S.C. §1446(a), a copy of the Summons, Complaint and Jury Demand is attached hereto as **Exhibit B.** These documents constitute all pleadings, process and other orders served upon Loyola in this action. Also included as **Exhibit C** is a copy of the docket report for the State Court Action (obtained from the Clerk of the Circuit Court of Cook County on-line portal).

14.    As required by 28 U.S.C. §1446(d), written notice of this Notice of Removal will be sent promptly to Plaintiffs' counsel by email and U.S. Mail, and promptly filed with the Clerk of the Circuit Court of Cook County.

15.    By filing this Notice of Removal, Loyola does not waive any rights or defenses to the claims Plaintiffs assert, including that Plaintiffs have not pleaded a claim upon which relief can be granted.

WHEREFORE Loyola University of Chicago removes the above-captioned action now pending against it in the Circuit Court of Cook County to the United States District Court for the Northern District of Illinois, wherein it shall proceed as an action originally commenced therein.


Dated: November 18, 2022                    Respectfully submitted,

                                    By:    **LOYOLA UNIVERSITY OF CHICAGO**

                                           /s/  Patrick J. Rocks
                                           One of Its Attorneys


Patrick J. Rocks
Kirsten A. Milton
Julia S. Wolf
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illlinois  60601
Tel.: 312.787.4949
Patrick.Rocks@jacksonlewis.com
Kirsten.Milton@jacksonlewis.com
Julia.Wolf@jacksonlewis.com

## **CERTIFICATE OF SERVICE**

I, Patrick J. Rocks, an attorney, certify that on November 18, 2022, I caused a true and correct copy of the attached *Notice of Removal* to be served on the following counsel of record for Plaintiffs by email and regular mail at the following addresses:

Elizabeth Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
beth@feganscott.com


Ashley M. Pileika
Darren Wolf
Law Office of Darren Wolf, P.C.
1701 N. Market St., Suite 210 Dallas, Texas 75202
ashley@darrenwolf.com
darren@darrenwolf.com


/s/ Patrick J. Rocks

# EXHIBIT A



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2022L008503 **SHERIFF NUMBER:** 50212548 **MULT. SER.:** 1 **DOC. TYPE:** LAW

**DIE DATE:** 10/25/2022 **RECEIVED DATE:** 09/27/2022 **FILED DATE:** 09/26/2022 **DIST:** 611

| | |
|---|---|
| **DEFENDANT:** LOYOLA UNIVERSITY CHICAGO | **PLAINTIFF:** KANE, MADELINE |
| **ADDRESS:** 820 N Michigan | **ATTORNEY:** FEGAN SCOTT LLC |
| **CITY:** Chicago | **ADDRESS:** 820 S Wacker Dr |
| **STATE:** IL **ZIP CODE:** 60611 | **CITY:** CHICAGO |
| **ATTACHED FEE AMT:** | **STATE:** IL **ZIP CODE:** 60606 |
| **SERVICE INFORMATION:** R/A: Pamela G. Costas | |

**I CERTIFY THAT I SERVED THE DEFENDANT/RESPONDENT AS FOLLOWS:**

☐ **(1) PERSONAL SERVICE:** BY LEAVING A COPY OF THE WRIT/ORDER WITH THE DEFENDANT/RESPONDENT PERSONALLY, AND INFORMING DEFENDANT/RESPONDENT OF CONTENTS.

☐ **(2) SUBSTITUTE SERVICE:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT AT THE DEFENDANT'S USUAL PLACE OF ABODE WITH A FAMILY MEMBER OR PERSON RESIDING THERE, 13 YEARS OR OLDER, AND INFORMING THAT PERSON OF THE CONTENTS OF THE SUMMONS. ALSO, A COPY OF THE SUMMONS WAS MAILED TO THE DEFENDANT AT HIS OR HER USUAL PLACE OF ABODE ON THE DAY OF _ 20.

☐ **(3) UNKNOWN OCCUPANTS:** BY LEAVING A COPY OF THE SUMMONS AND COMPLAINT NAMING "UNKNOWN OCCUPANTS" WITH A PERSON OF THE AGE OF 13 OR UPWARDS OCCUPYING SAID PREMISE.

☑ **(4) CORP/CO/BUS/PART:** BY LEAVING THE APPROPRIATE NUMBER OF COPIES OF THE SUMMONS, COMPLAINTS, INTERROGATORIES, JUDGMENTS, CERTIFICATIONS AND NOTICES WITH THE REGISTERED AGENT, AUTHORIZED PERSON OR PARTNER OF THE DEFENDANT CORPORATION ____COMPANY____BUSINESS _____ PARTNERSHIP ___

☐ **(5) PROPERTY RECOVERED:** NO ONE PRESENT TO RECEIVE ORDER OF COURT. ORDER POSTED IN PLAIN VIEW.

☐ **(6) S.O.S/D.O.I.:** BY LEAVING THE SUMMONS AND COMPLAINT WITH THE SECRETARY OF THE STATE/DIRECTOR OF INSURANCE OF THE STATE OF ILLINOIS, AN AGENT OF SAID DEFENDANT LISTED ABOVE. ANY AGENT OF SAID CORPORATION NOT FOUND IN THE COUNTY OF COOK.

☐ **(7) CERTIFIED MAIL**

**\*\*\*\* COMPLETE THIS SECTION IF WRIT IS A THIRD PARTY CITATION/GARNISHMENT \*\*\*\***

☐ **(8)** AND BY MAILING ON THE ___ DAY OF _____ 20 _____ A COPY OF THE THIRD PARTY GARNISHMENT/CITATON SUMMONS AND NOTICE TO THE JUDGMENT DEBTOR'S LAST KNOWN ADDRESS AS INDICATED IN THE NOTICE WITHIN (2) BUSINESS DAYS OF SERVICE UPON GARNISHEE/THIRD PARTY DEFENDANT.

**THE NAMED DEFENDANT WAS NOT SERVED FOR THE GIVEN REASON BELOW:**

| | | | | | |
|---|---|---|---|---|---|
| ☐ | (01) NO CONTACT | ☐ | (05) WRONG ADDRESS | ☐ | (09) DECEASED |
| ☐ | (02) MOVED | ☐ | (06) NO SUCH ADDRESS | ☐ | (10) NO REGISTED AGENT |
| ☐ | (03) EMPTY LOT | ☐ | (07) EMPLOYER REFUSAL | ☐ | (11) OUT OF COOK COUNTY |
| ☐ | (04) NOT LISTED | ☐ | (08) CANCELLED BY PLAINTIFF ATTY | ☐ | (12) OTHER REASON (EXPLAIN) |

**EXPLANATION:**

WRIT SERVED ON: KATHERINE KENNY    Error: Subreport could not be shown.

SEX: F RACE: WH AGE: 40

THIS 21 DAY OF Octobe 20 22
r

TIME: 1:13 PM

THOMAS J. DART,

SHERIFF, BY: /S/ HALL, JOSEPH #11158 , DEPUTY



**SHERIFF'S OFFICE OF COOK COUNTY**
**AFFIDAVIT OF SERVICE**

**CASE NUMBER:** 2022L008503 **SHERIFF NUMBER:** 50212548 **MULT. SER.:** 1 **DOC. TYPE:** LAW

**DIE DATE:** 10/25/2022 **RECEIVED DATE:** 09/27/2022 **FILED DATE:** 09/26/2022 **DIST:** 611

Error: Subreport could not be shown.

# EXHIBIT B

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, E

This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.

| STATE OF ILLINOIS, CIRCUIT COURT | SUMMONS | * 5 0 2 1 2 5 4 8 * |
|---|---|---|

Cook _____ COUNTY

For Court Use Only

FILED
9/26/2022 10:59 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L008503
Calendar, E
19633261

FILED DATE: 9/26/2022 10:59 AM   2022L008503

| Instructions ▾ | |
|---|---|
| Enter above the county name where the case was filed. | MADELINE KANE, MARISSA SEPULVEDA, and CATHERINE ANN CAPPELLO **Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | v. |
| Enter the names of all people you are suing as Defendants/ Respondents. | LOYOLA UNIVERSITY CHICAGO **Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

2022L008503
**Case Number**

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.

E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.

Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.

If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1. Defendant/Respondent's address and service information:** |
|---|---|

   a. Defendant/Respondent's primary address/information for service:

      Name *(First, Middle, Last):*  Loyola University Chicago

      Registered Agent's name, if any:  Pamela G. Costas

      Street Address, Unit #:  820 N. Michigan Ave.

