**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MADELINE KANE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22-cv-06476 |
| v. | ) | |
| | ) | Honorable Mary M. Rowland |
| | ) | |
| LOYOLA UNIVERSITY OF CHICAGO, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 1

I.    The Plaintiffs ............................................................................................................. 1

    a.    Catherine Ann Cappello ................................................................................. 1

    b.    Madeline Kane ............................................................................................... 2

    c.    Marissa Sepulveda ........................................................................................ 3

    d.    Amma Appiagyei-Dankah ............................................................................ 4

    e.    Jane Doe C .................................................................................................... 5

    f.    Jane Doe N .................................................................................................... 6

    g.    Jane Doe H .................................................................................................... 6

    h.    Jane Doe G .................................................................................................... 7

    i.    Jane Doe A .................................................................................................... 8

    j.    Jane Doe E .................................................................................................... 9

II.    Alleged Facts Common to All Plaintiffs' Claims ..................................................... 9

LEGAL STANDARD ............................................................................................................. 10

ARGUMENT .......................................................................................................................... 11

I.    Plaintiffs Do Not State a Claim Under Title IX ..................................................... 11

    A.    Plaintiffs Do Not State a Pre-Assault Claim. ............................................. 12

    B.    Plaintiffs Do Not State a Post-Assault or Post-Report Claim. .................................................................................................................. 17

    C.    Plaintiffs Do Not State a Claim for Erroneous Outcome ...................................... 22

    D.    Plaintiffs' Title IX Claims are Time-Barred. ............................................. 23

    E.    Doe E Does Not State a Title IX Claim Because the Assault Occurred Outside the United States. .................................................. 28

II.    Plaintiffs Fail to State a Claim under the Illinois Preventing Sexual Violence in Higher Education Act ................................................................................................ 29

III.    Plaintiffs Do Not State Claims for Negligence, Negligent Training/Supervision and Gross Negligence ............................................................................................... 30

IV.    Plaintiffs Do Not State a Claim for Negligent Infliction of Emotional Distress ............... 33

V.    Plaintiffs Do Not State a Claim for Intentional Infliction of Emotional Distress ............. 34

VI.    Plaintiffs Do Not State a Claim for Breach of Contract ........................................ 36

VII.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty ............................. 38

VIII.    Plaintiffs Do Not State a Claim for Premises Liability ........................................................ 39

IX.      Plaintiffs Do Not State a Claim for Fraud ........................................................................ 41

X.       Plaintiffs are Not Entitled to Some of The Relief They Seek ........................................... 42

CONCLUSION ............................................................................................................................ 43

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                       **Page(s)**

*Abraham v. Thomas Jefferson Univ.*,
No. 20-2967, 2021 U.S. Dist. LEXIS 171773 (E.D. Pa. Sep. 9, 2021) ...................................35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).....................................................................................................10, 32

*Barnes v. Gorman*,
536 U.S. 181 (2002).............................................................................................................42

*Bass ex rel. Bass v. Miss Porter's Sch.*,
738 F. Supp. 2d 307 (D. Conn. 2010).................................................................................39

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................10

*Bogenberger v. Pi Kappa Alpha Corp.*,
2018 IL 120951.......................................................................................................30, 31, 32

*Borkowski v. Balt. Cty.*,
492 F. Supp. 3d 454 (D. Md. 2020)....................................................................................22

*Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*,
741 F.3d 769 (7th Cir. 2013) .........................................................................................37, 38

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)...............................................................................................................42

*Connick v. Suzuki Motor Co.*,
174 Ill. 2d 482 (Ill. 1996)....................................................................................................41

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
142 S. Ct. 1562 (2022)........................................................................................................42

*Davis v. Monroe County Board of Education*,
526 U.S. 629 (1999)...................................................................................................... *passim*

*DiPerna v. Chi. Sch. of Prof'l Psychology*,
No. 14-cv-57, 2014 U.S. Dist. LEXIS 116844 (N.D. Ill. Aug. 21, 2014) .............................37

*DiPerna v. Chi. Sch. of Prof'l Psychology*,
No. 14-cv-57, 2015 U.S. Dist. LEXIS 9403 (N.D. Ill. Jan. 27, 2015)....................................37

*Doe 1 v. Baylor Univ.*,
240 F. Supp. 3d 646 (W.D. Tex. 2017)................................................................................31

*Doe v. Bd. of Regents of the Univ. of Wis.*,
No. 20-cv-856-wmc, 2021 U.S. Dist. LEXIS 212351 (W.D. Wis. Nov. 3,
2021) ................................................................................................................22

*Doe v. Brandeis Univ.*,
177 F. Supp. 3d 561 (D. Mass. 2016) ...................................................................35

*Doe v. Columbia Coll. Chi.*,
299 F. Supp. 3d 939 (N.D. Ill. 2017) .............................................................. *passim*

*Doe v. Columbia Coll. Chi.*,
933 F.3d 849 (7th Cir. 2019) .................................................................................37

*Doe v. Howe Military Sch.*,
227 F.3d 981 (7th Cir. 2000) .................................................................................23

*Doe v. Liberty Univ., Inc.*,
No. 6:22-cv-21, 2022 U.S. Dist. LEXIS 188407 (W.D. Va. Oct. 14, 2022) ..........35

*Doe v. Loyola Univ. of Chi.*,
No. 20 CV 7293, 2021 U.S. Dist. LEXIS 116182 (N.D. Ill. June 22, 2021)..........23

*Doe v. Plainfield Cmty. Consol. Sch. Dist. 202*,
No. 21 C 4460, 2023 U.S. Dist. LEXIS 39616 (N.D. Ill. Mar. 9, 2023) ................24

*Doe v. Trs of the Univ. of Penn.*,
270 F. Supp. 3d 799 (E.D. Pa. 2017) ....................................................................34

*Doe v. Univ. of Cent. Mo.*,
No. 4:20-00714-CV-RK, 2020 U.S. Dist. LEXIS 243068 (W.D. Mo. Dec. 28,
2020) ................................................................................................................28

*Doe v. Univ. of Tenn.*,
186 F. Supp. 3d 788 (M.D. Tenn. 2016)..........................................................12, 13

*EEOC v. Concentra Health Svcs., Inc.*,
496 F.3d 773 (7th Cir. 2007) .................................................................................10

*Farmer v. Kan. State Univ.*,
918 F.3d 1094 (10th Cir. 2019) .............................................................................18

*Fisher v. Lexington Health Care, Inc.*,
188 Ill.2d 455 (1999) ............................................................................................29

*Fleming v. Chi. Sch. of Prof'l Psychology*,
No. 15 C 9036, 2017 U.S. Dist. LEXIS 159669 (N.D. Ill. Sep. 28, 2017)..............37

*Frederick v. Nw. Univ. Dental Sch.*,
    247 Ill. App. 3d 464, 472 (1993) ........................................................37

*Freeman v. Busch*,
    349 F.3d 582 (8th Cir. 2003) .............................................................31

*Galligan v. Adtalem Glob. Educ. Inc.*,
    No. 17 C 6310, 2020 U.S. Dist. LEXIS 6563 (N.D. Ill. Jan. 15, 2020) ...........................38, 39

*Garrett v. Ohio State Univ.*,
    No. 21-3972/3974/3982/4070/4128, 2023 U.S. App. LEXIS 3606 (6th Cir.
    Feb. 15, 2023) ...............................................................................24

*Garrett v. Univ. of S. Fla. Bd. of Trs.*,
    448 F. Supp. 3d 1286 (M.D. Fla. 2020).................................................20

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998).............................................................15, 18, 21

*Ha v. Nw. Univ.*,
    No. 14 C 895, 2014 U.S. Dist. LEXIS 160046 (N.D. Ill. Nov. 13, 2014).............................20

*Harris v. United States*,
    No. 13-CV-8584, 2017 U.S. Dist. LEXIS 27424 (N.D. Ill. Feb. 28, 2017) ...........................33

*Hendricks v. Clemson Univ.*,
    353 S.C. 449 (S.C. 2003) ...................................................................39

*Holert v. Univ. of Chi.*,
    751 F. Supp. 1294 (N.D. Ill. 1990) .......................................................37

*Iseberg v. Gross*,
    227 Ill. 2d 78 (2007) .........................................................................40

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
    610 F.3d 382 (7th Cir. 2010) ..............................................................23

*JD1 v. Canisius Coll.*,
    No. 1:21-cv-521, 2022 U.S. Dist. LEXIS 113451 (W.D.N.Y. June 27, 2022)................24, 26

*Karasek v. Regents of Univ. of Cal.*,
    No. 15 Civ. 03717 (WHO), 2015 U.S. Dist. LEXIS 166524, 2015 WL
    8527338 (N.D. Cal. Dec. 11, 2015) .......................................................15

*Karasek v. Regents of the University of California*,
    956 F.3d 1093 (9th Cir. 2020) ...................................................... *passim*

*Karasek v. Regents of Univ. of Cal.*,
    500 F. Supp. 3d 967 (N.D. Cal. 2020) ....................................................................24

*Kelly v. Yale Univ.*,
    No. 3:01-CV-1591 (JCH), 2003 U.S. Dist. LEXIS 4543 (D. Conn. Mar. 26,
    2003) .....................................................................................................................20

*King v. Bd. of Control of Eastern Mich. Univ.*,
    221 F. Supp. 2d 783 (E.D. Mich. 2002) ..................................................................28

*King-White v. Humble Indep. Sch. Dist.*,
    803 F.3d 754 (5th Cir. 2015) ...................................................................................26

*Kollaritsch v. Mich. State Univ. Bd. of Trs.*,
    944 F.3d 613 (6th Circuit 2019) ...............................................................17, 18, 28

*Krebs v. Charlotte Sch. of Law, LLC*,
    No. 3:17-CV-00190-GCM, 2017 U.S. Dist. LEXIS 143060 (W.D.N.C. Sep. 5,
    2017) .....................................................................................................................39

*Lawshe v. Simpson*,
    16 F.3d 1475 (7th Cir. 1994) ...................................................................................24

*Leonardi v. Bradley Univ.*,
    253 Ill. App. 3d 685 (1993) ...............................................................................39, 40

*MacDonald v. Hinton*,
    361 Ill. App. 3d 378 (2005) .....................................................................................30

*Marmarchi v. Bd. of Trs. of the Univ. of Ill.*,
    715 F. App'x 529 (7th Cir. 2017) ............................................................................38

*Mathis v. Wayne Cnty. Bd. of Ed.*,
    782 F. Supp. 2d 542 (M.D. Tenn. 2011) .................................................................13

*McFadyen v. Duke Univ.*,
    786 F. Supp. 2d 887 (M.D.N.C. 2011) ...................................................................39

*Meng Huang v. Ohio State Univ.*,
    No. 2:19-cv-1976, 2022 U.S. Dist. LEXIS 133145 (S.D. Ohio July 26, 2022).......21

*Metzger v. DaRosa*,
    209 Ill. 2d 30 (2004) ...............................................................................................29

*Milchtein v. Milwaukee Cty.*,
    42 F.4th 814 (7th Cir. 2022) ...................................................................................23

*Miller v. MacMurray Coll.*,
2011 IL App (4th) 100988-U ...................................................................................38

*Monger v. Purdue Univ.*,
953 F. Supp. 260 (S.D. Ind. 1997) ....................................................................24, 26

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010)................................................................................................28

*O'Shea v. Augustana Coll.*,
No. 4:20-cv-04243-SLD-JEH, 2022 U.S. Dist. LEXIS 53150 (C.D. Ill. Mar.
24, 2022) .................................................................................................................29

*Oden v. N. Marianas Coll.*,
440 F.3d 1085 (9th Cir. 2006) ...............................................................................18

*Phillips v. DePaul Univ.*,
2012 Ill. Cir. LEXIS 3299 (Cook County Cir. Ct.)................................................38

*Phillips v. St. George's Univ.*,
2007 U.S. Dist. LEXIS 84674, 2007 WL 3407728 (E.D.N.Y. Nov. 15, 2007)......28

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) .................................................................................41