      City, State, ZIP:  Chicago, IL  60611

      Telephone: _____  Email: _____

In **1b**, enter a second address for Defendant/ Respondent, if you have one.

   b. If you have more than one address where Defendant/Respondent might be found, list that here:

      Name *(First, Middle, Last):* _____

      Street Address, Unit #: _____

      City, State, ZIP: _____

      Telephone: _____  Email: _____

In **1c**, check how you are sending your documents to Defendant/ Respondent.

   c. Method of service on Defendant/Respondent:

      ☑ Sheriff    ☐ Sheriff outside Illinois: _____
                                         *County & State*

      ☐ Special process server    ☐ Licensed private detective

Enter the Case Number given by the Circuit Clerk: 2022 ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

\* 5 0 2 1 2 5 4 8 \*

FILED DATE: 9/26/2022 10:59 AM    2022L008503

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed: $ _____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*:   Elizabeth A. Fegan<br>Street Address, Unit #:   150 S. Wacker Dr., 24th Floor<br>City, State, ZIP:   Chicago, IL  60606<br>Telephone:   (312) 741-1019      Email:   beth@feganscott.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this Summons (Defendant):**<br>☑ a.   To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served *(not counting the day of service)* by e-filing or at:<br>Address:   Richard J. Daley Center, 50 W. Washington St.<br>City, State, ZIP:   Chicago, IL  60602 |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response*. | ☐ b.   Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>　　　*Date*　　　　　　　　*Time*　　　　　　　　　　　　　　*Courtroom*<br>**In-person at:** |
| In **4b**, fill out:<br>• The court date and time the clerk gave you.<br>• The courtroom and address of the court building.<br>• The call-in or video information for remote appearances (if applicable).<br>• The clerk's phone number and website. All of this information is available from the Circuit Clerk. | _____<br>*Courthouse Address*　　　*City*　　　　　　*State*　　　*ZIP*<br>**OR**<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>By telephone: _____<br>　　　　　　　　*Call-in number for telephone remote appearance*<br>By video conference: _____<br>　　　　　　　　*Video conference website*<br><br>_____<br>*Video conference log-in information (meeting ID, password, etc.)*<br><br>Call the Circuit Clerk at: _____ or visit their website<br>　　　　　　　　*Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>　　*Website* |

9/26/2022 10:59 AM IRIS Y. MARTINEZ

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | *Seal of Court*<br><br>**Witness this Date:** _____<br><br>**Clerk of the Court:** _____ |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

This form is approved by the Illinois Supreme Court and is required to be accepted in all [barcode]

FILED DATE: 9/26/2022 10:59 AM 2022L008503

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook _____ COUNTY | **PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION** | *For Court Use Only*<br>\* 5 0 2 1 2 5 4 8 \* |
|---|---|---|

| **Instructions** | |
|---|---|
| Enter above the county name where the case was filed. | MADELINE KANE, MARISSA SEPULVEDA, and CATHERINE ANN CAPPELLO,<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>LOYOLA UNIVERSITY CHICAGO<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

2022L008503
**Case Number**

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

My name is _____ and I state
      *First, Middle, Last*

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent
_____ **as follows:**
*First, Middle, Last*

    ☐ Personally on the Defendant/Respondent:
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____

    ☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family
    member or lives there:
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address, Unit#: _____
    City, State, ZIP: _____
    And left it with: _____
                 *First, Middle, Last*
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    and by sending a copy to this defendant in a postage-paid, sealed envelope to the
    above address on _____ , 20 _____ .
    ☐ On the Corporation's agent, _____
                     *First, Middle, Last*
    Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
    On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
    Address: _____
    City, State, ZIP: _____

Enter the Case Number given by the Circuit Clerk: 2022_____

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

* 5 0 2 1 2 5 4 8 *

_____
*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

**By:** _____

FEES
Service and Return: $ _____
Miles _____ $ _____
Total $ 0.00 _____

*Signature by:* ☐ Sheriff
☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 9/26/2022 10:59 AM  2022L008503

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, E

This form is approved by the Illinois Supreme Court and is required to be accepted in all ||||||||||||||||||||||||||||||||||||

STATE OF ILLINOIS,
CIRCUIT COURT

**SUMMONS**

Cook COUNTY

For Court Use Only

\* 5 0 2 1 2 5 4 8 \*

FILED
9/26/2022 10:59 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L008503
Calendar, E
19633261

| **Instructions ▼** | |
|---|---|
| Enter above the county name where the case was filed. | MADELINE KANE, MARISSA SEPULVEDA, and CATHERINE ANN CAPPELLO<br>**Plaintiff / Petitioner** *(First, middle, last name)* |
| Enter your name as Plaintiff/Petitioner. | |
| Enter the names of all people you are suing as Defendants/Respondents. | v.<br><br>LOYOLA UNIVERSITY CHICAGO<br>**Defendant / Respondent** *(First, middle, last name)* |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* |

2022L008503
**Case Number**

| **IMPORTANT INFORMATION:** | There may be court fees to start or respond to a case. If you are unable to pay your court fees, you can apply for a fee waiver. You can find the fee waiver application at: illinoiscourts.gov/documents-and-forms/approved-forms/.<br><br>E-filing is now mandatory with limited exemptions. To e-file, you must first create an account with an e-filing service provider. Visit efile.illinoiscourts.gov/service-providers.htm to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit illinoislegalaid.org.<br><br>Call or text Illinois Court Help at 833-411-1121 for information about how to go to court including how to fill out and file forms. You can also get free legal information and legal referrals at illinoislegalaid.org. |
|---|---|
| **Plaintiff/Petitioner:** | Do not use this form in an eviction, small claims, detinue, divorce, or replevin case. Use the *Eviction Summons, Small Claims Summons, or Summons Petition for Dissolution of Marriage / Civil Union* available at illinoiscourts.gov/documents-and-forms/approved-forms. If your case is a detinue or replevin, visit illinoislegalaid.org for help.<br><br>If you are suing more than 1 Defendant/Respondent, fill out a *Summons* form for each Defendant/Respondent. |

| | |
|---|---|
| In **1a**, enter the name and address of a Defendant/ Respondent. If you are serving a Registered Agent, include the Registered Agent's name and address here. | **1.** **Defendant/Respondent's address and service information:**<br>a. Defendant/Respondent's primary address/information for service:<br>Name *(First, Middle, Last)*:  Loyola University Chicago<br>Registered Agent's name, if any:  Pamela G. Costas<br>Street Address, Unit #:  820 N. Michigan Ave.<br>City, State, ZIP:  Chicago, IL  60611<br>Telephone: _____  Email: _____ |
| In **1b**, enter a second address for Defendant/ Respondent, if you have one. | b. If you have more than one address where Defendant/Respondent might be found, list that here:<br>Name *(First, Middle, Last)*: _____<br>Street Address, Unit #: _____<br>City, State, ZIP: _____<br>Telephone: _____  Email: _____ |
| In **1c**, check how you are sending your documents to Defendant/ Respondent. | c. Method of service on Defendant/Respondent:<br>☑ Sheriff       ☐ Sheriff outside Illinois: _____<br>                                                        *County & State*<br>☐ Special process server     ☐ Licensed private detective |

SU-S 1503.2

(06/21)

FILED DATE: 9/26/2022 10:59 AM   2022L008503

Enter the Case Number given by the Circuit Clerk: 2022 ‖‖‖‖‖‖‖

\* 5 0 2 1 2 5 4 8 \*

| | |
|---|---|
| In **2**, enter the amount of money owed to you. | **2.** **Information about the lawsuit:**<br>Amount claimed: $ _____ |
| In **3**, enter your complete address, telephone number, and email address, if you have one. | **3.** **Contact information for the Plaintiff/Petitioner:**<br>Name *(First, Middle, Last)*: Elizabeth A. Fegan<br>Street Address, Unit #: 150 S. Wacker Dr., 24th Floor<br>City, State, ZIP: Chicago, IL 60606<br>Telephone: (312) 741-1019    Email: beth@feganscott.com |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

| | |
|---|---|
| **Important information for the person getting this form** | You have been sued. Read all of the documents attached to this *Summons*.<br>To participate in the case, you must follow the instructions listed below. If you do not, the court may decide the case without hearing from you and you could lose the case. *Appearance* and *Answer/Response* forms can be found at: illinoiscourts.gov/documents-and-forms/approved-forms/. |

| | |
|---|---|
| Check **4a** or **4b**. If Defendant/Respondent only needs to file an *Appearance* and *Answer/Response* within 30 days, check box **4a**. Otherwise, if the clerk gives you a court date, check box **4b**. | **4.** **Instructions for person receiving this *Summons* (Defendant):**<br>☑ **a.** To respond to this *Summons*, you must file *Appearance* and *Answer/Response* forms with the court within 30 days after you have been served (*not counting the day of service*) by e-filing or at:<br>Address: Richard J. Daley Center, 50 W. Washington St.<br>City, State, ZIP: Chicago, IL 60602 |
| In **4a**, fill out the address of the court building where the Defendant may file or e-file their *Appearance* and *Answer/ Response.* | ☐ **b.** Attend court:<br>On: _____ at _____ ☐ a.m. ☐ p.m. in _____<br>    *Date*        *Time*                 *Courtroom*<br>**In-person at:** |
| In **4b**, fill out:<br>•The court date and time the clerk gave you.<br>•The courtroom and address of the court building.<br>•The call-in or video information for remote appearances (if applicable).<br>•The clerk's phone number and website. All of this information is available from the Circuit Clerk. | _____<br>*Courthouse Address*     *City*          *State*    *ZIP*<br>OR<br>**Remotely** (You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance"):<br>By telephone: _____<br>          *Call-in number for telephone remote appearance*<br>By video conference: _____<br>           *Video conference website*<br>_____<br>*Video conference log-in information (meeting ID, password, etc.)*<br>Call the Circuit Clerk at: _____ or visit their website<br>       *Circuit Clerk's phone number*<br>at: _____ to find out more about how to do this.<br>  *Website* |