*Pogorzelska v. Vandercook Coll. of Music*,
442 F. Supp. 3d 1054 (N.D. Ill. 2020) .............................................................11, 19

*Posso v. Niagara Univ.*,
518 F. Supp. 3d 688 (W.D.N.Y. 2021) .......................................................13, 15, 17

*Purvis v. Ribas*,
No. 05-1350, 2006 U.S. Dist. LEXIS 55661 (C.D. Ill. Aug. 10, 2006)..................33

*Rabel v. Ill. Wesleyan Univ.*,
161 Ill. App. 3d 348 (1987) ........................................................................30, 31, 40

*Raethz v. Aurora Univ.*,
805 N.E.2d 696 (2004)............................................................................................37

*Reed v. S. Ill. Univ.*,
No. 3:18-CV-1968-GCS, 2020 U.S. Dist. LEXIS 101359 (S.D. Ill. June 10,
2020) .......................................................................................................................14

*Reyes v. Walker*,
2018 U.S. Dist. LEXIS 197878 (N.D. Ill. Nov. 19, 2018).....................................34

*Roskin-Frazee v. Columbia Univ.*,
2018 U.S. Dist. LEXIS 28937 (S.D.N.Y. Feb. 21, 2018) ..................................... 12, 13, 14, 15

*Ross v. Creighton Univ.*,
957 F.2d 410 (7th Cir. 1992) ............................................................................... 36

*Rowe v. State Bank of Lombard*,
125 Ill.2d 203 (1988) ........................................................................................... 40

*Ruff v. Han*,
No. 19-cv-05371, 2022 U.S. Dist. LEXIS 44031 (N.D. Ill. Mar. 14, 2022) .......................... 34

*Schweihs v. Chase Home Fin., LLC*,
2016 IL 120041 .......................................................................................... 33, 34, 36

*Simpson v. University of Colorado Boulder*,
500 F.3d 1170 (10th Cir. 2007) ....................................................................... 12, 15

*Singleton v. Chi. Sch. Reform Bd. of Trs. of the Bd. of Educ.*,
Case No. 00C395, 2000 U.S. Dist. LEXIS 8484 (N.D. Ill. June 13, 2000) ........................... 23

*Snyder-Hill v. Ohio State Univ.*,
48 F.4th 686 (6th Cir. 2022) ..................................................................... 24, 25, 26

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020) ("Massachusetts courts have consistently held that
no fiduciary relationship exists between a student and his or her college.") .......................... 39

*Totten v. Benedictine University*,
No. 20 C 6107, 2021 U.S. Dist. LEXIS 143882 (N.D. Ill. Aug. 2, 2021)
(Leinenweber, J.) ............................................................................... 19, 33, 35, 36

*Tubbs v. Stony Brook Univ.*,
2016 U.S. Dist. LEXIS 28465 (S.D.N.Y. Mar. 4, 2016) .................................................. 13, 14

*Weckhorst v. Kan. State Univ.*,
241 F. Supp. 3d 1154 (D. Kan. 2017) ..................................................................... 31

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*,
477 F.3d 1282 (11th Cir. 2007) ............................................................................. 12

*Yusuf v. Vassar Coll.*,
35 F.3d 709 (2d Cir. 1994) ..................................................................................... 22

*Zonshayn v. Sackler Sch. of Med.*,
2023 U.S. Dist. LEXIS 632 (S.D.N.Y. Jan. 3, 2023) ................................................. 28

**Statutes**

110 ILCS 155/20 ............................................................................................ *passim*

110 ILCS 155/35 ....................................................................................................16

735 ILCS 5/13-202 ................................................................................................32

735 ILCS 5/13-212 ................................................................................................23

735 ILCS 5/13-215 ................................................................................................42

20 U.S.C. § 1092(f) ...............................................................................................16

20 U.S.C. § 1681, *et seq*. ................................................................... *passim*

29 U.S.C. § 701, *et seq*. .........................................................................................4

42 U.S.C. § 12101, *et seq*. .....................................................................................4

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................................41

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1

**Other Authorities**

34 C.F.R. § 106.8(c)(d) ...........................................................................................9

Restatement (Second) of Torts § 46 cmt. d (1965) ...............................................34

Defendant Loyola University of Chicago ("Loyola"),[1] by its attorneys Kirsten A. Milton, Patrick J. Rocks and Julia S. Wolf of Jackson Lewis P.C., respectfully submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC") with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs are current and former Loyola students who allege they were sexually assaulted by other students. Plaintiffs seek to hold Loyola liable for the conduct of their assailants by alleging violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX"), the Illinois Preventing Sexual Violence in Higher Education Act, 110 ILCS 155/20, and nine other state law claims: negligence, negligent training/supervision/retention, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of contract, breach of fiduciary duty, premises liability, and fraud. With one exception, Plaintiffs filed their claims more than two years after their alleged assaults. Each of Plaintiffs' claims fails as a matter of law for the reasons discussed below.

## FACTUAL BACKGROUND[2]

### I.   The Plaintiffs

#### a.   Catherine Ann Cappello

Cappello enrolled as a graduate student at Loyola in 2011. FAC ¶ 30. In 2012, Cappello was assaulted by one of her classmates, a visiting priest from a foreign country. *Id.* ¶ 39. Unnamed persons precluded her from filing a complaint with the Title IX office and informed her no action

---

[1]     Incorrectly identified in Plaintiffs' original Complaint and the FAC as Loyola University Chicago.

[2]     As required by Federal Rule of Civil Procedure 12(b)(6), Loyola derives the facts stated in this memorandum from the FAC only for the purposes of this motion and does not address whether they are in fact true.

1

could be taken because the assailant was from another country and not under Loyola's direction and control. *Id*. ¶ 41. Later in 2012, Cappello's professors assigned her to work in a small group with the assailant. *Id*. ¶ 42. When she informed her professors that she was not comfortable working in a small group with him, she was told to either complete the assignment or take an incomplete grade. *Id*. Cappello took an incomplete and left Loyola before completing her degree. *Id*. ¶¶ 42-44. Cappello does not allege Loyola knew before the 2012 assault that the student was a threat to her or other students. Cappello also does not allege the student assaulted or harassed her after she reported the assault in 2012.

### b. Madeline Kane

Kane completed her undergraduate studies at Loyola in 2022 and currently is a graduate student at Loyola. FAC ¶ 46. In February 2020, a student sexually assaulted her at a fraternity party. *Id*. Kane electronically reported the incident to Loyola which acknowledged the report several days later and began an investigation. *Id*. ¶¶ 47-48. Kane also informed the fraternity's student leadership about the assault. *Id*. ¶ 49. The fraternity apologized and informed Kane that the person she identified as the assailant would not be allowed to join the fraternity. *Id*. Loyola took several months to investigate, provided Kane with negligible support during the investigation and concluded the person she identified as the assailant was not responsible due to insufficient evidence. *Id*. ¶¶ 50-56. Kane does not allege Loyola knew before the February 2020 assault that the student was a threat to her or other students. Kane also does not allege the student assaulted or harassed her after she reported the February 2020 incident. Kane also alleges that she was drugged at a different fraternity party in April 2021 but did not report that incident to Loyola. *Id*. ¶ 57. Kane does not allege the April 2021 incident involved sexual assault or harassment and does not identify the person who drugged her.

### c. Marissa Sepulveda

In 2018, Sepulveda began a five-year program that would have resulted in bachelor's and master's degree in social work in May 2023. FAC ¶ 60. In February 2019, a male student sexually assaulted her in a Loyola dorm building. *Id*. ¶ 61. She reported the incident to her dorm's resident assistant and Loyola began a Title IX investigation. *Id*. ¶ 62. Loyola did not remove the student from campus during the investigation. *Id*. ¶ 63. Two months later, in April 2019, the same student raped another female student. *Id*. ¶ 64. A police report was filed in the April 2019 incident and Loyola removed the student from campus and expelled him. *Id*.

In September 2019, Sepulveda was raped by another student in the bathroom of a Loyola dormitory. FAC ¶ 65. Around two years later, in September 2021, Sepulveda reported the September 2019 assault to Loyola. *Id*. ¶ 66. Loyola initiated a Title IX investigation and, at Sepulveda's request, issued a "no contact directive" against her assailant. *Id*. ¶ 69. Loyola estimated the Title IX investigation would be completed by December 2021 but did not complete the investigation until May 2022. *Id*. ¶¶ 67, 73. Loyola found the September 2019 assailant responsible for sexual misconduct, non-consensual sexual contact and penetration and dating/domestic violence. *Id*. Because the assailant was a graduating senior, Sepulveda obtained 2,600 signatures of other Loyola students seeking to prevent him from receiving a degree and participating in the graduation ceremony. *Id*. ¶¶ 74-75. Sepulveda later requested that Loyola revoke her assailant's degree. *Id*. ¶ 77. Loyola did not respond to her request. *Id*.

Like Cappello and Kane, Sepulveda does not allege Loyola knew the students who assaulted her in February and September 2019 were a threat before those assaults occurred. Sepulveda also does not allege the student who assaulted her in February 2019 assaulted her or sexually harassed her after she reported that assault. The only contact Sepulveda alleges having with the student who assaulted her in September 2019 occurred when he "made contact" at

3

Quidditch Club events he knew she would attend. FAC ¶ 70. Sepulveda does not describe how the assailant "made contact" with her but also does not allege the student sexually assaulted, harassed or had direct physical or verbal contact with her. Sepulveda left Loyola before completing her five-year degree program. *Id*. ¶ 79.

### d.  Amma Appiagyei-Dankah

Appiagyei-Dankah enrolled as an undergraduate student in 2013. She was assaulted by a male student in Spring 2014. FAC ¶¶ 81-82. She reported the assault to Loyola and was moved to a different dorm while the assailant was allowed to remain in his dorm. *Id*. ¶ 86. Despite a no-contact order, Appiagyei-Dankah recalls seeing her assailant in a dining hall. *Id*. ¶ 87. She does not allege Loyola had prior knowledge of sexual misconduct by her assailant or that she had adverse interactions with the assailant after she reported the assault.

Appiagyei-Dankah attended a hearing with a panel of unfamiliar administrators and her assailant and was asked to narrate how she was assaulted. *Id*. ¶ 88. The assailant was found guilty and expelled. *Id*. ¶ 91. Appiagyei-Dankah also was expelled the following summer after being placed on academic probation. *Id*. ¶ 92. Appiagyei-Dankah does not allege her expulsion was retaliatory. She alleges Loyola failed to provide academic accommodations (FAC ¶ 91) but does not allege a disability or any claims under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. or the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. Even if she had brought such claims, they would be untimely because they were filed more than two years after they accrued for the reasons discussed later in this memorandum regarding why Plaintiffs' Title IX claims are untimely.

Appiagyei-Dankah claims other students knew her assailant had assaulted or made sexual advances towards other women but notably does not allege Loyola knew about that conduct. FAC ¶ 89. She also claims she later learned that she and her friends had attended events with a student

4

named Ben Holm who was criminally charged with violently raping an underage girl and attended classes at Loyola for three years before pleading guilty. *Id*. ¶ 90. Appiagyei-Dankah does not allege when she learned Holm had been charged or convicted, whether he assaulted or harassed her or other students at Loyola or whether he engaged in other wrongful conduct while at Loyola. *Id*.[3]

### e. Jane Doe C

Doe C enrolled as an undergraduate student in 2013. FAC ¶ 96. In her sophomore year, she was subjected to multiple acts of domestic violence by a male student. *Id*. ¶ 97. Doe C informed a professor who informed her he was a mandated reporter. *Id*. ¶ 99. She received no follow-up from Loyola and her assailant continued to commit violent acts against her. *Id*. After one especially bad act of violence, she reported the violence to Campus Safety and she and the assailant were brought in for questioning. *Id*. ¶ 100. Campus Safety advised her that if she wanted to pursue any action against the assailant, she would need to report it to the Chicago Police Department ("CPD") and Loyola could not take disciplinary action against the assailant. *Id*.