9/26/2022 10:59 AM IRIS Y. MARTINEZ

| | |
|---|---|
| **STOP!**<br>The Circuit Clerk will fill in this section. | **Witness this Date:** _____<br><br>*Seal of Court*<br>**Clerk of the Court:** _____ |
| **STOP!**<br>The officer or process server will fill in the Date of Service. | **This *Summons* must be served within 30 days of the witness date.**<br><br>Date of Service: _____<br>*(Date to be entered by an officer or process server on the copy of this Summons left with the Defendant or other person.)* |

SU-S 1503.2

Page 2 of 4

(06/21)

FILED DATE: 9/26/2022 10:59 AM 2022L008503

This form is approved by the Illinois Supreme Court and is required to be accepted in all

FILED DATE: 9/26/2022 10:59 AM 2022L008503

| STATE OF ILLINOIS, CIRCUIT COURT<br><br>Cook _____ COUNTY | PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION | *For Court Use Only*<br>* 5 0 2 1 2 5 4 8 * |
|---|---|---|

| Instructions | | |
|---|---|---|
| Enter above the county name where the case was filed. | MADELINE KANE, MARISSA SEPULVEDA, and CATHERINE ANN CAPPELLO,<br>**Plaintiff / Petitioner** *(First, middle, last name)* | |
| Enter your name as Plaintiff/Petitioner. | | |
| Enter the names of all people you are suing as Defendants/ Respondents. | v.<br><br>LOYOLA UNIVERSITY CHICAGO<br>**Defendant / Respondent** *(First, middle, last name)* | 2022L008503<br>**Case Number** |
| Enter the Case Number given by the Circuit Clerk. | ☐ **Alias Summons** *(Check this box if this is not the 1st Summons issued for this Defendant.)* | |

**\*\*Stop. Do not complete the form. The sheriff or special process server will fill in the form.\*\***

**My name is** _____ **and I state**
*First, Middle, Last*

☐ **I served the** *Summons* **and Complaint/Petition on the Defendant/Respondent**

_____ **as follows:**
*First, Middle, Last*

☐ Personally on the Defendant/Respondent:
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address, Unit#: _____
City, State, ZIP: _____

☐ On someone else at the Defendant/Respondent's home who is at least 13 years old and is a family member or lives there:
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address, Unit#: _____
City, State, ZIP: _____
And left it with: _____
*First, Middle, Last*
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
and by sending a copy to this defendant in a postage-paid, sealed envelope to the
above address on _____ , 20 _____ .

☐ On the Corporation's agent, _____
*First, Middle, Last*
Male ☐ Female ☐ Non-Binary ☐ Approx. Age: _____ Race: _____
On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
Address: _____
City, State, ZIP: _____

SU-S 1503.2         Page 3 of 4         (06/21)

Enter the Case Number given by the Circuit Clerk: 2022

* 5 0 2 1 2 5 4 8 *

☐ **I was not able to serve the *Summons* and Complaint/Petition on Defendant/Respondent:**

_____

*First, Middle, Last*

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

1. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

2. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

3. On this date: _____ at this time: _____ ☐ a.m. ☐ p.m.
   Address: _____
   City, State, ZIP: _____
   Other information about service attempt: _____
   _____
   _____
   _____

| | |
|---|---|
| **DO NOT** complete this section. The sheriff or private process server will complete it. | **If you are a special process server, sheriff outside Illinois, or licensed private detective, your signature certifies that everything on the *Proof of Service of Summons* is true and correct to the best of your knowledge. You understand that making a false statement on this form could be perjury.** |

**By:**

Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony.

_____

*Signature by:*    ☐ Sheriff
                   ☐ Sheriff outside Illinois:

_____
*County and State*
☐ Special process server
☐ Licensed private detective

**FEES**

Service and Return:    $ _____
Miles _____    $ _____
Total                  $ 0.00 _____

_____
*Print Name*

If *Summons* is served by licensed private detective or private detective agency:
License Number: _____

FILED DATE: 9/26/2022 10:59 AM    2022L008503

**12-Person Jury**

All Law Division initial Case Management Dates will be heard via Zoom on
For more information and to obtain a Zoom meeting ID, please visit http://www.cookcountycourt.org/HOME/Zoom-Links/Agg4996_SelectTab/12
Remote Court date: 12/1/2022 9:00 AM

* 5 0 2 1 2 5 4 8 *

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

FILED
9/21/2022 4:13 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022L008503
Calendar, E
19589617

MADELINE KANE, MARISSA SEPULVEDA, and CATHERINE ANN CAPPELLO

v.

LOYOLA UNIVERSITY CHICAGO

No. _____

FILED DATE: 9/21/2022 4:13 PM    2022L008503

### CIVIL ACTION COVER SHEET - CASE INITIATION

A Civil Action Cover Sheet - Case Initiation shall be filed with the
complaint in all civil actions. The information contained herein
is for administrative purposes only and cannot be introduced into
evidence. Please check the box in front of the appropriate case
type which best characterizes your action. Only one (1) case type
may be checked with this cover sheet.

Jury Demand  ☑ Yes  ☐ No

**2022L008503**

(FILE STAMP)

### PERSONAL INJURY/WRONGFUL DEATH
CASE TYPES:
- ☐ 027 Motor Vehicle
- ☐ 040 Medical Malpractice
- ☐ 047 Asbestos
- ☐ 048 Dram Shop
- ☐ 049 Product Liability
- ☐ 051 Construction Injuries
  (including Structural Work Act, Road
  Construction Injuries Act and negligence)
- ☐ 052 Railroad/FELA
- ☐ 053 Pediatric Lead Exposure
- ☑ 061 Other Personal Injury/Wrongful Death
- ☐ 063 Intentional Tort
- ☐ 064 Miscellaneous Statutory Action
  (Please Specify Below**)
- ☐ 065 Premises Liability
- ☐ 078 Fen-phen/Redux Litigation
- ☐ 199 Silicone Implant

### TAX & MISCELLANEOUS REMEDIES
CASE TYPES:
- ☐ 007 Confessions of Judgment
- ☐ 008 Replevin
- ☐ 009 Tax
- ☐ 015 Condemnation
- ☐ 017 Detinue
- ☐ 029 Unemployment Compensation
- ☐ 031 Foreign Transcript
- ☐ 036 Administrative Review Action
- ☐ 085 Petition to Register Foreign Judgment
- ☐ 099 All Other Extraordinary Remedies

### COMMERCIAL LITIGATION
CASE TYPES:
- ☐ 002 Breach of Contract
- ☐ 070 Professional Malpractice
  (other than legal or medical)
- ☐ 071 Fraud (other than legal or medical)
- ☐ 072 Consumer Fraud
- ☐ 073 Breach of Warranty
- ☐ 074 Statutory Action
  (Please specify below.**)
- ☐ 075 Other Commercial Litigation
  (Please specify below.**)
- ☐ 076 Retaliatory Discharge

### OTHER ACTIONS
CASE TYPES:
- ☐ 062 Property Damage
- ☐ 066 Legal Malpractice
- ☐ 077 Libel/Slander
- ☐ 079 Petition for Qualified Orders
- ☐ 084 Petition to Issue Subpoena
- ☐ 100 Petition for Discovery

** _____

_____

Primary Email: beth@feganscott.com

Secondary Email: info@feganscott.com

Tertiary Email: _____

By: /s/ Elizabeth A. Fegan
_____
(Attorney)          (Pro Se)

**Pro Se Only:** ☐ I have read and agree to the terms of the _Clerk's Office Electronic Notice Policy_ and choose to opt in to electronic notice
form the **Clerk's Office** for this case at this email address: _____

### IRIS Y. MARTINEZ, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS



* 5 0 2 1 2 5 4 8 *

FILED DATE: 9/21/2022 4:13 PM 2022L008503

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT – LAW DIVISION**

MADELINE KANE, MARISSA SEPULVEDA, and
CATHERINE ANN CAPPELLO,

<div align="center">Plaintiffs,</div>

v.

LOYOLA UNIVERSITY CHICAGO

<div align="center">Defendant.</div>

**COMPLAINT AND JURY DEMAND**

**2022L008503**

## NATURE OF THE CLAIM

1.      Plaintiffs, Madeline Kane ("Madeline"), Marissa Sepulveda ("Marissa"), and Catherine Ann Cappello ("Catherine Ann") bring this action against Loyola University ("Loyola" or the "University") under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. ("Title IX"); the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/20; and common-law negligence theories and other related claims.