Doe C also alleges the assailant bit her finger so badly that she sought medical treatment from the Wellness Center. FAC ¶ 103. Doe C informed the nurse that she injured herself while babysitting. *Id*. ¶ 104. Doe C provided photographs of her injuries to Loyola and informed Loyola that her assailant and his family threatened her if Loyola disciplined him. *Id*. ¶¶ 104-05. Loyola did not discipline the assailant. *Id*. ¶ 107. Doe C learned that the assailant assaulted another student at a basketball game and was suspended for one week. *Id*. ¶ 108. Two years after Doe C reported the domestic violence, she attended the same class with the assailant. *Id*. ¶ 109. Loyola

---

[3]     For historical context, based on information and belief, Holm pleaded guilty in Georgia on or around December 5, 2016. *See*  https://www.ajc.com/news/crime--law/accused-rapist-campus-university-should-have-told-students-say/P5mjr1e7SDJp8Csp2ZqsbL/ (last viewed on March 22, 2023).

administrators told her it was "up to her" whether to ask the assailant to change his course schedule. *Id*. ¶ 110. The assailant continued to be in her classes, club events and on campus. *Id*. ¶ 113.

### f. Jane Doe N

Doe N was enrolled from 2018 to 2019 and then transferred to another university. FAC ¶ 116. In December 2018, her dorm room was burglarized, the lock was damaged and electronics and other items were stolen. *Id*. ¶¶ 117-118. Doe N learned from other students that an unknown male entered Doe N's room and other rooms in the dorm. *Id*. ¶ 119. Doe N reported the burglary to Campus Safety and the CPD. *Id*. ¶ 120. CPD was not able to identify the burglar due to lack of camera footage in the dorm and she did not receive follow-up from Campus Safety. *Id*. ¶¶ 121-122. Doe N believes the burglar was able to surpass multiple checkpoints where students are required to show a student I.D. upon entry. *Id*. ¶ 124.

In January 2019, a Loyola student sexually assaulted Doe N. FAC ¶ 126. Doe N does not allege where the assault occurred or whether it was related to the burglary. She was advised by female peers not to make a Title IX report because it would amplify her distress and "go nowhere." *Id*. ¶ 127. Doe N made several inquiries about how she could file a report and pursue an investigation, but "did not receive clear communication" from Loyola and no resources were provided to her. *Id*. ¶ 128. She transferred out of Loyola in 2019. *Id*. ¶ 129.

### g. Jane Doe H

Doe H began her studies at Loyola in 2019 and is currently enrolled. FAC ¶ 131. She was assaulted by a Loyola student "known to be a serial predator." *Id*. ¶ 132. Doe H alleges her assailant sexually assaulted five students, including her, all of whom made reports to Loyola. *Id*. Doe H reported her assault to her Resident Advisor ("R.A."). *Id*. ¶ 134. Thereafter, the Resident Director of the dorm called a dorm-wide meeting and called Doe H a "whiny little brat" in front of 60 dormmates. *Id*. ¶ 135.

Doe H was informed that a formal Title IX complaint had been filed but received no follow up information and later learned no case had been initiated. FAC ¶ 136. Doe H was forced to live directly next to her assailant. *Id*. ¶ 137. Doe H was assaulted by the same assailant in October 2019. *Id*. ¶ 138. Doe H reported the sexual assault to a professor the day before Thanksgiving. *Id*. ¶ 139. The professor reported the assault to Loyola administrators and learned that no formal Title IX grievance had been filed to date. *Id*. ¶ 140. After Thanksgiving 2019, Doe H learned that her assailant had assaulted four other students. *Id*. ¶ 141. Doe H alleges that Tim Love, Loyola's Title IX coordinator "gave a statement on the case to a local new outlet" but does not allege Love referred to her by name or other identifying characteristics. *Id*. ¶ 143.

Loyola forced Doe H to testify against her assailant during final exams and felt that Loyola was calendaring the Title IX investigation during pivotal points in the semester. *Id*. ¶¶ 143-44. The investigation took over a year to complete; the assailant was expelled. *Id*. ¶ 146. Doe H believes Loyola did not report the assailant to law enforcement. *Id*.

**h. Jane Doe G**

Doe G began her studies at Loyola in 2019 and is currently enrolled. FAC ¶ 148. On November 7, 2019, she was assaulted by the same person Doe H had made multiple attempts to report to Loyola months prior. *Id*. ¶¶ 149-148. Soon after, Doe G learned from the assailant's roommate that the assailant had assaulted at least two other students in the same dorm. *Id*. ¶ 150. Doe G informed a professor in a course in which she and her assailant were enrolled that she was uncomfortable sitting near him or being in the same group with him due to the assault. *Id*. ¶ 151.

On November 14, 2019, Doe G received confirmation that a Title IX report was filed. FAC ¶ 152. She informed Loyola she wanted to pursue an investigation. *Id*. The Title IX office encouraged her to keep the complaint "internal" because Loyola was "handling it." *Id*. ¶ 153. Doe G alleges Loyola declined to provide her with resources she was entitled to receive under Illinois

and federal law, including an advocate. *Id*. ¶ 154. Loyola officials informed her they had received multiple complaints about her assailant and encouraged her to not speak with the other victims because it would make the investigation "easier" for Loyola. *Id*. ¶ 156. Doe G was not provided a support advocate and was discouraged from speaking with an attorney or law enforcement. *Id*.

Loyola officials requested that Doe G meet with them on multiple occasions and, in one meeting, retell her story and act out her assault. FAC ¶ 157. Loyola issued a no-contact order against the assailant. *Id*. ¶ 158. When Doe G learned she and her assailant were enrolled in the same course, Loyola did not force her assailant to choose a different course and instead encouraged Doe G to request that her assailant change his schedule. *Id*. Her assailant refused and they attended the same course for a semester during an active Title IX investigation. *Id*. ¶ 159.

Doe G's Title IX hearing was held on March 4, 2020. FAC ¶ 160. A preliminary report was issued on April 15, 2020. *Id*. On July 24, 2020, Doe G was informed that her assailant had been found responsible. *Id*. ¶ 162. The assailant was expelled. *Id*. ¶ 146.

### i. Jane Doe A

Doe A began her studies at Loyola in 2019 and is currently enrolled. FAC ¶ 165. In August 2019, she consumed a quarter of a drink and a single shot and became incapacitated. *Id*. ¶¶ 168-70. She learned that she had been assaulted while she was incapacitated. *Id*. ¶ 171. Several months later she reported the assault to the Title IX office. *Id*. ¶ 172. In February 2020, Loyola erroneously shared a document with Doe A that indicated two other female students reported being assaulted by Doe A's assailant. *Id*. ¶ 173. Doe A does not allege Loyola had prior knowledge of her assailant, the outcome of her investigation or whether she had further contact with the assailant after she reported her assault.

### j. Jane Doe E

Doe E began her studies at Loyola in 2019 and is currently enrolled. FAC ¶ 177. In December 2021, she participated in one of Loyola's overseas programs. *Id*. ¶ 178. A male student assigned as a R.A. in charge of Doe E and other students also participated in the program. *Id*. When Doe E was asleep in the male R.A.'s room, he attempted to sexually penetrate her. *Id*. ¶ 179. She informed the male that she was sleeping and did not consent to his sexual advances. *Id*. ¶ 180.

Doe E returned to the Chicago campus the following semester and learned that the male was an R.A. in a freshman dorm. *Id*. ¶ 181. She reported the R.A. to Loyola administrators and was informed that the case would be handled out of the Office of Equity and Compliance, not Title IX, because the assault occurred at an international campus.[4] *Id*. ¶ 183. Loyola informed Doe E that it had not received prior complaints about her assailant. *Id*.

Doe E informed Loyola that she was aware that her assailant had sexually assaulted others and was advised not to speak with those victims. FAC ¶ 184. Loyola informed Doe E that the student had a right to remain an R.A. until the investigation concluded. *Id*. ¶ 186. Doe E does not allege subsequent contact with her assailant, nor does she allege the outcome of the investigation.

## II. Alleged Facts Common to All Plaintiffs' Claims

Except for Doe C, Doe H and Doe G, Plaintiffs do not allege Loyola knew of any risks posed by their assailants prior to Plaintiffs' assaults. Instead, Plaintiffs allege Loyola was deliberately indifferent to the risk of sexual assaults by male students generally and "systematically mishandled student complaints of sexual violence and sexual harassment . . . dating back to at least 2011." FAC ¶ 189. To support this claim, Plaintiffs refer to:

---

[4]    *See,* 34 C.F.R. § 106.8(c)(d) (the grievance procedures mandated in section 106.8(c) of regulations issued by the U.S. Department of Education apply only to sex discrimination occurring against persons in the United States).

- A student newspaper, *The Phoenix*, wrote articles critical of how Loyola responded to reports of sexual assault, including that administrators lost a report of sexual assault in 2016, students held multiple protests on a nearly yearly basis demanding Loyola do more to combat violent sex crimes, Loyola allowed a professor to continue teaching after finding student complaints about sexual misconduct to be credible, Title IX investigators made serious errors in witness statements and Loyola allowed an expelled student to participate in a graduation ceremony. *Id.* ¶ 190.

- Alleged discrepancies in how two independent agencies, the Chicago Police Department and Loyola's Department of Campus Safety ("Campus Safety"), report crime data as described by *The Phoenix* in a 2017 article and based on statements in the article that conflate the author's conception of Loyola's "jurisdiction" and a "five-minute walk" from campus with specific obligations to report crimes under the Clery Act. *Id.* ¶¶ 191-192 n.9.

- Data from reports Loyola was required to file under the Preventing Violence in Higher Education Annual Report for years 2016 and 2017. *Id.* ¶¶ 194, 196.

- Data from reports for 2018-2020 Loyola was required to file with the United States Department of Education Office of Postsecondary Education ("USDOE"). *Id.* ¶¶ 199-200.

For reasons explained below, this action should be dismissed.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A complaint must plead particularized factual content, and not conclusory allegations, which would allow the court to plausibly infer the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678. A claim should be dismissed where, accepting as true all well-pled factual allegations, the complaint nevertheless fails to "plausibly suggest that the plaintiff has a right to relief, raising that possibility above 'a speculative level.'" *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

10

## ARGUMENT

### I.    Plaintiffs Do Not State a Claim Under Title IX

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Court recognized a private right of action under Title IX for student-on-student sexual harassment, but only where the school exhibits "deliberate indifference to known acts of harassment." *Id*. at 643 (finding allegations that a fifth-grade student had been subjected to five months of physical and verbal harassment by a classmate and school officials informed of the harassment failed to take any action to investigate or stop it, sufficient to state a claim). Specifically, to state a claim for one student's harassment of another, a plaintiff must allege: "(1) that the school exercised substantial control over both the harasser and the context in which the known harassment occurs; (2) the plaintiff must have suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive them of access to the educational opportunities or benefits provided by the school; (3) the school must have had actual knowledge of the harassment; (4) the school must have acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference must have caused the plaintiff to undergo harassment or make that student vulnerable to it." *Pogorzelska v. Vandercook Coll. of Music*, 442 F. Supp. 3d 1054, 1062 (N.D. Ill. 2020) (*citing Davis*, 526 U.S. 644-645). This is a "high standard" that applies only "in certain limited circumstances." *Davis*, 526 U.S. at 643.

Plaintiffs attempt to hold Loyola responsible for assaults committed by male students but do not allege Loyola knew those students posed a risk to female students prior to Plaintiffs' assaults. Although Plaintiffs propose various Title IX theories (discrimination on the basis of

gender,[5] pre- and post-assault, deliberate indifference and erroneous outcome), none states a cognizable claim.

### a. Plaintiffs Do Not State a Pre-Assault Claim.

Plaintiffs attempt to bring a Title IX "pre-assault" claim on the theory that Loyola had a *de facto* policy and culture of deliberate indifference to sexual assault on campus before their assaults occurred. Neither the Supreme Court nor the Seventh Circuit has considered a pre-assault *de facto* policy claim of the kind Plaintiffs allege here. The few courts that have allowed pre-assault claims however, typically limit a university's liability to instances where it had "actual knowledge of sexual assault(s) committed in a *particular* context or program or by a *particular* perpetrator or perpetrators." *Roskin-Frazee v. Columbia Univ.*, 2018 U.S. Dist. LEXIS 28937, at *14 (S.D.N.Y. Feb. 21, 2018) (internal citations omitted) (emphasis in original).