2.      Loyola has systemically mishandled and underreported student complaints of sexual misconduct, contrary to federal and state regulations in addition to its own internal policies and procedures, dating back to at least 2011.

3.      Despite knowledge sexual assault is endemic and Loyola's students are routinely injured, the University has failed, and continues to fail, to take effective preventive measures and has allowed this dangerous situation to persist and cause harm to students, including Plaintiffs, creating a campus culture of deliberate indifference and tacit acceptance of sexual misconduct.

4.      As a result, Plaintiffs were forced to either attend their classes in a hostile environment or abandon their education at Loyola.



* 5 0 2 1 2 5 4 8 *

FILED DATE: 9/21/2022 4:13 PM   2022L008503

## PARTIES

5.      Plaintiffs incorporate all consistent paragraphs of this Complaint as if fully set forth.

6.      Catherine Ann attended Loyola as a graduate student in 2011; she left the University before finishing her two-year graduate program due to the sexual misconduct, trauma, and hostility she was subjected to while a student at Loyola. Catherine Ann is a resident of the State of Arizona.

7.      Madeline is a current Loyola graduate student; she completed her undergraduate studies in May 2022. Madeline is a resident of the State of Illinois.

8.      Marissa attended Loyola as an undergraduate student in May 2022; she left the University before finishing her five-year graduate program due to the sexual misconduct, trauma, and hostility she was subjected to while a student at Loyola. Marissa is a resident of the State of California.

9.      Defendant Loyola University Chicago is a private educational institution with its primary campus in Chicago, Illinois.

10.     Loyola receives federal funding in many forms, including federal student aid, and as such is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"). Loyola is contractually obligated to enforce Title IX in its programs and all University activities.

## VENUE

11.     This Court has jurisdiction pursuant to 735 ILCS 5/2-209 because all of the alleged wrongful conduct took place in the State of Illinois.

12.     Cook County is a proper venue for this action under 735 ILCS 5/2-1-1 because it is the county of residence of Defendant, location of incident, and the location with the most significant relationship to the allegations set forth herein.

## BACKGROUND FACTS RELEVANT TO ALL COUNTS

### *Title IX (20 U.S.C. § 1681 et seq. (2006))*

2



* 5 0 2 1 2 5 4 8 *

13.     Title IX of the Education Amendments Act of 1972 promotes equal opportunity by providing that no person may be subjected to discrimination on the basis of sex under any educational program or activity receiving federal financial assistance.

14.     The discrimination prohibited by Title IX includes inequitable treatment of survivors of sexual assault and sexual harassment.

15.     Accordingly, universities receiving federal funds are required to respond promptly and effectively to sexual harassment, including sexual violence, that creates a hostile environment.

### *Clery Act (20 U.S.C.A. § 1092(f))*

16.     After college freshman Jeanne Clery was raped and murdered in her own campus residence, Congress enacted the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act (the "Clery Act") in 1990.

17.     The Clery Act is designed to provide transparency, ongoing communication, and to promote campus safety by ensuring students, employees, parents, and the broader community are well-informed about important public safety and crime prevention matters.

18.     Pursuant to the Clery Act, institutions that receive federal funds must disclose accurate and complete crime statistics for incidents that are reported to campus security and local law enforcement as having occurred within the school's so-called "Clery Geography," which includes three general categories:[1]

- <u>On campus</u>: Any building or property that an institution owns or controls within a reasonably contiguous area that directly supports or relates to the institution's educational purposes, including residence halls.

---

[1] *See* The Handbook for Campus Safety and Security Reporting (2016 Edition), Department of Education (last accessed September 13, 2022), https://www2.ed.gov/admins/lead/safety/handbook.pdf.



* 5 0 2 1 2 5 4 8 *

- <u>Non-campus building or property:</u> Any building or property that is owned or controlled by a recognized student organization—including school-recognized fraternity or sorority houses and events for school clubs that occur off campus.

- <u>Public property:</u> All public property within the reasonably contiguous geographic area of the institution that is adjacent to or accessible from a facility the institution owns or controls and that is used for educational purposes.

19.     The goal of the notification requirement is to protect members of the constituent campus communities by "aid[ing] in the prevention of similar occurrences."[2]

20.     Congress recognized that contemporary campus communities had become increasingly dangerous places.

21.     Furthermore, Congress noted that, in roughly eighty percent of crimes on campus, both the perpetrator and the victim were students.[3]

22.     Even when sexual violence occurs off campus and not in the context of an educational program or activity, a university must process such complaints and consider the effects of the sexual violence when evaluating whether there is a hostile environment on campus or in an off-campus education program or activity.

***Illinois Preventing Sexual Violence in Higher Education Act (110 ILCS 155/1–99)***

23.     In 2015, the Illinois Legislature enacted the Illinois Preventing Sexual Violence in Higher Education Act, which, among other requirements, mandates higher education institutions:

- Develop a clear, comprehensive campus sexual violence policy, including detailed incident reporting options and university response guidelines;

- notify student survivors about their rights, including their right to confidentiality, and the protections the university can provide to ensure the student's health and safety, such as

---

[2] *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 30 (1st Cir. 2007) (quoting 20 U.S.C. § 1092(f)(3)).

[3] *See* Crime Awareness and Campus Security Act of 1990, Pub.L. No. 101–542, § 202, 104 Stat. 2381, 2384 (codified as amended at 20 U.S.C. § 1092(f)).

FILED DATE: 9/21/2022 4:13 PM   2022L008503



* 5 0 2 1 2 5 4 8 *

obtaining an order of protection, changing class schedules or campus housing, and the availability of medical and counseling services;

- provide a confidential advisor to survivors to help them understand their options and rights, including the options to report the sexual assault and to seek medical and legal assistance;

- have a comprehensive policy to address student allegations of sexual violence, domestic violence, dating violence, and stalking, consistent with federal and state law; and

- respond to a report submitted electronically within 12 hours.[4]

24.     Pursuant to the Act, Loyola is required to publish an annual report, which includes Loyola's Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation ("Comprehensive Policy"), as well as data and information concerning trainings, prevention programs, reported incidents within Loyola's "Clery Geography," and the outcomes/resolution of formal complaints.

### *Loyola's Internal Policies & Procedures ("Comprehensive Policy")*

25.     In addition to the federal and state regulations described above, Loyola has its own internal policies and procedures once a student reports sexual misconduct, as detailed in the University's Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation ("Comprehensive Policy").[5]

---

[4] *See* Loyola University Chicago, Office for Equity & Compliance, "Illinois Preventing Sexual Violence in Higher Education" (last accessed September 11, 2022), https://www.luc.edu/equity/titleixequitylaws/illinoispreventingsexualviolenceinhighereducationa ct/.

[5] *See* Loyola University of Chicago Comprehensive Policy and Procedures for Addressing Discrimination, Sexual Misconduct, and Retaliation, (last accessed September 12, 2022), https://www.luc.edu/media/lucedu/equity/pdfs/LUC%20Comprehensive%20Policy_2022-2023.pdf.

FILED DATE: 9/21/2022 4:13 PM  2022L008503



* 5 0 2 1 2 5 4 8 *

26.     According to Loyola's Office for Equity & Compliance, Loyola's internal policies and procedures "meet[] or exceed[] the requirements of federal and state civil rights laws and regulations to provide for a prompt, fair, and equitable administrative process."

27.     In relevant part, the University's Comprehensive Policy provides:

- A preponderance of the evidence standard is used to determine whether a respondent is responsible for violating the Comprehensive Policy. This standard requires that the totality of the evidence, considered impartially, must indicate that it is more likely than not that the Comprehensive Policy was violated.

- Complainants *may* be accompanied by one advisor of their choice, provided that the selection of the advisor does not cause an undue delay of the Grievance Process, but the University will not delay meetings or proceedings to accommodate an advisor's availability.

- Complainants *may* request assistance from Loyola in identifying an available advisor, but the University does "not ensure or guarantee the quality or availability of any University-provided advisor."

- An advisor may be any person of the party's choosing, including an attorney; when an advisor is also an attorney, this must be disclosed to the University, and the advisor is limited to a "supportive" and "non-representative role." An attorney of the University's choosing may also attend any proceeding whenever an attorney serving as an advisor is present.

- Upon receiving a report of sexual misconduct, the University may implement a no contact directive; in all cases in which a no contact directive is implemented, the relevant parties will be promptly informed in writing of the conditions, duration, and applicable parameters of the directive.

- The University aims to complete all investigations into students' report of sexual misconduct within six months of receipt of the initial complaint.

- If an alleged violation of sexual misconduct is substantiated, the violating party may be subject to a range of outcomes—including suspension, expulsion, and the University withholding or revoking the assailant's transcript or degree.

28.     At the beginning of each academic year, a copy of Loyola's Comprehensive Policy is published and shared with University students, employees, parents, and the broader community.