For example, in *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007), plaintiffs were sexually harassed during a school-sanctioned football recruiting program in which recruits were paired with female student "ambassadors" for the purpose of showing the recruits a "good time." *Id.* at 1173. Some recruits were "promised an opportunity to have sex," and the coaching staff knew of and encouraged the conduct. *Id.* at 1173-74. In reversing the lower court's grant of summary judgment for defendant, the court held that the risk of sexual assault occurring during recruiting visits was "obvious" such that the university's failure to take precautions amounted to deliberate indifference. *Id.* at 1184-85.

Other pre-assault cases similarly involved knowledge of a specific risk. *See, e.g.*, *Doe v. Univ. of Tenn.*, 186 F. Supp. 3d 788, 805-808 (M.D. Tenn. 2016) (pre-assault claim permitted where plaintiffs were assaulted by UT basketball and football players or others affiliated with them

---

[5]     Title IX prohibits discrimination on the basis of sex, rather than gender. "Deliberate indifference" is an element of all Title IX student-on-student sexual assault claims – it is not a separate theory of liability.

and the university knew "of a number of recent prior sexual assaults by UT football and basketball players, under similar circumstances as [plaintiffs] own assaults" and had attempted to cover them up); *Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007) (permitting a pre-assault claim where, prior to plaintiff's assault, the university allegedly knew specific facts about the perpetrator's history of past sexual harassment at other colleges); *Mathis v. Wayne Cnty. Bd. of Ed.*, 782 F. Supp. 2d 542 (M.D. Tenn. 2011) (finding sufficient knowledge where victims and the perpetrators were members of specific groups of students that had previously been involved in similar instances of assault); *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 701 (W.D.N.Y. 2021) (knowledge that the male swim team was the source of harassment of female swimmers was sufficient to state a claim). In short, "something more than general knowledge of assaults campus-wide (*i.e.*, some greater specificity) is required" to state a pre-assault claim. *Tubbs v. Stony Brook Univ.*, 2016 U.S. Dist. LEXIS 28465, at *27 (S.D.N.Y. Mar. 4, 2016); *c.f. Univ. of Tenn.*, 186 F. Supp. 3d at 806-07 ("plaintiffs allege far more than UT's knowledge of general risks or stereotypical assumptions; to the contrary, the plaintiffs allege that UT was put on notice of a specific and concrete pattern of an 'inordinate' number of sexual assault allegations against members of specific teams within the UT Athletic Department[.]" ).

*Roskin-Frazee v. Columbia University*, 2018 U.S. Dist. LEXIS 28937 (S.D.N.Y. Feb. 21, 2018) is instructive. Plaintiff alleged the university had a general policy of indifference to sexual misconduct on campus as evidenced by "[l]ittle to no meaningful discipline of students who committed acts of sexual misconduct," "[i]nterference with female students' access to Title IX resources," "[n]ot reporting incidents of sexual misconduct to the appropriate campus offices," and "[f]ailing to provide accommodations to female victims of sexual assault." *Id.* at *12-13. The plaintiff did not allege that the university had specific knowledge of a heightened risk of sexual

assault either by the assailant or in the particular contexts in which her assaults occurred, but rather relied on the "general allegation that Defendant has been the target of multiple student-led complaints and protests due to its discouragement of students from reporting on-campus sexual misconduct, and its failure to adequately respond to and address such reports when made." *Id.* at *13. The court concluded that "[w]hile these allegations may support the inference that [the university] was generally aware of the problem of sexual misconduct on campus and a deficiency in response to such a problem, this general level of awareness or deficiency is insufficient for purposes of asserting pre-assault, Title IX liability." *Id.* at *16.

Other than Doe G, Doe H, and Doe C, Plaintiffs do not allege Loyola was aware of prior sexual misconduct by their assailants or was deliberately indifferent to risks that those students posed. Instead, Plaintiffs claim Loyola was deliberately indifferent to sexual misconduct at Loyola generally, citing articles by a student newspaper about student protests and public complaints about Loyola's handling of Title IX cases. *See* FAC ¶¶ 189-90. General knowledge is not enough. *See, e.g.*, *Tubbs*, 2016 U.S. Dist. LEXIS 28465, at *27.

Plaintiffs appear to rely on *Karasek v. Regents of the University of California*, 956 F.3d 1093, 1113 (9th Cir. 2020), in which students brought a pre-assault claim based on an alleged policy of deliberate indifference to sexual assault generally. *See* FAC ¶ 204 n.16. As evidence of the policy, the *Karasek* plaintiffs pointed to a comprehensive state audit that found that the university mishandled approximately 76 percent of Title IX complaints as well as a statement from the university's Title IX coordinator that the informal Title IX process that was used in all but two of 500 cases of sexual assault was inappropriate. *Id*. at 1113. The court found plaintiffs' allegations sufficient to state a claim that the university "had a policy of deliberative indifference that

14

heightened the risk of sexual harassment on campus, resulting in the assaults [plaintiffs] experienced." *Id.* at 1114.

As the one district court in Illinois to have considered pre-assault claims noted, "*Karasek* seemingly stands alone in eschewing actual knowledge and allowing a broader claim to proceed." *Reed v. S. Ill. Univ.*, No. 3:18-CV-1968-GCS, 2020 U.S. Dist. LEXIS 101359, at \*18 (S.D. Ill. June 10, 2020) (dismissing a pre-assault claim). Indeed, *Karasek* is a significant expansion of the law and its holding has not been adopted by any court in this District or by the Seventh Circuit. Nor should it. As an initial matter, as the Supreme Court explained in *Gebser* and *Davis*, because Title IX is a Spending Clause statute and the right to recover damages in a private action is a judicially-created remedy, pre-assault claims should be narrowly defined. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 288 (1998) ("Congress did not intend to allow recovery in damages where liability rests solely on principles of . . . constructive notice"); *Davis*, 526 U.S. at 640. Further, *Davis* made clear that its holding "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment." 526 U.S. at 648 (emphasis added). Imposing liability in circumstances where plaintiff has not alleged specific knowledge "come[s] too close" to asking precisely that. *Roskin-Frazee*, 2018 U.S. Dist. LEXIS 28937, at \*16; *Karasek v. Regents of Univ. of Cal.*, No. 15 Civ. 03717 (WHO), 2015 U.S. Dist. LEXIS 166524, 2015 WL 8527338, at \*10 (N.D. Cal. Dec. 11, 2015). *Karasek* is an outlier with far-reaching implications, including opening the door to the possibility of pre-assault liability in any case where a school received criticism of its handling of prior sexual assault investigations.

For those reasons and consistent with the longstanding, majority approach, a student-on-student claim is actionable only if a plaintiff alleges a school was deliberately indifferent to (i) knowledge that the assailant engaged in sexual misconduct before the assault and posed a risk to

other students or (ii) knowledge of sexual assault(s) committed in a particular, relevant context or program. *See, e.g., Posso*, 518 F. Supp. at 701 (knowledge of the sexual harassment and physical violence within the swim team gave the school notice of the risk of sexual assault by a male swimmer); *Simpson*, 500 F.3d at 1178 (knowledge of an obvious risk of sexual misconduct related to a football program's recruiting weekend).

Even if *Karasek* correctly interprets Title IX, Plaintiffs have not alleged facts that plausibly state a claim. Instead, Plaintiffs rely on conclusory allegations and misinterpreted data reported in a student newspaper. For instance, Plaintiffs attempt to draw inferences based on the difference in crime data reported by the Chicago Police Department and Campus Safety without facts plausibly suggesting the two organizations are reporting the same data for the same geographic areas and for the same purposes. *See* FAC ¶¶ 192-93. That two independent organizations record and report data differently does not evidence intentional misreporting or wrongdoing. Plaintiffs similarly overlook important distinctions related to the Clery Act, which requires reporting within a defined "Clery geography" by relying only on a student writer's reference to Loyola's "jurisdiction," and not the reporting area defined in the applicable statute. *Id.* ¶¶ 27, 192.

Plaintiffs' citation to data reported to the USDOE and the State of Illinois also are unavailing. Crime data reported to USDOE under the Clery Act are subject to regulations that define the nature of the offenses and the locations where they occurred within the relevant Clery geography. *See* 20 U.S.C. § 1092(f). The Preventing Sexual Harassment in Higher Education Act ("PSVHEA") requires different data, specifically incidents reported to the Title IX coordinator or other responsible employees that occurred in the Clery Geography, including on-campus property, non-campus property and public property, that may not also be reported as crimes in the school's Clery data. *See* 110 ILCS 155/35. Nothing in the FAC plausibly supports an inference that the data

alleged in the FAC was not accurate, that Loyola intentionally underreported data, or that differences in those data suggest deliberate indifference.

In *Karasek*, the court found that plaintiff had plausibly alleged a policy of deliberate indifference where the California State Auditor produced a comprehensive report detailing the numerous deficiencies in the university's approach to sexual-misconduct complaints and where the university's Title IX officer admitted improperly using an informal process to resolve nearly 500 assault cases. 956 F.3d at 1113-1114. Plaintiffs allege nothing comparable. Plaintiffs only refer to opinions in a school newspaper and misinterpreted statistics and do not allege Loyola misdirected any assault cases to an informal process. Even under *Karasek*, Plaintiffs do not state a pre-assault claim.

### b.  Plaintiffs Do Not State a Post-Assault or Post-Report Claim.

Plaintiffs also purport to bring what they describe as a post-assault claim. *See* FAC p. 34 (First Cause of Action). Post-assault claims do not focus on the assault as the injury; instead, they focus on discrete injuries that occur after an assault is reported. Therefore, this claim more accurately should be called a "post-report" claim. Sepulveda demonstrates this distinction. She was assaulted in September 2019 but did not report the assault until September 2021. FAC ¶¶ 64-66. Sepulveda does not base her post-assault claim on events that occurred in the two years between the assault and the report. Her claim rests on events that occurred after she reported the assault in 2021. *Id*. ¶¶ 67-76. In any event, because the courts that have considered this claim refer to it as a post-assault claim, Defendant uses that term in the following analysis.

To plead a post-assault claim, Plaintiffs must plausibly allege that Loyola acted with "deliberate indifference" to the report of harassment, and that its "response to the harassment or lack thereof [was] clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. Circuits are split on whether, under *Davis*, a post-assault claim requires that the university's

deliberate indifference cause subsequent harassment or whether it is sufficient that the deliberate indifference made the plaintiff "vulnerable to" further harassment. *See Posso*, 518 F. Supp. 3d at 703 (acknowledging the split in authority). The Sixth Circuit requires a further incident of sexual harassment. *See Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613 (6th Circuit 2019). The Tenth Circuit, by contrast, has permitted post-assault claims where the university's deliberate indifference left a student generally vulnerable to further harassment. *See Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019). The Seventh Circuit has not considered this issue.

The Sixth Circuit's analysis in *Kollaritsch* is compelling and consistent with the Supreme Court's explanation in *Davis* that a claim against a school for its response to student-on-student sexual harassment is held to a "high standard" and that a cause of action exists only "in certain limited circumstances." *Kollaritsch*, 944 F.3d at 619. Analyzing *Davis* and deconstructing the Court's language, the *Kollaritsch* court held that to bring a claim under a post-assault theory, a "school's response must be clearly unreasonable and lead to further harassment." *Id. at* 622. Vulnerability to future harassment, alone, is not enough. *Id.*

Where a school's response to a report of harassment is not deliberately indifferent, a Title IX claim cannot stand. For example, delayed investigations, the decision not to implement certain protective measures, and the failure to abide by a school's policies are not *per se* clearly unreasonable. *See Karasek*, 956 F.3d at 1106-1111 (affirming dismissal of plaintiffs' individual Title IX claim despite allegations of delay and violations of policy and claims that the university's "response was wholly inequitable"). Even where "in hindsight, [the school's] decision . . . is troubling" and a court "might have handled the situation differently," a claim will not lie unless the decisions were "clearly unreasonable." *Id. at* 1108-09. Indeed, for a response to be clearly unreasonable and a claim to succeed, a plaintiff must demonstrate that the school's actions

amounted to "'an official decision . . . not to remedy'" the violation. *Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (quoting *Gebser*, 524 U.S. at 290). A "negligent, lazy, or careless" response will not suffice. *Oden*, 440 F.3d at 1089 (affirming summary judgment for the defendant despite the school taking nine months to convene a hearing on plaintiff's sexual assault complaint).