FILED DATE: 9/21/2022 4:13 PM   2022L008503

* 5 0 2 1 2 5 4 8 *

The above excerpts are from Loyola's 2020 Comprehensive Policy, but, upon information and belief, the University's Comprehensive Policy has remained materially the same since 2011.

### *Catherine Ann Cappello ("Catherine Ann")*

29.     Catherine Ann enrolled as a graduate student at Loyola in 2011.

30.     In 2012, Catherine Ann was sexually assaulted by one of her classmates, who was also a visiting priest from a foreign country.

31.     When Catherine Ann was sexually assaulted, she did not know of the University's policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual violence and sexual harassment.[6]

32.     When Catherine Ann attempted to file a formal report with the Title IX office, she was precluded from doing so. Loyola administrators informed Catherine Ann no action could be taken against her assailant because he was visiting from another country, and, therefore, not under Loyola's direction and control.

33.     Later that year, Catherine Ann's professors assigned her to work in a small group with her assailant; when Catherine Ann informed her professors she was not comfortable working in a small group with him because he had sexually assaulted and harassed her, Catherine Ann was told the professors did not need "troublemakers" like her—she could either complete the group assignment or take an incomplete in the course; Catherine Ann chose to take an incomplete.

---

[6] *See Karasek v. Regents of Univ. of California*, 500 F. Supp. 3d 967, 981 (N.D. Cal. 2020) ("when [plaintiff] was assaulted, she did not know of the University's alleged policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual harassment. I join those courts that have held that a pre-assault claim under Title IX does not accrue until a plaintiff knows or has reason to know of such a policy of deliberate indifference").

FILED DATE: 9/21/2022 4:13 PM    2022L008503



FILED DATE: 9/21/2022 4:13 PM   2022L008503

34.    Thereafter, Catherine Ann operated with a heightened sense of fear, anxiety, and stress knowing her assailant continued to be in her classes and on Loyola's campus.

35.    Attending classes in such a hostile environment became too much for Catherine Ann to bear, and she opted to leave Loyola before completing her degree.

36.    As a result of the University's misconduct, Catherine Ann has suffered emotional distress, psychological damage, loss of income, forfeited tuition and fees, diminished career opportunities, and other direct and consequential damages in an amount to be determined at trial.

### *Madeline Kane ("Madeline")*

37.    Madeline Kane is currently a graduate student at Loyola; Madeline completed her undergraduate studies at Loyola in May 2022. In February 2020, Madeline was sexually assaulted by another student at a party hosted by one of the five student fraternities recognized by Loyola.[7]

38.    Thereafter, Madeline electronically reported the incident to Loyola.

39.    Several days after Madeline submitted a formal grievance, on March 3, 2020, she received an email response from one of Loyola's Assistant Dean of Students and the acting Title IX Deputy Coordinator informing Madeline the University had received the report.

40.    Madeline also informed the fraternity's student leadership about the assault; consequently, the fraternity's leaders apologized to Madeline and informed Madeline her assailant, who was pledging the fraternity at the time, would not be allowed to join the fraternity.

41.    In contrast to the fraternity's response, and despite overwhelming evidence Madeline proffered—including photos of bruises, texts, receipts, and multiple witnesses—Loyola took

---

[7] *See* Loyola Center for Student Engagement, Recognized Sororities & Fraternities (last accessed September 12, 2022), https://www.luc.edu/studentengagement/sororityfraternitylife/recognizedsororitiesfraternities/.

* 5 0 2 1 2 5 4 8 *

FILED DATE: 9/21/2022 4:13 PM 2022L008503

months to conduct an investigation and provided Madeline with negligible support throughout the process.

42. Madeline was not provided a confidential advisor by the University, and she was forced to conduct parts of the investigation herself; Madeline had to decide who Loyola should interview and what evidence the University should collect.

43. The University also allowed Madeline's assailant, along with the one friend he identified with knowledge of the assault, to delay the investigation process by skipping multiple interviews without consequence.

44. Loyola did not adequately inform Madeline of the resources and support available to her during the duration of the investigation; when Madeline inquired about mental health care and other resources available to her, she was given negligible support from Dean Love and other Loyola administrators, and Madeline was ultimately left to seek out resources and information on her own.

45. Though Madeline's perpetrator obtained an attorney to advise him, and in contrast to Loyola's Comprehensive Policy, Madeline was informed by the University she could not obtain an attorney during the Title IX investigation.

46. At one point during the investigation, Loyola also provided Madeline a letter from a lawyer with her assailant's last name threatening to sue Madeline.

47. In September 2020, Loyola concluded its investigation into Madeline's sexual assault by informing Madeline via email her perpetrator was "not responsible" due to "insufficient evidence."

48. After the investigation finished, Madeline was drugged at a different fraternity party in April 2021, but she chose not to report the incident to Loyola because the first investigation was flawed and humiliating.



49.     For years, Maddie has operated—and, as a current student, she continues to operate—with a heightened sense of fear, anxiety, and stress knowing there are possible perpetrators in her classes that have not been removed by the University.

50.     As a result of the University's misconduct, Maddie has suffered emotional distress, psychological damage, loss of income, forfeited tuition and fees, diminished career opportunities, and other direct and consequential damages in an amount to be determined at trial.

### *Marissa Sepulveda ("Marissa")*

51.     Marissa began her studies at Loyola in 2018; she was accepted to a five-year program and on track to graduate with a bachelor's and master's degree in social work in May 2023.

52.     In February 2019, Marissa was sexually assaulted by a male student inside a Loyola dorm building.

53.     Thereafter, Marissa informed her dorm's Resident Advisor ("R.A."), and a Title IX investigation was initiated.

54.     Despite having actual notice and knowledge that Marissa's assailant violently assaulted Marissa, and he was a serious threat to other students, Loyola's Title IX coordinator and associate dean, Timothy Love ("Dean Love"), allowed Marissa's assailant to remain on campus with unfettered access to other Loyola students.

55.     Marissa's Title IX investigation continued for months, and, in April 2019, Marissa's assailant violently raped another female Loyola student; it was only after this second incident that a police report was filed and the assailant was removed from campus and expelled from the University.

56.     Several months later, in September 2019, Marissa was raped by another Loyola student on the bathroom of a University dorm building.



FILED DATE: 9/21/2022 4:13 PM   2022L008503

57.     Akin to Madeline, because Marissa's first Title IX investigation was traumatizing and flawed, Marissa chose not to file a complaint with Loyola's Title IX Office until September 2021.

58.     When Marissa filed a report in September 2021, Marissa was informed by Dean Love and Loyola's administrators that her Title IX investigation would conclude by December 2021.

59.     On at least two different occasions, Marissa's assailant made contact with Marissa and attended quidditch club events he knew Marissa would be present at, as both Marissa and her assailant were members of the University's quidditch team; thereafter, Marissa informed Dean Love about these incidents and requested a "no contact directive."

60.     Loyola's Comprehensive Policy provides no contact directives can be issued "request of a complainant, respondent, or other relevant individual, when warranted." It further provides the parties should "promptly informed in writing of the conditions, duration, and applicable parameters," and violation of a no contact directive "may be grounds for additional informal or formal intervention, including disciplinary action."

61.     Despite this, Loyola did not issue a no contact directive, and Dean Love informed Marissa the University could not force her assailant to stop attending quidditch events she would be present at, but he would "highly recommend" her assailant refrain from doing so.

62.     In May 2022, over nine months after Marissa made her initial report, Dean Love informed Marissa during the final week of her undergraduate courses that the Title IX investigation had concluded, and Loyola determined her assailant was guilty of: (1) sexual misconduct, (2) non-consensual sexual contact, (3) non-consensual sexual penetration, and (4) dating/domestic violence.



* 5 0 2 1 2 5 4 8 *

63. Despite this finding, Marissa learned her assailant would be graduating and receiving an undergraduate degree in business administration from Loyola; he would also be able to attend and walk at the University's graduation ceremony.

64. Thereafter, Marissa protested and obtained over 2,600 signatures of other Loyola students urging the University to prevent Marissa's assailant from receiving a degree from Loyola and to prevent him from attending Loyola's graduation ceremony.

65. Upon viewing Marissa's petition, a former Loyola student reached out to Marissa via social media to inform Marissa the student had left Loyola because she was also sexually assaulted, but the University failed to act and/or support her—the former Loyola student informed Marissa she had taken a year off from her studies and was now attending a community college.

66. For years, Marissa was forced to operate with a heightened sense of fear, anxiety, and stress knowing her assailant, and other possible perpetrators, continued to be in her classes, club events, and on Loyola's campus.

67. Attending classes in such a hostile environment became too much for Marissa to bear, and she opted to leave Loyola before completing her five-year program.

68. As a result of the University's misconduct, Marissa has suffered psychological and emotional damages, and she has experienced a loss of educational benefits and forfeited tuition and fees.