Courts have permitted post-assault claims only where the school's conduct was egregious and unjustifiable. In *Totten v. Benedictine University*, No. 20 C 6107, 2021 U.S. Dist. LEXIS 143882 (N.D. Ill. Aug. 2, 2021) (Leinenweber, J.), for example, the university concluded after an investigation that an assailant sexually assaulted the plaintiff on three occasions, yet failed to enforce its own no contact order as well as an order issued by DuPage County, did not recommend disciplinary action other than to prevent the assailant from living on campus, and repeatedly ignored plaintiff's requests for accommodations to avoid being in the same classes as her assailant. *Id.* at *16-21. In addition, the plaintiff alleged that a dean informed her that the university might have handled its Title IX investigation differently had she been a "different kind of student," suggesting the university's inadequate response was not simply lazy, but potentially deliberate. *Id.* at *21. Viewing the facts in the light most favorable to plaintiff, the court found the school's failure to act and discuss accommodations was deliberate and "clearly unreasonable" in light of the circumstances. *Id.* Likewise, *Pogorzelska v. Vandercook College of Music*, 442 F. Supp. 3d 1054, 1064 (N.D. Ill. 2020) (Aspen, J.) permitted a Title IX claim to proceed where the plaintiff alleged that the school found plaintiff's assailant "guilty but not guilty" of sexual assault, repeatedly failed to enforce its own no contact order and declined to make accommodations that would have prevented the plaintiff from attending classes with her assailant.

Plaintiffs do not plausibly allege Loyola's response to their reports of sexual assault was deliberately indifferent or inflicted actionable injuries on them. Kane, Sepulveda, Appiagyei-Dankah, Doe G, Doe H, Doe A, and Doe E all allege that their reports were investigated and, in the case of Appiagyei-Dankah, Doe G, and Doe H, resulted in their assailants being expelled from the University. FAC ¶ 57 (Kane), ¶ 73 (Sepulveda), ¶ 91 (Appiagyei-Dankah), ¶¶ 144-46 (Doe H), ¶¶ 152-57 (Doe G), ¶¶ 172-73 (Doe A), ¶ 183 (Doe E). Doe A does not allege the outcome of the investigation but does not allege any concerns about the reasonableness of the investigation.[6] *See* FAC ¶ 172. Doe N, meanwhile, does not allege that she reported her assault to Loyola and therefore cannot allege that Loyola's handling was unreasonable. *Id.* ¶¶ 127-128.

That investigations may have taken longer than Plaintiffs wished, or Loyola anticipated, or were not conducted in the manner Plaintiffs preferred, does not mean Loyola was deliberately indifferent. *See Karasek*, 956 F.3d at 1106-1111. Plaintiffs also do not allege facts that plausibly explain why not banning the accused students from campus or from attending certain classes or activities was deliberately indifferent under the alleged circumstances. "Title IX imposes no obligation to eliminate conclusively every trace of discomfort resulting from student-on-student sexual misconduct." *Garrett v. Univ. of S. Fla. Bd. of Trs.*, 448 F. Supp. 3d 1286, 1291 (M.D. Fla. 2020). "As a matter of law, . . . choosing not to eliminate . . . every occasion on which [assailant] might appear inadvertently in [Plaintiff's] range of perception was not — to say the least — clearly unreasonable." *Id.*; *see also Kelly v. Yale Univ.*, No. 3:01-CV-1591 (JCH), 2003 U.S. Dist. LEXIS 4543, at *12-13 (D. Conn. Mar. 26, 2003) ("the court does not find that Yale's refusal to bar [assailant] from attending classes was clearly unreasonable"); *Ha v. Nw. Univ.*, No. 14 C

---

[6]    Doe A alleges that Loyola erroneously shared a document with her indicating that other female students had reported Doe A's assailant. FAC ¶ 173. Doe A does not allege that this apparently inadvertent disclosure influenced or prejudiced the investigation of her allegations.

895, 2014 U.S. Dist. LEXIS 160046, at *7 (N.D. Ill. Nov. 13, 2014) (mere "knowledge of [the alleged assailant's] presence on the campus" not actionable under Title IX). As the court in *Garrett* explained, "if the prospect of future proximity between a victim and an alleged assailant creates an irreconcilably hostile educational environment, a university confronted with an allegation of non-consensual sexual contact has almost no choice — regardless of the severity of the contact — other than to expel the accused." *Davis* specifically condemns this result. *See Davis*, 526 U.S. at 648 (rejecting the contention that a university can avoid Title IX liability only by expelling "every student accused of misconduct involving sexual overtones").

Plaintiffs' allegations about how Loyola responded to other complaints alleged in the FAC similarly do not plausibly state that Loyola was deliberately indifferent. For example, not reporting an assault to law enforcement without the victim's consent does not demonstrate deliberate indifference. *See, e.g.*, FAC ¶ 146. Nor is it deliberately indifferent to encourage students not to discuss ongoing investigations with other students. *See, e.g.*, *id*. ¶ 184. To the contrary, that conduct could jeopardize the integrity of the investigation. In sum, with few exceptions discussed below, Plaintiffs do not plausibly allege that Loyola's response to their complaints about sexual assault amount to deliberate indifference necessary to meet the "high standard" required to state a claim under Title IX. *See Gebser*, 524 U.S. at 290.

Further, seven of the ten Plaintiffs do not allege they suffered sexual harassment or other cognizable injury as a result of Loyola's response to their complaints. Other than Doe C and Doe H, Plaintiffs do not allege their assailants harassed or assaulted them after they submitted their reports. In fact, Kane, Doe N, Doe A, Doe E and Appiagyei-Dankah do not allege subsequent contact or interaction with their assailants.

While Sepulveda and Doe G both allege subsequent contact with their assailants, neither allege that they suffered a cognizable injury as a result. Not banning Sepulveda's September 2019 assailant from the Quidditch Club and allowing him to graduate did not injure her. Likewise, Doe G's complaint that she and her assailant were in the same class, without more, is not actionable. *See, e.g.*, *Meng Huang v. Ohio State Univ.*, No. 2:19-cv-1976, 2022 U.S. Dist. LEXIS 133145, at *9 (S.D. Ohio July 26, 2022) (finding plaintiff failed to plead further harassment where she was able to continue her studies and not "put . . . in the position of choosing whether to give up an educational opportunity to avoid contact with [assailant] or to continue her [course of] study while fearing further harassment or abuse" and dismissing her claim as a result). Because Kane, Sepulveda, Appiagyei-Dankah, Doe N, Doe A, Doe E and Doe G do not plead that Loyola caused them subsequent harm, none can state a claim under a post-assault theory.[7]

### c. Plaintiffs Do Not State a Claim for Erroneous Outcome.

To state a claim for an erroneous outcome, a plaintiff must "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome[.]" *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017). In particular, a plaintiff must "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)); *Doe v. Bd. of Regents of the Univ. of Wis.*, No. 20-cv-856-wmc, 2021 U.S. Dist. LEXIS 212351, at *13-14 (W.D. Wis. Nov. 3, 2021). First, Plaintiffs do not allege Loyola made any findings adverse to them, such as suspension or removal. Their alleged "erroneous outcomes" are that Loyola did not impose adverse actions

---

[7]     Cappello's claim that she was forced to work in a small group with her assailant may be sufficient to state a post-assault claim. Doe H and Doe C also may have alleged facts sufficient to state a claim. Doe H alleges after she reported sexual assault, she was assaulted by the same person and was called a "whiny little brat" by a residence hall director. FAC ¶¶ 134-138. Doe C alleges she continued to experience domestic violence after her initial report. *Id.* ¶¶ 97-104.

on other students. That is not sufficient to state an erroneous outcome claim. *See Borkowski v. Balt. Cty.*, 492 F. Supp. 3d 454, 489 (D. Md. 2020) ("[e]rroneous outcome claims exist to remedy the rights of a person who is improperly disciplined by the university").

Even if Plaintiffs could allege erroneous outcomes with respect to their assailants, they fail to do so. As an initial matter, Kane is the only plaintiff who alleges the Title IX investigation reached the wrong conclusion.[8] Second, Plaintiffs do not allege facts to plausibly suggest that an erroneous outcome was due to Loyola's bias against female students. *See, e.g.*, *Doe v. Loyola Univ. Chi.*, No. 20 CV 7293, 2021 U.S. Dist. LEXIS 116182, at *18 (N.D. Ill. June 22, 2021) (the "test[] [for an erroneous outcome claim]. . .turn[s] on whether the alleged facts, if true, raise a plausible inference that the university discriminated on the basis of sex"). To the contrary, they allege Loyola expelled three of Plaintiffs' male assailants and found another guilty of four separate sexual violations. FAC ¶¶ 73, 91, 146, 162.

> **d. Plaintiffs' Title IX Claims are Time-Barred.**

With the exception of Doe E, Plaintiffs' Title IX claims are untimely. Although the statute of limitations is an affirmative defense that must ordinarily be pleaded and proved by the defendant, "if it is plain from the complaint that the defense is indeed a bar to the suit[,] dismissal is proper without further pleading." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010); *Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 822 (7th Cir. 2022) ("dismissal for untimeliness is proper when the plaintiff's allegations establish that the statute of limitations bars recovery").

---

[8]     Cappello alleges no investigation occurred. Sepulveda does not allege the outcomes of Loyola's investigations of her complaints were wrong and instead claims that Loyola's decision not to prevent her September 2019 assailant from receiving a degree was "erroneous." *See* FAC ¶ 207. Sepulveda's February 2019 assailant was expelled. *Id*. ¶ 64.  Appiagyei-Dankah and Does G and H also allege their assailants were expelled. FAC ¶¶ 91, 146, 162. Does A, C, E and N do not allege an outcome. *See generally* FAC ¶¶ 96-130, 165-176, 177-186.

Title IX claims are subject to the two-year statute of limitations for personal injury claims in 735 ILCS 5/13-212. *Doe v. Howe Military Sch.*, 227 F.3d 981, 987 (7th Cir. 2000) (statute of limitations for Title IX claims are taken from the state limitations period for personal injury cases); *Singleton v. Chi. Sch. Reform Bd. of Trs. of the Bd. of Educ.*, Case No. 00C395, 2000 U.S. Dist. LEXIS 8484, at *55 (N.D. Ill. June 13, 2000) (applying two-year Illinois statute of limitations for personal injury to Title IX claim). "While courts look to state law to determine the length of the limitations period, the date of accrual of the cause of action remains a function of federal law." *Monger v. Purdue Univ.*, 953 F. Supp. 260, 264 (S.D. Ind. 1997) (citing *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994)).