## OTHER SALIENT FACTS

69. Plaintiffs are informed, believe, and on that basis allege, Loyola has systemically mishandled student complaints of sexual violence and sexual harassment, contrary to federal and state mandates and its own internal policies and procedures, dating back to at least 2011.

70. Loyola's student newspaper, *The Phoenix*, has reported:

* 5 0 2 1 2 5 4 8 *

FILED DATE: 9/21/2022 4:13 PM    2022L008503

- In 2016, a female student's sexual assault report was lost by the University, which Dean Love acknowledged and apologized for.

- Dean Love has admitted Loyola has an "internal goal" of responding to reports within one business day—despite the fact Illinois law requires universities to respond within 12 hours.

- Multiple protests have been held, on a near yearly basis, by students demanding Loyola do more to combat violent sex crimes from occurring at the University.

- The University allowed a professor to continue teaching classes after determining several students' reports of his sexual misconduct to be credible.

- After three female students reported they were raped by the same male student on campus in 2018, it took the University five months, despite informing them it would take approximately 60 days, to find the students' allegations to be credible. The University initially sanctioned him by requiring he complete community service and write a paper on the meaning of consent—a gravely disproportional sanction for violently raping three students on campus.

- Students have reported the University's Title IX investigators have made serious errors in witness statements and sent emails with sensitive information to perpetrators versus survivors.

- Loyola found a male student guilty of rape and thereafter expelled and banned him from campus, but still allowed him to participate in his graduation ceremony.

71.    Plaintiffs are informed, believe, and on that basis allege, Loyola has also grossly underreported the number of sexually violent incidents that occurred during the years prior to Plaintiffs' enrollment at the University.

72.    In December 2017, University Security reported the Chicago Police Department had reported 873 violent crimes in Loyola's jurisdiction since 2013, but the University's Campus Safety had only reported 205.[8]

---

[8] "Loyola Campus Safety Reports a Fraction of Crimes Compared to CPD," *The Phoenix* (updated January 31, 2018), (https://loyolaphoenix.com/2017/11/campus-safety-chronically-reports-crime/.



* 5 0 2 1 2 5 4 8 *

73.    Many of the violent crimes not reported by Campus Safety occurred within less than a five-minute walk from the University's campus, including 89 aggravated assaults and batteries, 94 robberies, 44 crimes with guns, and 29 sex crimes.[9]

74.    According to Loyola's Preventing Violence in Higher Education Annual Report, in 2016:

- 48 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to Loyola's Title IX Office;

- 66 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to a confidential and anonymous resource; and

- 68 incidents of "off campus" sexual violence, domestic violence, dating violence, and stalking were reported.[10]

75.    Thus, in total, there were 182 incidents of sexual violence, domestic violence, dating violence, and stalking reported by Loyola students in 2016.[11]

76.    According to Loyola's Preventing Violence in Higher Education Annual Report, in 2017:

- 36 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to Loyola's Title IX Office; and

- 93 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking were reported to a confidential and anonymous resource.[12]

---

[9] *Id.*

[10] *See* Loyola's 2016 Preventing Violence in Higher Education Annual Report (last accessed September 12, 2022): https://www.luc.edu/media/lucedu/equity/pdfs/Loyola%20Univeristy%20Chicago_Annual%20Report%202016.pdf.

[11] *Id.*

[12] *See* Loyola's 2017 Preventing Violence in Higher Education Annual Report (last accessed September 12, 2022): https://www.luc.edu/media/lucedu/equity/pdfs/Loyola%20University%20Chicago%202018%20ILPSVHE%20Annual%20Report%20(Submitted%20November%201,%202018).pdf.

FILED DATE: 9/21/2022 4:13 PM  2022L008503



* 5 0 2 1 2 5 4 8 *

77.     Loyola did not publish how many incidents occurred "off campus" or at "non-campus buildings or properties" in 2017, or any year thereafter.[13]

78.     Despite 129 incidents of "on campus" sexual violence, domestic violence, dating violence, and stalking reported to have occurred in 2017—and an unknown number of off-campus incidents—not a single student was reprimanded by the University in 2017, as shown below:

Loyola University Chicago                                                           Part B (II) (B)

**PART B (II)(B) Complaint Resolution Procedure Outcomes**

*It should be noted that several cases reported to have occurred outside of "Clery Geography" (i.e. at off-campus parties, apartments, etc.) were addressed through the complaint resolution process. However, given the reporting guidelines which advise to narrowly report only those incidents which occurred within "Clery Geography," these incidents and their related outcomes are not reflected in the data below.

|  | Found "not responsible" for violation of comprehensive policy | Dismissed/expelled | Suspended | Otherwise disciplined |
|---|---|---|---|---|
| **Sexual violence** | 0* | 0 | 0 | 0 |
| **Domestic violence** | 0 | 0 | 0 | 0 |
| **Dating violence** | 0 | 0 | 0 | 0 |
| **Stalking** | 0 | 0 | 0 | 0 |

79.     The Department of Education Office of Postsecondary Education publishes the most recent three years of a university's self-reported sexual misconduct crime statistics.[14] According, to its website, from 2018 to 2020 Loyola reported:

---

[13] *Id.*
[14] *See* U.S. Department of Education Office of Postsecondary Education (last accessed September 12, 2022),  https://ope.ed.gov/campussafety/#/institution/search.

15

FILED DATE: 9/21/2022 4:13 PM    2022L008503



FILED DATE: 9/21/2022 4:13 PM    2022L008503

- In 2018, there were 11 incidents of rape and 9 incidents of fondling reported "on campus;" 0 incidents of rape and 0 incidents of fondling were reported on "non-campus" properties; and 0 incidents of rape and 0 incidents of fondling were reported on public properties.

- In 2019, there were 7 incidents of rape and 4 incidents of fondling reported "on campus;" 0 incidents of rape and 0 incidents of fondling were reported on "non-campus" properties; and 2 incidents of rape and 0 incidents of fondling were reported on public properties.

- In 2020, there were 5 incidents of rape and 3 incidents of fondling reported "on campus;" 1 incident of rape and 0 incidents of fondling were reported on "non-campus" properties; and 0 incidents of rape and 1 incident of fondling was reported on public properties.

80. Upon information and belief, the above data grossly underreports the number of violent sexual criminal offenses reported during from 2018 to 2020 within Loyola's Clery Geography, in violation of federal and state regulations in addition to the University's internal policies and procedures.

<div align="center">

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE IX, 20 U.S.C. § 1681**
**DISCRIMINATION ON THE BASIS OF GENDER, PRE- AND POST-ASSAULT**
**DELIBERATE INDIFFERENCE, AND ERRONEOUS OUTCOME**

</div>

81. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

82. The acts, and failures to act, perpetrated against Plaintiffs amounted to unlawful sexual harassment and discrimination on the basis of gender.

83. Loyola had actual knowledge its policies and procedures, as written and implemented, were enabling acts of sexual violence against its students, including Plaintiffs.

84. The University maintained a *de facto* policy, detailed throughout this Complaint, to suppress reports of sexual violence and sexual harassment, and to support accused campus predators, resulting in a culture of deliberate indifference toward sexual misconduct at Loyola.[15]

---

[15] The Tenth Circuit has concluded that Title IX liability exists "when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007).



* 5 0 2 1 2 5 4 8 *

85.     Thus, Loyola's actions evidence an official decision by Dean Love, Loyola's Title IX coordinator, and other high-ranking University officials, not to remedy Loyola's systemic mishandling and underreporting of sexual violence.

86.     In violation of federal and state regulations as well as in violation of Loyola's own policies and procedures, the University failed to provide Plaintiffs with fair, prompt, and equitable proceedings in response to complaints of sexual misconduct.

87.     Plaintiffs were, therefore, subjected to erroneous outcomes: Catherine Ann was erroneously prevented from initiating a Title IX investigation against her assailant; Madeline's assailant was erroneously found not guilty, despite overwhelming evidence surpassing the University's preponderance standard; and Marissa's assailant was erroneously allowed to graduate and received no effective sanction, despite being found guilty of sexual violence.

88.     Following each of Plaintiffs' sexual assaults described above, Dean Love and other high-ranking University administrators became aware of the facts underlying Plaintiffs' injuries.

89.     In spite of that knowledge, Dean Love and other University officials, with authority to take corrective action on Plaintiffs' behalf, had actual notice of said discrimination and failed to adequately respond. Those failures amounted to deliberate indifference toward the unlawful conduct that was occurring and staggering number of incidents of sexual assault and sexual

---

*See also Posso v. Niagara Univ.*, No. 19-CV-1293-LJV-MJR, 2020 WL 8771334, at *6 (W.D.N.Y. Nov. 2, 2020), report and recommendation adopted, 518 F. Supp. 3d 688 (W.D.N.Y. 2021) (the Court finds *Simpson* and *Karasek* [cited *supra,* in Footnote 3] persuasive for the premise that a university can certainly be liable under Title IX for a policy of deliberate indifference to a heightened risk of sexual harassment known to exist within a particular group or context, and possibly beyond that).