As noted above, "[t]he Seventh Circuit has yet to adjudicate a pre-assault, 'official policy' claim under Title IX" of the type Plaintiffs allege and has not addressed when a pre-assault claim accrues. *Doe v. Plainfield Cmty. Consol. Sch. Dist. 202*, No. 21 C 4460, 2023 U.S. Dist. LEXIS 39616, at *17 (N.D. Ill. Mar. 9, 2023). Courts that have permitted pre-assault claims, however, have held that they "accrue[] when [the plaintiff] 'knows or has reason to know' not only that he was injured but also that 'the defendant caused' his injury." *Garrett v. Ohio State Univ.*, No. 21-3972/3974/3982/4070/4128, 2023 U.S. App. LEXIS 3606, at *9 (6th Cir. Feb. 15, 2023); *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701 (6th Cir. 2022) (Plaintiffs "must discover both their injury and its cause."). In other words, in the context of a pre-assault policy claim, a plaintiff's claim accrues when he or she knows of the injury and "knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk[.]" *Karasek v. Regents of Univ. of Cal.*, 500 F. Supp. 3d 967, 978 (N.D. Cal. 2020); *see also JD1 v. Canisius Coll.*, No. 1:21-cv-521, 2022 U.S. Dist. LEXIS 113451, at *34 (W.D.N.Y. June 27, 2022) (In pre-assault cases, "the injury that is the basis of the plaintiff's action is not the assault," but the school's "policy of deliberate

indifference that created a heightened risk of harassment, which is ultimately causally connected with the assault[.]" As such, the claims accrues when plaintiffs know or have reason to know of the school's policy).

Loyola denies it has a policy of deliberate indifference toward sexual assault and, as discussed above, denies that Plaintiffs can bring a pre-assault claim based on non-specific allegations of a generalized indifference to sexual assault. *See supra* I.A. Title IX requires deliberate indifference to a known, particular risk of harm, not a generalized assumption that all male students present a risk. *Id*. Assuming solely for the purposes of this motion, however, that Plaintiffs could allege a plausible pre-assault policy claim, the claim would nevertheless be barred by the statute of limitations because Plaintiffs allege the policy was the subject of public discourse for many years prior to their assaults. Specifically, Plaintiffs allege that Loyola had a *de facto* policy of deliberate indifference "dating back to *at least 2011*." FAC ¶¶ 2, 189 (emphasis added); *see also id.* ¶ 191 (alleging Loyola "grossly underreported the number of sexually violent incidents that occurred during the years prior to Plaintiffs' enrollment"). By Plaintiffs' own admission, Loyola's alleged indifference to sexual assault on campus was widely known and reported in numerous articles in Loyola's student newspaper, *The Phoenix*. *Id.* ¶¶ 190, 192 n.9. The allegedly "well-documented pattern of discrimination and sexual misconduct . . . created an atmosphere on campus that was permeated with discriminatory intimidation, ridicule and insult[.]" *Id*. ¶ 210. Indeed, Plaintiffs allege that "multiple protests have been held, on a nearly yearly basis, by students demanding Loyola do more to combat violent sex crimes from occurring at the university." *Id.* ¶ 190.

In short, Plaintiffs' allegations make clear that they knew or had reason to know of Loyola's alleged policy of deliberate indifference at the time their assault occurred and therefore possessed

all of the information necessary to assert a claim that Loyola was responsible. This is not a case where plaintiffs learned of a university's supposed deliberate indifference only after discovering facts after their assaults. *C.f. Snyder-Hill*, 48 F.4th at 707 (permitting claims more than two years after plaintiffs' assaults occurred where "plaintiffs plausibly allege that they did not know and lacked reason to know that Ohio State caused their injury"). By Plaintiffs own allegations, Loyola's deliberate indifference was publicly known at the time of each of their assaults which, in each case other than Doe E, was more than two years prior to the filing of the Complaint. Therefore, even if Plaintiffs could allege cognizable pre-assault claims, those claims would nevertheless be time-barred.

The post-assault claims brought by Cappello, Kane, Appiagyei-Dankah, and Does A, C, G, H, and N are also untimely. A "Title IX claim accrue[s] when [plaintiff] knew or had reason to know of her injury." *Monger*, 953 F. Supp. at 264. Courts that have considered post-assault claims have generally held that they accrue when a student becomes aware of an injury caused by the school's mishandling of their reports of sexual harassment or assault. *See, e.g.*, *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 704 (6th Cir. 2022) (describing post-assault claims as accruing upon knowledge of the school's inadequate response); *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) (plaintiffs' post-assault claims accrued when their complaints to the school administrations went "unheeded"); *Canisius Coll.*, 2022 U.S. Dist. LEXIS 113451, at *42 ("For the post-assault claims, JD1 and JD2's injuries would be the discrimination and harassment they allegedly experienced after they were allegedly sexually assaulted.").

Here, only three of the named plaintiffs – Cappello, Doe C and Doe H – allege a plausible post-assault injury. Each of those injuries occurred well more than two years before the Complaint of the FAC was filed. Cappello alleges that she was sexually assaulted in 2012, was precluded

from filing a formal report with the Title IX office, and "later that year" was assigned to work in a small group with her assailant. FAC ¶¶ 39-42. Doe H alleges she was assaulted in the Fall of 2019, reported the assault to her resident advisor, and was assaulted again in October 2019. *Id*. ¶¶ 134-38. Doe C alleges that she was subjected to domestic violence in 2014 and two years later was in the same class as her assailant. *Id*. ¶¶ 97, 109. Plaintiffs knew of their alleged post-assault injuries in 2012, 2016 and 2019, respectively, but waited until 2022 (Capello) and 2023 (Doe C and Doe H) to file their complaints. Their claims are time-barred as a result.

To the extent any of the other Plaintiffs could allege a post-assault claim, their claims are also time-barred under any theory of accrual. Amma Appiagyei-Dankah alleges she was assaulted in 2013 and left Loyola in 2014. *Id*. ¶¶ 82, 92. Does A, N, G's alleged assaults occurred more recently but still outside the statutory period. Doe A alleges she was assaulted in August 2019 and that the investigation took place in 2020. FAC ¶¶ 166, 173. Doe N alleges that she was assaulted in January 2019 and does not allege that she reported the assault to Loyola. *Id*. ¶ 126. Doe G alleges she was assaulted in November 2019 and that the investigation was completed and her assailant was expelled in July 2020. *Id*. ¶¶ 149, 162. In each instance, the FAC was filed more than two years after the last possible date their claims could have accrued.

Kane and Sepulveda's claims are also untimely. Kane alleges that she was sexually assaulted in February 2020 and that the deficiencies in Loyola's investigation were readily apparent from the start of Loyola's investigation and well before the investigation concluded in September 2020. As a result, any post-assault claim would have accrued before September 2020 and more than two years before she filed the Complaint in September 2022. Sepulveda was first assaulted in February 2019 and the student who assaulted her was expelled by Summer 2019.[9]

---

[9]      Sepulveda claims Loyola did not prevent the student who assaulted her in September 2019 from attending Quidditch events after she reported her assault in September 2021 or graduating in the Spring of

### e. Doe E Does Not State a Title IX Claim Because the Assault Occurred Outside the United States.

Doe E alleges she was assaulted in a dorm room on one of Loyola's international campuses. FAC ¶ 177. Title IX does not apply to foreign conduct. *Zonshayn v. Sackler Sch. of Med.*, 2023 U.S. Dist. LEXIS 632, at *16 (S.D.N.Y. Jan. 3, 2023) (describing the presumption against extraterritoriality and finding that "the plain text of Title IX makes clear that the statute only applies to domestic conduct"). Loyola is aware of the contrary decision in *King v. Bd. of Control of Eastern Mich. Univ.*, 221 F. Supp. 2d 783 (E.D. Mich. 2002), but asserts that *Zonshayn* represents the current, better reasoned, majority view and is consistent with *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)'s holding that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *See Zonshayn*, 2023 U.S. Dist. LEXIS 632, at *18 (rejecting *King* and noting that it predates *Morrison*); *see also Doe v. Univ. of Cent. Mo.*, No. 4:20-00714-CV-RK, 2020 U.S. Dist. LEXIS 243068, at *5 (W.D. Mo. Dec. 28, 2020) (finding Title IX does not apply extraterritorially and rejecting *King*); *Phillips v. St. George's Univ.*, 2007 U.S. Dist. LEXIS 84674, 2007 WL 3407728 (E.D.N.Y. Nov. 15, 2007) (Title IX did not apply extraterritorially to American student allegedly sexually harassed at veterinary school in Grenada).

Doe E also does not allege any post-assault injury upon her return to campus. Her only allegation is that she "lived in fear that her assailant remained on campus with unfettered access to [her] and other potential victims." FAC ¶ 187. This generalized concern does not state a claim. *See Kollaritsch*, 944 F.3d at 625 (finding plaintiff's claim that she "could have encountered [her assailant] at any time" due to his "mere presence . . . on campus" did not amount to post-encounter harassment and that she failed to state a claim as a result).

---

2022. FAC ¶¶ 70, 74-75. Those allegations do not state a plausible post-assault claim for the reasons stated above, but if the Court finds they do, Loyola recognizes those events occurred within the two-year period before the Complaint was filed.

II.     **Plaintiffs Fail to State a Claim under the Illinois Preventing Sexual Violence in Higher Education Act**

Illinois's Preventing Sexual Violence in Higher Education Act ("PSVHEA") does not include an explicit private right of action. Whether the PSVHEA creates an implied private right of action is an issue of first impression. To date, the only federal court that has considered this issue declined to exercise supplemental jurisdiction because no Illinois court had found an implied private right of action. *O'Shea v. Augustana Coll.*, No. 4:20-cv-04243-SLD-JEH, 2022 U.S. Dist. LEXIS 53150, at *32 (C.D. Ill. Mar. 24, 2022).

Plaintiffs cite *Metzger v. DaRosa*, 209 Ill. 2d 30, 36 (2004) for the general proposition that Illinois courts can recognize private rights of action based on statutes. FAC ¶ 218. *Metzger*, however, held that the Illinois Personnel Code *did not* allow a private right of action. 209 Ill. 2d at 45. Citing *Fisher v. Lexington Health Care, Inc.*, 188 Ill.2d 455, 460 (1999), *Metzger* held that a private right of action may be implied from a statute if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Id.* at *37.

Here, a private right of action is not consistent with the purpose of the PSVHEA, which was passed to ensure institutions of higher education adopt policies, train personnel, provide support services and issue required reports in an effort to prevent sexual assault on campus. Compliance with the Act is regulated by the Illinois Board of Higher Education ("IBHE") and enforcement authority lies with the IBHE and the Attorney General. Nothing in the Act suggests a remedy for individual students. Indeed, under Plaintiffs' theory, every student could potentially bring a claim in the event of non-compliance with the Act's requirements. The PSVHEA also does

not impose liability in the event of a sexual assault. Its focus is on ensuring that academic institutions have the appropriate structures in place to combat and address sexual misconduct. Where an assault occurs, a student's remedy against the school is, if any, through Title IX.

If the Court determines a private right of action is available under the Act, Plaintiffs' claim should be dismissed nonetheless because Plaintiffs have not alleged with any specificity how Loyola violated the Act or how those violations injured Plaintiffs. Plaintiffs also cannot bring a PSVHEA claim based on events that occurred before the effective date of the Act in 2015.[10]

## III. Plaintiffs Do Not State Claims for Negligence, Negligent Training/Supervision and Gross Negligence

In Counts III, IV, and V, Plaintiffs seeks to recover based on theories of negligence, negligent training/supervision and gross negligence. Plaintiffs' claims fail for several reasons. To state a cause of action in negligence, a plaintiff must establish the existence of a duty owed by the defendant to the plaintiff, the breach of that duty, and an injury proximately resulting from the breach. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 21. "The existence of a duty, that is, a legal obligation to conform one's conduct to a certain standard for the benefit or protection of another, is a matter of law to be determined by the court." *Rabel v. Ill. Wesleyan Univ.*, 161 Ill. App. 3d 348, 355-56 (1987). "Ordinarily, a party owes no duty of care to protect another from the harmful or criminal acts of third persons." *MacDonald v. Hinton*, 361 Ill. App. 3d 378, 836 (2005) (citations omitted).

Plaintiffs have not alleged a legal duty. Plaintiffs claim that Loyola owed a duty to them as students to "ensure their safety and freedom from sexual assault and harassment" and to "properly supervise, train, and monitors its employees and students to ensure . . . compliance with Title IX and all applicable federal and state regulations." FAC ¶¶ 225, 234. "[T]he general rule," however,

---

[10]     Claims by Cappello (2012), Appiagyei-Dankah (2013), and Doe C (2013) are in this category.