FILED DATE: 9/21/2022 4:13 PM    2022L008503



* 5 0 2 1 2 5 4 8 *

harassment occurring on Loyola's campus and within non-campus properties and buildings—especially fraternity houses.

90.     Loyola's well-documented pattern of discrimination and sexual misconduct against female victims and in favor of male assailants, created an atmosphere on campus that was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive to alter the conditions of the education and create a sexually hostile environment for Plaintiffs.

91.     The University's response to Catherine Ann, Madeline, and Marissa was so hostile as to compound their injuries, including Catherine Ann and Marissa leaving Loyola altogether, constituting retaliation under Title IX.

92.     Additionally, and/or in the alternative, Loyola failed to enact and/or disseminate and/or implement proper or adequate policies to discover, prohibit or remedy the kind of discrimination that Plaintiffs suffered. This failure included, without limitation, nonexistent and inadequate enforcement policies and procedures for the recognition, reporting, investigation, and correction of unlawful discrimination. Loyola acted with deliberate indifference in deviating significantly from the standard of care it owed Plaintiffs.

93.     As a result of Loyola's discrimination, deliberate indifference, and erroneous outcomes per Title IX, Plaintiffs are entitled to recover their damages and reasonable attorneys' fees and costs of litigation from the University.

<div align="center">

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE ILLINOIS PREVENTING SEXUAL**
**VIOLENCE IN HIGHER EDUCATION ACT[16]**

</div>

94.     The foregoing paragraphs are incorporated by reference as if fully set forth herein.

---

[16] Because the Illinois Preventing Sexual Violence in Higher Education Act was enacted in 2015, this cause of action is brought on behalf of Plaintiffs Madeline Kane and Marissa Sepulveda only.



* 5 0 2 1 2 5 4 8 *

95.     The University violated Plaintiffs' rights pursuant to the Illinois Preventing Sexual Violence in Higher Education Act.

96.     Based on information and belief, Loyola's Title IX coordinator, Dean Love, and other high-ranking officials, consciously and intentionally underreported the number of sexually violent incidents that occurred "on campus," in "non-campus buildings or properties," and on "public property" within a reasonably contiguous area of the school, in violation of the Illinois Preventing Sexual Violence in Higher Education's reporting requirements.

97.     Further, Loyola violated the Act by:

- Failing to notify Plaintiffs about the protections the University could provide to ensure their safety, such as obtaining an order of protection, changing class schedules or campus housing, reporting to law enforcement, and the availability of medical and counseling services;

- not responding to Madeline's electronically submitted report within 12 hours; Loyola's Title IX Coordinator, Dean Love, has stated although the University is legally obligated to do so, Loyola has its own internal policy of attempting to respond to survivors' electronically submitted reports within one business day; and

- not conducting a prompt, fair, and equitable investigation into Plaintiffs' grievances.

98.     While there is not an explicit private right of action in 110 ILCS 155/20, there is an implied right of action that can be established under Illinois common law. *See Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (2004).

99.     More specifically, "implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute." *Id.*

* 5 0 2 1 2 5 4 8 *

100.    Plaintiffs, as female students and sexual assault victims at a place of higher education, are members of the class for whose benefit 110 ILCS 155/20 was enacted, and their injuries are that 110 ILCS 155/20 was designed to prevent.

101.    A private right of action is consistent with the purpose of the statute, which is to prevent sexual violence in institutions of higher education in the state of Illinois—such as Loyola.

102.    Implying a private right of action is necessary to provide an adequate remedy for violations of 110 ILCS 155/20.

103.    As a result of the University's failures and inaction, Plaintiffs have suffered physical damages and mental anguish, among other harms, as a direct and proximate result of Loyola's violations of the Preventing Sexual Violence in Higher Education Act.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

104.    Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

105.    At all relevant times, Loyola owed Plaintiffs a duty of reasonable care—as set forth by federal and state regulations in addition to the University's internal policies and procedures—to ensure their safety and freedom from sexual assault and sexual harassment by, among other things, conducting an investigation into their claims of sexual misconduct which complied with Title IX, the Clery Act, and the Illinois Preventing Sexual Violence in Higher Education.

106.    Loyola was aware that a staggering number of sexual assaults against its students, including Plaintiffs, were occurring at the University, creating a serious risk of harm of sexual misconduct to all students, including Plaintiffs.

107.    After Plaintiffs were subjected to sexual misconduct, the University took no reasonable protective measures to protect Plaintiffs, nor took action to prevent the recurrence of future incidents of sexual misconduct or remedy the effects of sexual misconduct on Plaintiffs.

FILED DATE: 9/21/2022 4:13 PM    2022L008503



* 5 0 2 1 2 5 4 8 *

FILED DATE: 9/21/2022 4:13 PM   2022L008503

108. Loyola's failure to follow federal and state regulations in additions to its own policies and procedures in reviewing, investigating, reporting, and resolving complaints of sexual assault and sexual harassment constitutes a breach of the duty of care it owed Plaintiffs.

109. This breach caused harm to Plaintiffs and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

110. The above acts and omissions were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiffs seek in this suit.

111. That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

## FOURTH CAUSE OF ACTION
## NEGLIGENT TRAINING/SUPERVISION/RETENTION

112. Plaintiffs hereby incorporate by reference the allegations set forth in the above paragraphs as if fully set forth herein.

113. Plaintiffs allege negligent failure to warn, train, or educate by Loyola in its response to reports of sexual misconduct.

114. Plaintiffs allege negligent supervision by Loyola in its response to reports of sexual misconduct. Loyola had a duty to properly supervise, train, and monitor its employees and students and to ensure those employees' and students' compliance with Title IX and all applicable federal and state regulations in addition to internal policies and procedures, but they failed to do so and therefore breached the duties of care owed to Plaintiffs as alleged herein.

115. Loyola's failure to timely report, investigate, and respond to the sexual assaults perpetrated against Plaintiffs is a breach of the University's duty to train and supervise its employees.

116. Loyola also breached its duties to Madeline, Marissa, and other similarly situated Loyola students by retaining Dean Love as the University's Title IX coordinator, after he admitted to not

21



* 5 0 2 1 2 5 4 8 *

following federal and state regulations by losing and failing to promptly respond to student reports of sexual misconduct.

117. These breaches caused harm to Plaintiffs and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

118. The above acts and omissions were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiffs seek in this suit.

119. That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

## FIFTH CAUSE OF ACTION
## GROSS NEGLIGENCE

120. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

121. The University's acts and omissions, as previously described, were committed with reckless disregard for, and with willful, wanton, and conscious indifference to, the rights, safety, and welfare of Loyola's students, including Plaintiffs.

122. The nature of Loyola's aforesaid wrongful acts and omissions were of such a nature as to constitute gross negligence and malice.

123. Loyola's Title IX coordinator, Dean Love, and other high-ranking officials breached their duties to Plaintiffs by undertaking a continuous course of action in the form of conscious decisions, with subjective knowledge and awareness of the risks and hazards presented by each decision as discussed above and incorporated herein, to expose Plaintiffs and other Loyola students to sexual misconduct—in violation of federal and state regulations and the University's own policies and procedures—without exercising slight care or diligence.



* 5 0 2 1 2 5 4 8 *

124. These breaches caused harm to Plaintiffs and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

125. The above acts and omissions were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiffs seek in this suit.

126. That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

### SIXTH CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

127. Plaintiffs incorporate all paragraphs of this Complaint as if fully set forth herein.

128. In addition to the common law duty of ordinary care discussed above, and incorporated herein, Loyola had a duty that arose because of, *inter alia*, a special relationship between the University and its students.

129. Loyola agreed to educate, care for, and keep safe University students in exchange for tuition, for which Loyola accepted in order to find and promote Plaintiffs' and other Loyola students' University courses and other educational experiences and initiatives.

130. Loyola's Title IX coordinator, Dean Love, and other high-ranking officers breached their duty of care by acting with reckless disregard for the safety and welfare of Plaintiffs and other students by failing to properly investigate, remedy, and take a reasonable course of action to prevent sexual misconduct.

131. Loyola placed its own reputational interests ahead of the safety of its students, including Plaintiffs.

132. Dean Love and other high-ranking Loyola administrators breached their fiduciary duties by, among others, hiding and keeping secret the fact that there were known sexual predators on



* 5 0 2 1 2 5 4 8 *

the University's campus to whom Plaintiffs and other students would be subjected to, by failing to disclose reports and crime statistics of sexual misconducted, as required by federal and state regulations; and by failing to disclose the University's culture of deliberate indifference to sexual misconduct, knowledge of endemic sexual assault and sexual harassment, and its policy of fraudulently concealing past incidents of sexual abuse—thereby putting the interest of Loyola ahead of students and victims like Plaintiffs by continuing to this day to hide the full extent of the staggering number of sexual assaults that occur on the University's campus and by Loyola students every year.