"is that no special relationship exists between a college and its own students because a college is not an insurer of the safety of its students," *Freeman v. Busch*, 349 F.3d 582, 587-88 (8th Cir. 2003), and courts have repeatedly dismissed claims on that basis in circumstances similar to those alleged here. *See, e.g.*, *Weckhorst v. Kan. State Univ.*, 241 F. Supp. 3d 1154, 1179-80 (D. Kan. 2017) (dismissing negligence claims against a university after a student was raped by multiple students at a fraternity party, finding that the "relationships between [the university], [the] [p]laintiff, and the alleged assailants [did] not give rise to a legal duty owed to [the] [p]laintiff"); *Doe 1 v. Baylor Univ.*, 240 F. Supp. 3d 646, 666-67 (W.D. Tex. 2017) (rejecting negligence claim stemming from plaintiffs' sexual assault because university did not have a duty to protect students from harmful acts of other students).

Courts in Illinois have reached the same conclusion. *See Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 962 (N.D. Ill. 2017) (dismissing negligence claim brought by a student alleging the college owed him a duty to abide by its own policies); *Rabel*, 161 Ill. App. 3d at 348 (rejecting negligence claim because the university "[had not] voluntarily assumed or placed itself in a custodial relationship with its students, for purposes of imposing a duty to protect its students from [injuries]"); *see also Bogenberger*, 2018 IL 120951, ¶ 38 (noting "appellate court[s] ha[ve] rejected attempts to hold universities liable for harm perpetrated by one student upon another in the absence of a special relationship"). As the court in *Rabel* explained:

> [T]he university's responsibility to its students, as an institution of higher education, is to properly educate them. It would be unrealistic to impose upon a university the additional role of custodian over its adult students and to charge it with the responsibility for assuring their safety and the safety of others. Imposing such a duty of protection would place the university in the position of an insurer of the safety of its students. 161 Ill. App. 3d at 361.

Plaintiffs attempt to impose on Loyola the duty rejected in *Rabel*.

Plaintiffs also have not alleged facts to establish that their assaults were foreseeable such that Loyola could have had a duty to them in these circumstances. Plaintiffs' conclusory, unsupported allegations that Loyola knew of a "staggering number of sexual assaults" and that it "took no reasonable measure to protect Plaintiffs" and "failed to follow federal and state regulations" cannot sustain their claim. *See* FAC ¶¶ 226-228.

Second, even if Loyola did owe a duty to Plaintiffs, Plaintiffs have not pleaded a breach of that duty or that the alleged breach caused Plaintiffs' injuries. Even taking as true Plaintiffs' allegation that Loyola failed to follow its own policies related to investigating and resolving complaints of sexual assault and failed to "properly supervise, train, and monitor its employees," Plaintiffs do not plausibly allege that failure proximately caused their assaults. *See* FAC ¶¶ 228, 234. Plaintiffs' conclusory assertion that Loyola's alleged breaches "caused harm" and were a "proximate cause" do not state a claim. *See Id.* ¶¶ 109-110, 117-117, 124-125; *Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements").

Finally, other than Doe E, Plaintiffs' negligence claims are time-barred under the two-year statute of limitations for personal injury claims in 735 ILCS 5/13-202. Plaintiffs' claims accrued at the time of their assaults in 2012 (Cappello), 2014 (Appiagyei-Dankah and Doe C), 2019 (Sepulveda and Does A, G, H and N), and 2020 (Kane). Because Plaintiffs Cappella, Sepulveda and Kane did not file their original Complaint until September 2022,[11] and Plaintiffs Appiagyei-Dankah, and Does A, C, G, H, and N did not file the FAC until March 2023, their negligence claims are untimely.

---

[11] Kane alleges she was assaulted in February 2020 (FAC ¶ 46) but did not file the Complaint until September 2022.

**IV.  Plaintiffs Do Not State a Claim for Negligent Infliction of Emotional Distress**

Plaintiffs' negligent infliction of emotional distress ("NIED") claim fails for the same reasons as their other negligence claims. For a direct victim[12] to state a claim for NIED in Illinois, she must allege: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; and (3) that plaintiff's injury was proximately caused by that breach." *Harris v. United States*, No. 13-CV-8584, 2017 U.S. Dist. LEXIS 27424, at *6 (N.D. Ill. Feb. 28, 2017). In addition, a "direct victim's claims for negligent infliction of emotional distress must include an allegation of contemporaneous physical injury or impact." *Schweihs v. Chase Home Fin., LLC,* 2016 IL 120041 ¶ 38.

First, the facts alleged in the FAC do not support a claim that Loyola had a legal duty to protect them from sexual assault. *See Columbia Coll. Chi.*, 299 F. Supp. 3d at 965 (rejecting student's NIED claim because he "failed to . . . sufficiently allege that CCC owed Doe a duty to protect him from the harmful acts of third parties or that CCC owed Doe a duty under its policies and student manuals"); *Totten*, 2021 U.S. Dist. LEXIS 143882, at *32 (finding the university "did not have a duty to protect [Totten] from the harmful acts of third parties" and dismissing plaintiff's NIED claim).

To the extent Plaintiffs' NIED claim is based on Loyola's response to Plaintiffs' sexual assault allegations, their claims also fail because Plaintiffs (i) do not allege a legal duty, (ii) do not allege facts demonstrating a breach of that duty, and (iii) do not allege a "contemporaneous physical impact . . . as a result of the defendant's negligence." *Purvis v. Ribas*, No. 05-1350, 2006 U.S. Dist. LEXIS 55661, at *9 (C.D. Ill. Aug. 10, 2006) (emphasis added). Although Plaintiffs have alleged injuries that occurred at the time of their assaults, if Loyola's alleged negligence is

---

[12]     Illinois law imposes different standards for "direct" and "bystander" negligent infliction of emotional distress claims. *Schweihs*, 2016 IL 120041, ¶ 19.

its conduct after Plaintiffs reported their assault, then Plaintiffs have not alleged that Loyola's negligence result in a physical contemporaneous impact.

Finally, Plaintiffs' NIED claims are subject to a two-year statute of limitations and, with the exception of Doe E, are time-barred as discussed above. *See, e.g.*, *Ruff v. Han*, No. 19-cv-05371, 2022 U.S. Dist. LEXIS 44031, at *8 (N.D. Ill. Mar. 14, 2022) (IIED and NIED claims governed by the same two-year statute of limitations).

## V. Plaintiffs Do Not State a Claim for Intentional Infliction of Emotional Distress

To state a claim for the intentional infliction of emotional distress (IIED), a plaintiff must allege that (1) the conduct was extreme and outrageous; (2) the defendant intended to inflict severe emotional distress or knew there was a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *Schweihs,* 2016 IL 120041, ¶ 50. "Illinois has a high standard for extreme and outrageous conduct." *Reyes v. Walker*, 2018 U.S. Dist. LEXIS 197878, at *18 (N.D. Ill. Nov. 19, 2018). The offending conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Schweihs*, 2016 IL 120041, ¶ 51 (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)).

A flawed Title IX investigation does not rise to the level of extreme and outrageous conduct necessary to state a claim for IIED. *See, e.g.*, *Columbia Coll. Chi.*, 299 F. Supp. 3d at 964-65 ("[E]ven if the Court were to accept that [the college's] resolution of Roe's sexual assault complaint was unfair or unreasonable, Doe does not allege conduct that constitutes the type of extreme, targeted, and malicious conduct required for an IIED claim."); *Doe v. Trs of the Univ. of Penn.*, 270 F. Supp. 3d 799, 822-25 (E.D. Pa. 2017) (finding allegations that the university distorted facts relating to an alleged sexual assault, improperly attacked plaintiff's credibility, and unjustifiably branded him a rapist, did not suggest conduct beyond the "bounds of decency" that

would give rise to an IIED claim); *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 617 (D. Mass. 2016) (dismissing IIED claim even though "Brandeis's actions . . . may have been unreasonable and unfair" because "the bar for asserting an IIED claim is considerably higher" ); *Doe v. Liberty Univ., Inc.*, No. 6:22-cv-21, 2022 U.S. Dist. LEXIS 188407, at *14 (W.D. Va. Oct. 14, 2022) (dismissing IIED claim where "Plaintiff alleges that the [university] 'failed its Title IX obligations' and offered 'no accommodations' following her assault"); *Abraham v. Thomas Jefferson Univ.*, No. 20-2967, 2021 U.S. Dist. LEXIS 171773, at *21 (E.D. Pa. Sep. 9, 2021) ("[E]ven taking Plaintiff's allegations as true and assuming Jefferson conducted a flawed, biased investigation, its actions were not so uncivilized as to support a claim for IIED.").

Indeed, courts regularly dismiss IIED claims even when a plaintiff sufficiently alleges a Title IX violation. In *Totten v. Benedictine University*, for example, the plaintiff was sexually assaulted multiple times by another student and harassed by her roommate who threatened her repeatedly, stabbed the door to her room with a knife and trashed their apartment. 2021 U.S. Dist. LEXIS 143882, at *2-10. The plaintiff alleged that the university took "no disciplinary action to address or prevent Roommate's misconduct," made no disciplinary recommendations as to her assailant other than to ban him from living on campus, despite finding that he sexually assaulted her on three occasions, and repeatedly ignored her concerns and requests for basic accommodations, telling her to "stop with the high school bullsh*t." *Id.* at *4-6, 9-12. The plaintiff was also told by an administrator that the university might have handled things differently if the plaintiff were a "different kind of student." *Id.* at *12. While the plaintiff's allegations were sufficient to state a claim under Title IX, they did "not rise to the level of extreme and outrageous" conduct necessary to state a claim for IIED. *Id.* at *34.

Here, Plaintiffs do not allege extreme or outrageous conduct by Loyola. Instead, they generically allege that "as a result of Loyola's acts and omissions, University's administrators' conduct can be characterized as truly extreme and outrageous." FAC ¶ 254. As in the cases cited above, Plaintiffs' generalized complaints about the sufficiency of Loyola's investigations and other responses to their claims do not state IIED claims. *See Schweihs*, 2016 IL 120041, ¶ 51 (Absent allegations of conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," a plaintiffs cannot state a claim for IIED.).

Plaintiffs also have not plausibly alleged that Loyola intended to inflict severe emotional distress or knew there was a high probability that its actions would cause severe emotional distress. Instead, Plaintiffs simply allege that when "the University failed to follow . . . state and federal requirements" it "should have reasonably concluded their (sic) conduct would inflict emotional damages." *See* FAC ¶¶ 256, 258. "When pleading an IIED claim, a litigant cannot rely on boilerplate allegations that the defendant intended to inflict emotional distress and actually did so." *Totten*, 2021 U.S. Dist. LEXIS 143882, at *34-35. That is precisely what Plaintiffs do here and their claims fail for that reason as well. Finally, Plaintiffs' IIED claims are time-barred by the two-year statute of limitations discussed above.

## VI. Plaintiffs Do Not State a Claim for Breach of Contract

Illinois recognizes that "the relationship between a student and an educational institution is, in some of its aspects, contractual" and holds generally "that the catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract." *Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir. 1992). To state a claim in Illinois for breach of contract against a college or university, however, requires an "identifiable contractual promise that the defendant failed to honor" *Id.* at 417. "[T]he student's complaint must be specific about

the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.,* 741 F.3d 769, 773 (7th Cir. 2013).

Plaintiffs face "an additional hurdle: '[i]n the student-university context, a student may have a remedy for breach of contract . . . only if that decision was made arbitrarily, capriciously, or in bad faith.'" *Fleming v. Chi. Sch. of Prof'l Psychology*, No. 15 C 9036, 2017 U.S. Dist. LEXIS 159669, at *7 (N.D. Ill. Sep. 28, 2017) (quoting *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (2004)). "A court may not overrule the academic decision of a private school 'unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" *DiPerna v. Chi. Sch. of Prof'l Psychology*, No. 14-cv-57, 2015 U.S. Dist. LEXIS 9403, at *5-6 (N.D. Ill. Jan. 27, 2015) quoting *Raethz*, 805 N.E.2d at 699). The academic decision must be "without any discernible rational basis." *Frederick v. Nw. Univ. Dental Sch.*, 247 Ill. App. 3d 464, 472 (1993) (quoting *Holert v. Univ. of Chi.*, 751 F. Supp. 1294, 1301 (N.D. Ill. 1990)); *see also Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019) ("The burden on Doe is high. To find in his favor [as to his breach of contract claim] we must find that Columbia did not exercise its academic judgment at all, instead acting arbitrarily or in bad faith in its treatment of plaintiff.") (internal quotations omitted).