133. These breaches caused harm to Plaintiffs and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

134. The above acts and omissions were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiffs seek in this suit.

135. That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

## SEVENTH CAUSE OF ACTION
## PREMISES LIABILITY

136. Plaintiffs incorporate all consistent paragraphs of this Complaint as if fully set forth.

137. At all relevant times, Loyola owned, operated, and exercised control over the dorm buildings and premises upon which Plaintiffs' sexual assaults occurred.

138. At all relevant times, Plaintiffs were invitees on the University owned and/or controlled premises where they were assaulted.

FILED DATE: 9/21/2022 4:13 PM   2022L008503


* 5 0 2 1 2 5 4 8 *

139.    Loyola breached its duties to Plaintiffs by providing inadequate security and supervision over the premises, despite the known existence of unreasonable risk of harm from dangerous sexual predators on these premises.

140.    The risk of harm was foreseeable, and the University knew or had reason to know that sexual assaults would occur given previous sexual misconduct, proximity of other incidents of sexual misconduct, the recency of other sexual misconduct, frequency of sexual misconduct, the similarity of other sexual misconduct, and actual notice and knowledge of sexual misconduct by Dean Love and other Loyola administrators.

141.    These breaches caused harm to Plaintiffs and benefitted the University, which sought to protect its reputation from public knowledge of the rampant sexual misconduct occurring at Loyola.

142.    The above acts and omissions were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiffs seek in this suit.

143.    That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

## EIGHTH CAUSE OF ACTION
## FRAUD

144.    Plaintiffs incorporate all paragraphs of this Complaint as if set forth herein.

145.    Loyola, by and though the University's officers and authorized managing agents, committed fraud upon Plaintiffs with respect to their false representations regarding the safety of their facilities, associated programs and students to the pecuniary damage of Plaintiffs.

146.    In order to induce Plaintiffs to enroll at the University and pay tuition, and to induce Plaintiffs to continue their enrollment, attendance at and payment of tuition to the University,

FILED DATE: 9/21/2022 4:13 PM    2022L008503



* 5 0 2 1 2 5 4 8 *

Loyola issued statements and made omissions that communicated to Plaintiffs the University was safe and that students only experienced a minimal amount of sexual violence.

147.     Based on information and belief, Loyola consciously and intentionally underreported the number of sexually violent incidents that occurred "on campus," in "non-campus buildings or properties," and on "public property" within a reasonably contiguous area of the school, in violation of the Clery Act's and the Illinois Preventing Sexual Violence in Higher Education's reporting requirements.

148.     Loyola stopped publishing reports of sexual violence that occurred on "non-campus" (i.e. "off campus") buildings and properties, including fraternity and sorority houses, after 2016.

149.     Thus, the statistics reported in Loyola's annual reports were false when made and the University knew them to be false.

150.     The above fraudulent acts and omissions by the University were a proximate cause of Plaintiffs' injuries and the resulting damages Plaintiff seek in this suit.

151.     That by reason of the foregoing, Plaintiffs are entitled to recover all of their damages from Loyola.

### PRAYER FOR RELIEF AND JURY DEMAND

152.     Wherefore, based on the foregoing causes of action, Plaintiffs demand judgment against Loyola in an amount to be determined in a trial by jury; for a sum that will fully and fairly compensate Plaintiffs for their injuries and conscious pain and suffering, that Plaintiffs recover actual damages; that Plaintiffs are entitled to recover compensatory damages; that Plaintiffs recover punitive damages; together with litigation costs, expenses and reasonable and necessary attorneys' fees, pre-judgment and post-judgment interest pursuant to 28 U.S.C. § 1961 and any

FILED DATE: 9/21/2022 4:13 PM   2022L008503



* 5 0 2 1 2 5 4 8 *

other applicable law or statute; and any and all other relief to which Plaintiffs may be justly entitled.

153.    In addition to monetary damages, as a current Loyola student, Madeline seeks injunctive relief from Loyola, as damages alone are not an adequate remedy for the University's ongoing and continuous violations of federal and state regulations in addition to Loyola's own policies and procedures. Loyola's deliberate indifference to sexual misconduct continues to endanger Loyola students, including Madeline, at present and indefinitely into the future; Dean Love and Loyola's other high-ranking officials know, or reasonably should know, the ongoing and endemic student-on-student sexual assault and sexual harassment has created a hostile environment that pervades to date and will continue unless this court intervenes. Madeline, therefore, seeks a permanent injunction requiring Loyola to ensure the University accurately reports incidents of sexual violence; takes substantial steps to properly and timely investigate reports of discrimination at Loyola; provide appropriate interim measures and reasonable accommodations to complainants, impose appropriate discipline and remedial measures in situations where a violation of Title IX, the Clery Act, the Illinois Preventing Sexual Violence in Higher Education Act, and the University's Comprehensive Policy is found to have occurred; cease all retaliatory action against students who report incidents of sexual misconduct; and impose appropriate discipline and remedial measures, as necessary.

* 5 0 2 1 2 5 4 8 *

154. Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

*/s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Ph: 312.741.1019
Fax: 312.264.0100
beth@feganscott.com

*/s/ Ashley M. Pileika*
Ashley M. Pileika
New York Bar No. 974605

Darren Wolf*
Texas State Bar No. 24072430
**Law Office of Darren Wolf, P.C.**
1701 N. Market St., Suite 210
Dallas, Texas 75202
P: 214-346-5355 | F: 214-346-5909
ashley@darrenwolf.com
darren@darrenwolf.com

*Pro hac vice* applications forthcoming

*Counsel for Plaintiffs Madeline Kane, Marissa Sepulveda, and Catherine Ann Capello*

FILED DATE: 9/21/2022 4:13 PM    2022L008503

28

# EXHIBIT C

District 1

## Case Summary

### Case No. 2022L008503

| | | | |
|---|---|---|---|
| MADELINE KANE,MARISSA SEPULVEDA,CATHERINE ANN CAPPELLO -vs- LOYOLA UNIVERSITY CHICAGO | § § § § § | Location: Judicial Officer: Filed on: Case Number History: Cook County Attorney Number: | **District 1** **Calendar, N** **09/21/2022** **2022L008503** **63837** |

---

### Case Information

Case Type: Other Personal Injury / Wrongful Death - Jury

Case Status: **09/21/2022  Pending**

---

### Assignment Information

**Current Case Assignment**
Case Number        2022L008503
Court              District 1
Date Assigned      10/14/2022
Judicial Officer   Calendar, N

---

### Party Information

*Lead Attorneys*

| | | |
|---|---|---|
| **Plaintiff** | **CAPPELLO, CATHERINE ANN** | **Fegan, Elizabeth Anne** *Retained* |
| | **KANE, MADELINE** | **Fegan, Elizabeth Anne** *Retained* |
| | **SEPULVEDA, MARISSA** | **Fegan, Elizabeth Anne** *Retained* |
| **Defendant** | **LOYOLA UNIVERSITY CHICAGO** | |

---

### Events and Orders of the Court

12/01/2022   *CANCELED* **First Time Case Management**   (9:00 AM)   (Judicial Officer: Flanagan, Kathy M)
             Resource: Location L2210 Court Room 2210
             Resource: Location D1 Richard J Daley Center
             *Stricken*

11/15/2022   **Status Hearing**   (9:15 AM)   (Judicial Officer: Roberts, Mary Colleen)
             Resource: Location L2010 Court Room 2010
             Resource: Location D1 Richard J Daley Center

10/24/2022   
             Summons Served - Corporation/Company/Business
             *Sheriff ID: 50212548, UNKNOWN LITIGANT Sheriff Filename: 2022L00850350212548.pdf*
             Date Served:   10/21/2022

10/20/2022   Case Assigned to Zoom Hearing - Allowed   (Judicial Officer: Roberts, Mary Colleen)
             *@0915*
             Party:   Plaintiff CAPPELLO, CATHERINE ANN;

## Case Summary

**Case No. 2022L008503**

Plaintiff KANE, MADELINE;
Plaintiff SEPULVEDA, MARISSA

10/14/2022
Assign To Judge Within Division (Judicial Officer: Solganick, Irwin J)
*1937 j roberts*
Party: Plaintiff CAPPELLO, CATHERINE ANN

10/14/2022
Case Set On Individual Calendar (Judicial Officer: Ramos, Sandra G)
Party: Plaintiff CAPPELLO, CATHERINE ANN

10/13/2022
Transfer Case To Presiding Judge Within District/Division (Judicial Officer: Flanagan, Kathy M)
*1505*
Party: Plaintiff KANE, MADELINE

10/13/2022
Strike From The Call - Allowed - (Judicial Officer: Flanagan, Kathy M)
*12/01/2022*
Party: Plaintiff KANE, MADELINE

09/26/2022
Summons Issued And Returnable
*Summons*

09/22/2022
Summons Issued And Returnable
*Summons*
Party: Plaintiff KANE, MADELINE

09/21/2022 New Case Filing

09/21/2022
Other Personal Injury Complaint Filed (Jury Demand)
*Complaint and Jury Demand*