Plaintiffs' claim fails for both reasons. First, Plaintiffs do not identify a specific contractual promise that Loyola failed to honor. Instead, they generically claim that the "material terms" of Loyola's contractual obligations "were generally outlined in the University's catalogs, handbooks, posters, and bulletins." FAC ¶ 263. They do not specify what those terms were or what terms Loyola allegedly breached. Plaintiffs' vague allegations are insufficient under well-established

precedent. *See, e.g., DiPerna v. Chi. Sch. of Prof'l Psychology,* No. 14-cv-57, 2014 U.S. Dist. LEXIS 116844, at *7-8 (N.D. Ill. Aug. 21, 2014) (dismissing plaintiff's breach of contract claim where plaintiff alleged that defendant "violat[ed] . . . the Academic Catalog and Student Handbook Sections on Disciplinary Review and Academic Development Plans" and failed "to reasonably comply with its own policy," finding neither allegations "alleges a claim with sufficient specificity"); *Marmarchi v. Bd. of Trs. of the Univ. of Ill.*, 715 F. App'x 529, 533 (7th Cir. 2017) (affirming dismissal where plaintiff had "not alleged any contract terms that the University violated, thus dooming his claim"); *see also Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) (allegations that plaintiff's "dismissal was in violation of the university's 'Student Disciplinary Policy' and 'University Statutes'" did not establish a contractual right because plaintiff did not "describe the specific promises that the university made to him through its disciplinary policy, nor does he identify these 'University Statutes' and their contents"); *Miller v. MacMurray Coll.*, 2011 IL App (4th) 100988-U, ¶ 49 (affirming dismissal where plaintiff failed to cite or append any documentation to substantiate her claim that the college contractually agreed to schedule its classes in the manner plaintiff claimed). Here Plaintiffs fail to specify even the *source* of the contract, let alone the specific promise allegedly breached.

Second, even if Plaintiffs could allege establish a contractual promise and a breach thereof, Plaintiffs have not alleged facts to plausibly suggest that Loyola's breach was arbitrary, capricious, or made in bad faith. Plaintiffs' claim fails on that basis as well.

## VII.    Plaintiffs Do Not State a Claim for Breach of Fiduciary Duty

Despite Plaintiffs' claims, "[t]here is no Illinois authority finding that a fiduciary relationship exists between a student and an educational institution." *Phillips v. DePaul Univ.*, 2012 Ill. Cir. LEXIS 3299, *10 (Cook County Cir. Ct.); *see also Galligan v. Adtalem Glob. Educ.*

*Inc.*, No. 17 C 6310, 2020 U.S. Dist. LEXIS 6563, at *17 (N.D. Ill. Jan. 15, 2020) (Lefkow, J.) (noting the absence of relevant authority and finding no fiduciary duty in the absence of allegations that the school made specific representations to plaintiff that would establish a fiduciary duty).

Courts outside of Illinois that have considered the issue also have refused to find that a school has a fiduciary duty to its students. *See Squeri v. Mount Ida Coll.*, 954 F.3d 56, 65 (1st Cir. 2020) ("Massachusetts courts have consistently held that no fiduciary relationship exists between a student and his or her college."); *McFadyen v. Duke Univ.,* 786 F. Supp. 2d 887, 986 (M.D.N.C. 2011) ("the student-administrator relationship is not generally a fiduciary relationship"); *Bass ex rel. Bass v. Miss Porter's Sch.*, 738 F. Supp. 2d 307, 330 (D. Conn. 2010) (finding no fiduciary relationship between a student and a private high school); *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 (S.C. 2003) (no fiduciary relationship between university student and university advisor). As the *McFadyen* court explained, a fiduciary has an obligation to act on a dependent's behalf. 786 F. Supp. 2d at 986-87. A university, by contrast, serves other interests, "including the objectives of the institution and the interests of the public" as well as the interests of other students. *Id*. The "divided loyalties that are inherent to an academic setting preclude the imposition of a fiduciary duty." *Krebs v. Charlotte Sch. of Law, LLC*, No. 3:17-CV-00190-GCM, 2017 U.S. Dist. LEXIS 143060, at *21 (W.D.N.C. Sep. 5, 2017). "Without a fiduciary duty, [Plaintiffs'] breach of fiduciary duty claim cannot survive" and their claim must be dismissed. *See Galligan*, 2020 U.S. Dist. LEXIS 6563, at *17. Finally, even if there were a duty, Plaintiffs have not alleged how Loyola breached that duty or how Plaintiffs were injured by the breach.

## VIII.  Plaintiffs Do Not State a Claim for Premises Liability

There is "no liability on the part of a college for non-curricular activities taking place on property not owned by the college." *Leonardi v. Bradley Univ.*, 253 Ill. App. 3d 685, 691-92

(1993). Cappello, Kane, Appiagyei-Dankah and Does C, G, H, and N do not allege they were assaulted on campus or on Loyola-owned property.[13] Sepulveda and Doe A alleged they were assaulted in dorm rooms but have not alleged a plausible claim that Loyola had a duty to prevent their assaults on its premises. Absent a special relationship between the parties, a landowner generally has no duty to protect others from criminal activities by third persons on its property. *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 215-16 (1988); *Iseberg v. Gross*, 227 Ill. 2d 78, 101 (2007). Where a special relationship exists, a duty arises to protect only against reasonably foreseeable criminal activity. *Leonardi*, 253 Ill. App. 3d at 690. "[A] landlord's duty is not to insure the safety of his tenants, but to exercise reasonable care." *Rabel*, 161 Ill. App. 3d at 362.

Neither the student-university nor the landlord-tenant relationship amounts to a special relationship that creates a legal duty. *See supra* III*; Rabel*, 161 Ill. App. 3d at 362 (citations omitted) (finding university had no duty to protect a student who was injured as a result of a fraternity prank in its capacity as landlord and had not voluntarily assumed or placed itself in a custodial relationship with its students); *Leonardi*, 253 Ill. App. 3d at 686 (affirming dismissal of plaintiff's claims that Bradley University had a duty to take reasonable precautions to protect her from sexual assault occurring at a fraternity). Even if there were a legal duty, however, Sepulveda and Doe A have not alleged facts sufficient to state a claim that their attacks were reasonably foreseeable or related to any attribute of Loyola's property, as discussed above. *See supra* III. Their claims fail as a result.

Finally, Doe E alleges that she was assaulted in Loyola's residential housing on her study abroad. Like Sepulveda and Doe A, however, she does not allege any facts to suggest that her

---

[13]    Doe N alleges her dorm room was burglarized by an unknown person but does not allege the location of the sexual assault. FAC at ¶ 126.

injury was reasonably foreseeable or related to the property where the assault took place. In fact, Doe E does not even allege the country in which her assault occurred. Her claim is not plausible.

Furthermore, Plaintiffs' claims are barred by the two-year statute of limitations. If Plaintiffs could plead a premises liability claim, their claims would again be subject to the two-year statute of limitations and untimely as discussed above.

## IX.    Plaintiffs Do Not State a Claim for Fraud

Finally, Plaintiffs do not state a claim for fraud. The crux of Plaintiffs' fraud claim is that Loyola intentionally underreported sexual assault on campus in order to induce Plaintiffs to enroll and that this alleged fraud was the proximate cause of Plaintiffs' injuries. FAC ¶¶ 284-291. Plaintiffs' claims are insufficient for a number of reasons.

A fraud claim has five elements: (1) the defendant made a false statement of a material fact; (2) the defendant knew the statement was false; (3) the defendant intended for the statement to induce the plaintiff to act; (4) the plaintiff relied on the truth of the statement; and (5) the plaintiff was damaged by relying on the statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (Ill. 1996). Fraud claims are also subject to a higher pleading standard. Fed. R. Civ. P. 9(b). Under Fed. R. Civ. P. 9(b), a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake" and describe the "who, what, when, where, and how" of the fraud. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-442 (7th Cir. 2011).

Plaintiffs do not plead facts establishing the elements of a fraud claim and certainly do not do so with the specificity required under the heightened pleading standard. First, Plaintiffs' allegation that Loyola made false statements regarding the safety of its program is insufficiently pleaded and based an implausible assumption that because Loyola stopped publishing reports of

41

sexual violence that occurred in "non-campus" buildings, the statistics were "false." FAC ¶¶ 288-89. Second, even if Plaintiffs could establish a false statement, they fail to plead facts to establish that Loyola intended to induce Plaintiffs to act or that Plaintiffs in fact relied upon those statements in enrolling at the university. In the absence of specific factual allegations that Loyola knowingly made false statements with the intent to induce Plaintiffs to enroll that Plaintiffs relied upon, Plaintiffs' fraud claims must be dismissed. In addition, Cappello, Appiagyei-Dankah and Doe C's fraud claims, which would have accrued in 2011 (Cappello) and 2013 (Appiagyei-Dankah and Doe C) are barred by the five-year statute of limitations. *See* 735 ILCS 5/13-215.

## X.     Plaintiffs are Not Entitled to Some of The Relief They Seek

Finally, even if Plaintiffs could state viable claims, they are not entitled to some of the relief they seek. First, Plaintiffs cannot recover emotional distress or punitive damages under Title IX. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022) (emotional distress damages are not recoverable under the Spending Clause antidiscrimination statutes); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) (foreclosing the recovery of punitive damages under Title VI and interpreting Title IX consistently).

Second, Kane and Does A, E, G and H, the only Plaintiffs enrolled at Loyola, seek a permanent, mandatory injunction that would cause the Court to assert jurisdiction over all future disputes over sexual assault complaints including, arguably, respondents who claim investigations of complaints about them took too long or reached the wrong conclusions. These Plaintiffs lack standing to seek injunctive relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), in which the Supreme Court reiterated that "standing to seek the injunction requested depend[s] on whether [plaintiff is] likely to suffer future injury." *Lyons*, 461 U.S. at 105. "Past wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or

controversy." *Id*. at 103. Plaintiffs, like the plaintiff in *Lyons*, fail to "establish a real and immediate threat of future injury" and, as a result, is "no more entitled to an injunction than any other" student.[14]

## **CONCLUSION**

For the foregoing reasons, Plaintiffs do not state claims upon which relief can be granted or, in the alternative, their claims are barred by the applicable statutes of limitations. The FAC is Plaintiffs' second pleading attempt and still, Plaintiffs have not alleged plausible or cognizable claims. Because no amendments can salvage Plaintiffs' claims, Loyola requests that this action be dismissed with prejudice.

Dated: April 5, 2023                                        Respectfully submitted,

                                                            **LOYOLA UNIVERSITY OF CHICAGO**

                                                            By: /s/ Patrick J. Rocks
                                                                 One of Its Attorneys

Patrick J. Rocks
Kirsten A. Milton
Julia S. Wolf
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, IL 60601
Tel.: 312.787.4949
Patrick.Rocks@jacksonlewis.com
Kirsten.Milton@jacksonlewis.com
Julia.Wolf@jacksonlewis.com

---

[14]     If the Plaintiffs who are former students (Cappello, Sepulveda, Appiagyei-Dankah, and Does C and N) also are seeking injunctive relief, their claims fail for the same reasons and because they are not current students.

## CERTIFICATE OF SERVICE

I, Patrick J. Rocks, an attorney, certify that on April 5, 2023, I caused a true and correct copy of the attached *Memorandum of Law in Support of Loyola's Motion to Dismiss Plaintiffs' First Amended Complaint* to be electronically filed with the Court and served upon all attorneys of record registered with the Court's ECF/CM system.

*/s/ Patrick J. Rocks*