## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MADELINE KANE, *et al.*,<br>Plaintiffs<br><br>v.<br><br>LOYOLA UNIVERSITY OF CHICAGO,<br>Defendant | No. 22 CV 6476<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

The plaintiffs, current and former students enrolled at Loyola University of Chicago ("Loyola"), allege that the university systematically mishandled, underreported, and failed to adequately respond to their complaints of sexual harassment in violation of 20 U.S.C. § 1681, *et seq.* ("Title IX"). The plaintiffs also allege violations of the Illinois Preventing Sexual Violence in Higher Education Act ("PSVHEA"), 110 ILCS 155/20, as well as other state law claims. Loyola removed this action to federal court (R. 1) and now moves to dismiss the plaintiffs' First Amended Complaint (R. 35, hereinafter, the "FAC") under Federal Rule of Civil Procedure 12(b)(6). (R. 38.) For the reasons that follow, the Court grants the motion in part and denies it in part.

## BACKGROUND[1]

Defendant Loyola is an accredited private university in Chicago, Illinois that receives federal funding for the purposes of Title IX. (FAC ¶¶ 16, 17.) Under the Clery Act, 20 U.S.C.A. § 1092(f), Loyola must disclose accurate and complete statistics for reported criminal incidents that occur on campus, in off-campus properties owned or controlled by a recognized student organization, or on public property within "the reasonably contiguous geographic area" of the university. (*Id.* ¶ 27.) The Preventing Sexual Violence in Higher Education Act ("PVSHEA"), 110 ILCS 155/1, *et seq.*, similarly requires Loyola to publish an annual report detailing its policies for addressing sexual discrimination, misconduct, and retaliation. The report must also provide data and information regarding trainings, prevention programs, reported incidents, and outcomes of disciplinary action. (*Id.* ¶¶ 32–33.)

In addition to these statutory requirements, Loyola has its own internal policies and procedures for addressing claims of sexual misconduct, which are detailed in a comprehensive policy manual. (*Id.* ¶¶ 34–37.) Among other things, these policies require the university to use a preponderance of evidence standard to evaluate allegations of sexual harassment and implement a range of disciplinary sanctions to remedy sexual misconduct, including no-contact orders, suspension, and expulsion. (*Id.* ¶ 36.) Loyola's policies also provide that students have the right to an

---

[1] The facts set forth in this section are taken from the FAC and are accepted as true for the purposes of the motion to dismiss. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021).

attorney during Title IX investigations and indicate that the university "aims to complete" investigations within six months of receiving a report. (*Id.*)

The plaintiffs are current and former female students who enrolled at Loyola between 2012 and 2022. (*Id.* ¶¶ 9–14.) While their allegations vary considerably in timing and scope, each plaintiff alleges that she was sexually assaulted by another male student or an individual affiliated with the university, and that Loyola was deliberately indifferent to the alleged harassment. (*See generally id.*)

In some cases, the plaintiffs allege that the university failed to prevent their sexual assaults despite knowing that their assailants had attacked other students. (*See, e.g.*, *id.* ¶¶ 138, 149, 161.) In other instances, the plaintiffs allege that they were forced to remain in physical proximity with their attackers after reporting the misconduct. (*See id.* ¶¶ 158, 185.) Some plaintiffs were not fully informed of their rights during Title IX investigations (*id.* ¶¶ 53–56); others were forced to reenact or pantomime their assaults at hearings with Loyola administrators and their assailants present. (*Id.* ¶¶ 88, 157.) The plaintiffs allege that there was a common perception among students that Title IX investigations were ineffectual, and that peers advised them not to make Title IX reports because they would amplify their distress and "go nowhere." (*Id.* ¶ 127.) They describe their experience participating in Title IX investigations as "traumatizing and flawed." (*Id.* ¶ 66.)

A brief description of each of the plaintiffs' individual allegations (in chronological order) appears below:

- **Plaintiff Catherine Ann Cappello** alleges that she was sexually assaulted in 2012 by one of her former classmates, who was a visiting priest from a

foreign country. (*Id.* ¶ 39.) When she tried to file a Title IX complaint against her attacker, Loyola informed her that no action could be taken since her assailant was a visiting priest and therefore not under Loyola's direction or control. (*Id.* ¶ 41.) Cappello was later forced to work in a small group with her assailant; when she complained, she was called a "troublemaker," and forced to take an incomplete in the course. (*Id.*¶ 42.)

- **Plaintiff Jane Doe C** alleges that she suffered domestic violence at the hands of another male student while she was a sophomore at Loyola in 2014. (*Id.* ¶ 97.) Jane Doe C told administrators about the abuse, but she was informed that she would have to file a report with the Chicago Police Department. (*Id.* ¶¶ 99–100.) Fearing retaliation, Jane Doe C did not report the incident to police, but she provided extensive evidence of the abuse she suffered to Loyola. (*Id.* ¶ 101–106.) No disciplinary action was taken by the university, and Jane Doe C was forced to attend classes with her assailant. (*Id.* ¶¶ 107–110.)

- **Plaintiff Amma Appiagyei-Dankah** alleges that she was sexually assaulted in a Loyola dorm building in 2014. (*Id.* ¶¶ 81–82.) After reporting the incident, she was moved to a different dormitory while her assailant was allowed to stay in his original dorm. (*Id.* ¶ 86.) Despite a no-contact directive, Appiagyei-Dankah repeatedly encountered her assailant on campus. (*Id.* ¶ 87.) During the Title IX investigation, she was directed by Loyola officials to reenact how she was sexually assaulted in front of her assailant and administrators. (*Id.* ¶¶ 88.) Although Appiagyei-Dankah's assailant was found guilty and expelled, she alleges that the experience prevented her from concentrating in class, leading to academic probation and expulsion. (*Id.* ¶ 92.)

- **Plaintiff Jane Doe N** alleges that, in 2018, her dorm room was burglarized. (*Id.* ¶¶ 117.) She reported the burglary to Loyola, but the university's response was inadequate. A month later, Jane Doe N was sexually assaulted. (*Id.* ¶ 126.) Given Loyola's poor handling of the burglary and the advice that she received from female peers that a Title IX report would go nowhere, Jane Doe N did not file a Title IX report. (*Id.* ¶¶ 127–128.) Ultimately, she decided to withdraw from campus. (*Id.* ¶ 129.)

- **Plaintiff Marissa Sepulveda** alleges that she was sexually assaulted in 2019 in a Loyola dorm building. (*Id.* ¶¶ 60–61.) After Sepulveda reported the incident, her assailant was allowed to remain on campus while a Title IX investigation was pending. (*Id.* ¶¶ 62–63.) Despite the university issuing a no-contact directive, Sepulveda's assailant made contact with her on campus on at least two occasions. (*Id.* ¶¶ 69–70.) Later that year, Sepulveda's assailant

raped another Loyola student. (*Id.* ¶ 64.) It was only after this second incident that the individual was expelled. (*Id.*) Sepulveda alleges that she was sexually assaulted by another Loyola student later in 2019 in a dorm building, but that she chose not to report this second incident due to flaws she witnessed in the first investigation. (*Id.* ¶¶ 65–66.)

- **Plaintiff Jane Doe A** alleges that she was sexually assaulted after consuming alcohol at a dorm party during "Welcome Week" in 2019.[2] (*Id.* ¶¶ 166–171.) After initiating a Title IX investigation, Loyola shared a document indicating that it had received two previous reports of sexual assault concerning the same assailant. (*Id.* ¶ 173.) Jane Doe A alleges that Loyola's systematic mishandling of sexual assault claims caused her sexual assault. (*Id.* ¶ 174.)

- **Plaintiff Jane Doe H** alleges that she was assaulted on an unspecified date by a Loyola student known amongst students to be a "serial predator." (*Id.* ¶ 132.) She alleges that after she reported the assault to her R.A., the R.A. held a dorm-wide meeting during which she referred to Jane as a "whiny little brat." (*Id.* ¶¶ 134–135.) Jane Doe H alleges that no Title IX investigation took place and that she was assaulted again by the same student in October 2019. (*Id.* ¶¶ 136–38.)

- **Plaintiff Jane Doe G** alleges that she was sexually assaulted in 2019 by the same student as Jane Doe H after Jane Doe H had made multiple reports about her assailant to the university. (*Id.* ¶ 149.) After a Loyola professor filed a complaint on Jane Doe G's behalf, she was encouraged to keep her complaint "internal" and not speak out. (*Id.* ¶¶ 151–153.) During a meeting with administrators, Jane Doe G was requested to "move her body" and "touch herself" in a manner that reenacted the sexual assault. (*Id.* ¶ 157.) Loyola officials informed her that a no-contact directive would be issued against her assailant. (*Id.* ¶ 158.) However, when she discovered that her assailant was enrolled in the same class as her, Loyola officials told Jane Doe G that it would not force her assailant to choose a different course. (*Id.*) The assailant refused

---

[2] The six "Jane Doe" plaintiffs state that they must use pseudonyms to protect their privacy given the sensitive nature of their sexual abuse allegations. (R. 35 at 3 n.1.) Neither party addresses whether the use of pseudonyms is appropriate. Although victims of sexual assault often wish to keep their identities secret out of fear of embarrassment or social stigmatization, "the use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in federal courts." *Doe v. City of Chi.*, 360 F.3d 667, 669–70 (7th Cir. 2004) (citation omitted). Accordingly, as stated at the conclusion of this opinion, the plaintiffs must submit further briefing addressing whether the plaintiffs may proceed anonymously.

to modify his class schedule and Jane Doe G was forced to attend class with her assailant for an entire semester. (*Id.* ¶ 159.)

- **Plaintiff Madeline Kane** was sexually assaulted at a fraternity party in 2020. (*Id.* ¶ 46.) After reporting the incident to Loyola, Kane alleges that the university delayed the investigation and allowed her assailant to skip interviews. (*Id.* ¶¶ 50–52.) Kane alleges that Loyola did not adequately inform her of mental health resources and told her, contrary to Loyola's comprehensive policy, that she did not have the right to an attorney during her Title IX investigation. (*Id.* ¶¶ 54–55.) Kane's assailant was eventually found "not responsible" for the sexual assault due to "insufficient evidence." (*Id.* ¶¶ 53–56.) Kane claims that she was drugged at another fraternity party in 2021 but chose not to report this second incident due to the flaws she witnessed in the previous investigation. (*Id.* ¶ 57.)

- **Plaintiff Jane Doe E** alleges that she was sexually assaulted in 2021 by a male R.A. while enrolled in one of Loyola's study abroad programs. (*Id.* ¶¶ 178-179.) After returning to the United States the following semester, Jane Doe E was told that her case would be handled by the university's Office of Equity and Compliance rather than the Title IX office since the university lacked control over the foreign campus where Jane Doe E had studied. (*Id.* ¶ 183.) Jane Doe E also learned that the R.A. who assaulted her had been assigned to a freshman dorm on Loyola's Chicago campus. (*Id.* ¶ 181.) Although the R.A. was accused of sexually assaulting other students, Jane Doe E was discouraged from speaking to potential victims and told that the university's "hands were tied" until the investigation concluded. (*Id.* ¶¶ 184-186.)

* * * *

In 2016, Loyola's student newspaper, *The Phoenix*, published an article corroborating the plaintiffs' allegations. (*Id.* ¶ 190.) In the article, Loyola's Title IX Coordinator, Dean Tim Love, admitted that a report of a sexual assault been lost and that the university was not responding to complaints of sexual assault within twelve hours, as required by Illinois law. (*Id.*) Loyola students featured in the article complained of material errors in the university's Title IX investigatory process. (*Id.*) The article described on-campus protests in response to the university's perceived

6

mishandling of sexual harassment complaints and cited disciplinary decisions that were allegedly disproportionate or inadequate. (*See id.*)

The plaintiffs allege, on information and belief, that Loyola "grossly underreported the number of sexually violent incidents" that occurred in the years during and prior to the plaintiffs' enrollment at the university. (*Id.* ¶ 191.) They cite discrepancies between the university's reported crime statistics for 2013–2017 and those provided by the Chicago Police Department. (*Id.* ¶¶ 192–198.) The plaintiffs further note that while reporting for the purposes of the PSVHEA indicated that 129 incidents of sexual violence were reported on Loyola's campus in 2017, the university reported that no individuals were disciplined for sexual misconduct that year. (*See id.* ¶ 196–198.)

The plaintiffs also allege that Loyola's failure to adequately respond to complaints of sexual harassment—as evidenced by their individual allegations, the student newspaper report, and the apparent discrepancies in reported data—amounts to a *de facto* policy of deliberate indifference to sexual misconduct that caused a heightened risk of sexual harassment and, by extension, their injuries. (*Id.* ¶ 204.)

The plaintiffs filed an eight-count complaint in Illinois state court, alleging violations of Title IX and Illinois state law, including the PSVHEA. (R. 1.) Loyola removed this action to federal court and moved to dismiss. (*Id.*; R. 12.) The plaintiffs initially moved to sever their state law claims and remand them to state court. (R. 18; R. 19.) They then proceeded to file the first amended complaint, which included

the eight counts from their original complaint and three additional counts for negligent infliction of emotional distress ("NIED"), intentional infliction of emotional distress ("IIED"), and breach of contract. (R. 35.) Loyola again moved to dismiss (R. 38.) The Court now addresses the merits of that motion.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court "accepts as true all of the plaintiff's well-pleaded allegations and draws all reasonable inferences in the light most favorable to the plaintiff." *Moore v. Freeport Cmty. Unit Sch. Dist. No. 145*, 570 F. Supp. 3d 601, 607 (N.D. Ill. 2021) (citing *Calderone v. City of Chi.*, 979 F.3d 1156, 1161 (7th Cir. 2020)). "[W]hile a complaint does not need 'detailed factual allegations' to survive a 12(b)(6) motion to dismiss, it must allege sufficient facts 'to state a claim to relief that is plausible on its face.'" *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, plaintiffs must set forth "adequate factual detail to lift [their] claims from mere speculative possibility to plausibility." *Id.*

## ANALYSIS

### I. TITLE IX (COUNT I)

The Court begins by addressing the plaintiffs' Title IX claims. Title IX provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any

education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. The Supreme Court has held that the statute gives rise to a private right of action for damages based on a funding recipient's deliberate indifference to sexual harassment of which the recipient had actual knowledge. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650-52 (1999).

The plaintiffs bring two claims under Title IX. First, they allege that Loyola "maintained a *de facto* policy . . . to suppress reports of sexual violence and sexual harassment, and to support accused campus predators, resulting in a culture of deliberate indifference toward sexual misconduct at Loyola." (FAC ¶ 205.) Second, they allege that the university "failed to provide Plaintiffs with fair, prompt, and equitable proceedings in response to complaints of sexual misconduct," or otherwise "failed to adequately respond," and that these failures "amounted to deliberate indifference toward the unlawful conduct that was occurring." (*Id.* ¶ 209.)[3] The parties refer to these claims as "pre-assault" and "post-assault" claims, respectively, and the Court adopts this terminology for the remainder of this opinion.

---

[3] The parties indicate that the plaintiffs are also asserting a claim for "erroneous outcome" under Title IX. (FAC ¶¶ 207, 213; R. 39 at 22–23; R. 43 at 22–25.) An "erroneous outcome" claim, however, refers to a claim that is typically brought by the alleged *perpetrator* of gender-based harassment alleging that they were wrongly disciplined by the funding recipient. *See Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 953 (N.D. Ill. 2017), *aff'd*, 933 F.3d 849 (7th Cir. 2019). Such allegations are not present here. To the extent that the plaintiffs challenge disciplinary decisions that Loyola made regarding their alleged assailants, those claims are properly analyzed as post-assault deliberate indifference claims. *See Johnson v. Ne. Sch. Corp.*, 972 F.3d 905, 911 (7th Cir. 2020).

### A.    Pre-Assault Claims

The Court first considers whether the plaintiffs have stated pre-assault claims by alleging that Loyola had a *de facto* policy or practice of deliberate indifference to sexual assault that caused them to suffer or be vulnerable to severe, gender-based harassment. (*Id.*¶ 204.)

Loyola raises several arguments in support of its motion to dismiss. First, it argues that recognizing a pre-assault claim is inconsistent with Seventh Circuit caselaw and Supreme Court precedent. Second, it argues that, even if a pre-assault cause of action exists, it is barred by the applicable statute of limitations. As for Plaintiff Jane Doe E, Loyola argues that recognizing a pre-assault claim would constitute an extraterritorial application of Title IX. Finally, Loyola argues that the plaintiffs fail to state a claim. The Court addresses each argument in turn.

### 1.    Pre-Assault Title IX Claims Under Supreme Court and Seventh Circuit Precedent

The Seventh Circuit has not yet considered whether a pre-assault claim is a viable cause of action under Title IX. However, both the Tenth Circuit and Ninth Circuit have held that such a claim is a logical extension of the Supreme Court's reasoning in *Davis* and *Gebser*. *See Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1111–12 (9th Cir. 2020); *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1177–78 (10th Cir. 2007). Several district courts in this Circuit have analyzed pre-assault claims at the pleading stage by referring to Supreme Court dicta, persuasive authority, and Department of Education guidance. *See Doe A v. Plainfield Cmty. Consol. Sch. Dist. 202*, No. 21 C 4460, 2023 WL 2428870, at *7 (N.D. Ill. Mar. 9, 2023);

*Vander Pas v. Bd. of Regents of Univ. of Wis. Sys.*, No. 21 C 1148, 2022 WL 1597423, at *5 (E.D. Wis. May 19, 2022); *Reed v. S. Ill. Univ.*, No. 18 C 1968, 2020 WL 3077186, at *7 (S.D. Ill. June 10, 2020).

In the absence of direction from the Seventh Circuit, the Court refers to principles of Title IX liability articulated by the Supreme Court in addressing whether the plaintiffs have stated a claim. *See Vander Pas,* 2022 WL 1597423, at *5 (analyzing pre-assault claim by reference to Supreme Court caselaw); *see also Doe A*, 2023 WL 2428870, at *6 n.3 (quoting *Reed*, 2020 WL 3077185, at *7) ("While the issue has not been addressed in the Seventh Circuit, that alone is insufficient to lead this Court to rule definitively that such a claim does not exist or has been rejected or not recognized in this Circuit.").

Loyola argues that pre-assault claims are inconsistent with Supreme Court precedent. It points to the fact that Title IX was enacted under the Spending Clause and does not explicitly include a private right of action. (R. 39 at 15); *Gebser*, 524 U.S. at 287 (contrasting Title IX with Title VII, which expressly contains a private right of action). Because statutes enacted under the Spending Clause are contractual in nature—designed to prevent rather than remedy discrimination—implied causes of action in such statutes must be narrowly construed. *See Gebser*, 524 U.S. at 287. Loyola argues that recognizing a Title IX cause of action for pre-assault conduct would contravene the Supreme Court's requirement that funding recipients only be held liable for intentional violations and would otherwise be "a significant expansion of the law." (R. 39 at 15.)

Despite these arguments, the Court finds that pre-assault claims are not clearly inconsistent with Supreme Court caselaw. In adopting the deliberate indifference standard in *Gebser*, the Supreme Court stated that "[c]omparable considerations led to our adoption of a deliberate indifference standard for claims under § 1983 alleging that a municipality's actions in failing to prevent a deprivation of federal rights was the cause of the violation." *Gebser*, 524 at 291. Because the standard for municipal liability defines intentional discrimination to include both indifference to the discriminatory acts of employees and discriminatory policies and practices of the municipality itself, the reference to municipal liability in *Gebser* supports a parallel interpretation of intentional discrimination under Title IX. *See Simpson*, 500 F.3d at 1177–78.

Recognizing a cause of action based on a *de facto* policy of deliberate indifference is also consistent with the Supreme Court's statement that a funding recipient may only be held liable for deliberate indifference when it "intentionally acted in clear violation of Title IX." *Davis*, 526 U.S. at 642. In the municipal liability context, the Seventh Circuit has recognized that policy or practice claims "follow directly from the municipality's *intentional decision* to adopt the unconstitutional policy or custom or to take particular action." *J.K.J v. Polk Cnty.*, 960 F.3d 367, 377–78 (7th Cir. 2020) (emphasis added). Holding an entity or organization liable for its policies is distinct from holding it liable based on constructive notice or *respondeat superior* because the implementation of a policy—even a *de facto* one—is an intentional decision. *See id.* (commenting that a "policy of inaction" is "the functional

equivalent of a decision by the [defendant] itself") (citations omitted). Understood in this way, a pre-assault Title IX claim based on a *de facto* policy of deliberate indifference does not expand Title IX liability as set forth in *Gebser* and *Davis*; instead, it is already implied by these decisions. Therefore, the Court evaluates the viability of the plaintiffs' pre-assault claims by referring to decisions that discuss "deliberate indifference" in the context of municipal liability claims. *Vander Pas*, 2022 WL 1597423, at *5.

## 2. Statute of Limitations

The Court next considers whether the plaintiffs' pre-assault claims are barred by the statute of limitations. Although an affirmative defense that must ordinarily be pleaded and proved by the defendant, "if it is plain from the complaint that the defense is indeed a bar to the suit[,] dismissal is proper without further pleading." *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010); *see also Milchtein v. Milwaukee Cty.*, 42 F.4th 814, 822 (7th Cir. 2022) ("[D]ismissal for untimeliness is proper when the plaintiff's allegations establish that the statute of limitations bars recovery"). Nonetheless, in the context of a motion to dismiss, dismissal for untimeliness is the exception and not the rule. *See Luna Vanegas v. Signet Builders*, *Inc.*, 46 F.4th 636, 640 (7th Cir. 2022) (citation omitted). "Rarely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper." *Id.*

Title IX claims borrow their statute of limitations from state law personal injury claims. *See Doe v. Howe Mil. Sch.*, 227 F.3d 981, 987 (7th Cir. 2000). In this case, the plaintiffs' Title IX claims are subject to Illinois' two-year statute of

limitations. *Id.* The plaintiffs filed their first complaint in Cook County Circuit Court on September 21, 2022; thus, any claims that accrued prior to September 21, 2020 are time-barred.[4]

Accrual is a question of federal law. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). As a general matter, a claim accrues "'when a plaintiff knows the fact and the cause of an injury.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 (7th Cir. 2017) (quoting *Wallace v. Kato*, 549 U.S. 384, 391 (2007)). For Title IX claims based on a policy or practice of deliberate indifference, a claim accrues "when the plaintiff knows or has reason to know of the school's policy of deliberate indifference that created a heightened risk of harassment." *Vander Pas*, 2022 WL 1597423, at *6; *see also Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 702 (6th Cir. 2022), *cert. denied.*, 143 S. Ct. 2659 (2023) (holding that "[i]n the Title IX context . . . [a] claim does not accrue until the plaintiff knows or has reason to know that the *defendant institution* injured them.") (emphasis in original).

---

[4] Notwithstanding the fact that the complaint was amended and refiled on March 15, 2023, September 21, 2020 is the relevant filing date for statute of limitations purposes since the allegations in the first amended complaint relate back to this date. *See* Fed. R. Civ. P. 15(c). The parties do not address whether the claims of plaintiffs who were not parties to this action when it was initially filed and were added when the complaint was amended are subject to a different date. Claims by added plaintiffs relate back to the original filing date where (1) the new plaintiff's claim arose out of the "same conduct, transaction or occurrence" set forth in the original complaint; (2) the new plaintiff shares an "identity of interest" with the original plaintiff; (3) the defendants have "fair notice" of the new plaintiff's claim; and (4) the addition of the new plaintiff will not cause the defendants prejudice. *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 232 (N.D. Ill. 2002). Here, the plaintiffs collectively assert that they were injured by Loyola's *de facto* policy of deliberate indifference to sexual harassment— a theory which appeared on the face of the initial complaint—and their interests are not clearly adverse to one another. For the purposes of addressing the instant motion, the Court concludes that the added plaintiffs' claims relate back at well.

With these principles in mind, the Court concludes that the plaintiffs' pre-assault claims are not clearly time barred. The specific dates on which the plaintiffs became aware of Loyola's policy or practice of deliberate indifference do not appear on the face of the complaint, and the plaintiffs represent that they did not become aware of Loyola's systematic mishandling of sex assault claims until this case was prepared. (FAC ¶ 40; R. 43 at 27); *see also Fajolu v. Portfolio Recovery Assocs., LLC*, 354 F. Supp. 3d 899, 903 (N.D. Ill. 2018) (holding that the plaintiff's claim could not be dismissed on statute of limitations grounds since it was unclear from face of complaint when the plaintiff could fairly have been said to have discovered the alleged violation).

Loyola suggests that the plaintiffs became aware of Loyola's alleged policy of deliberate indifference in 2016, when the *Phoenix* article was published. (R. 39 at 25-26.) But nothing in the first amended complaint indicates that the plaintiffs read or became aware of the article prior to filing this suit. Indeed, many of the plaintiffs were not enrolled at Loyola when the article was published. Without allegations that the plaintiffs were aware of the newspaper article, Loyola's alleged underreporting of sexual assault cases, or their fellow plaintiffs' allegations prior to filing this action, the Court cannot conclude that their pre-assault claims are clearly time-barred. Because the accrual dates of the plaintiffs' policy and practices claims are not clear from the face of the complaint, the Court declines to address this argument at this time. *See Luna Vanegas*, 46 F.4th at 640.

### 3. Extraterritoriality

Next, Loyola argues that plaintiff Jane Doe E cannot state a pre-assault claim because Title IX does not apply to sexual harassment that occurs outside of the United States. (R. 39 at 28.) Federal statutes presumptively do not apply to extraterritorial conduct unless "Congress has affirmatively and unmistakably instructed that the statute will do so." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 335 (2016). "Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.* "When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010). Courts apply "a two-step framework" in assessing Congressional intent. *RJR Nabisco*, 579 U.S. at 337. First, a court must determine "whether the statute gives a clear, affirmative indication that it applies extraterritorially." *Id.* Second, the court must "determine whether the case involves a domestic application of the statute." *Id.*

Applying the two-step framework to Jane Doe E's allegations in this case, it is evident that she cannot hold Loyola responsible for her extra-territorial assault under Title IX. First, the plain language of Title IX reads: "no person *in the United States* shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving financial assistance." 20 U.S.C. § 1681 (emphasis added). A majority of federal district courts have interpreted this language as a "clear affirmative indication" against extraterritoriality. *See Zonshayn v. Sackler Sch. of Med. (N.Y.)*, 648 F. Supp. 3d 485, 496 (S.D.N.Y. 2023) (collecting cases). The lone exception, *King v. Board of Control of*

16

*Eastern Michigan University*, predated the Supreme Court's exposition of the extraterritoriality doctrine in *Morrison* and ignored the plain language of the statute in favor of "unexpressed congressional intent." 221 F. Supp. 2d 783, 787 (E.D. Mich. 2002), *Id.* at 787. The Court finds the majority view to be better reasoned in light of Supreme Court precedent and therefore concludes that Title IX does not apply extraterritorially.

Having determined that Title IX only applies domestically, it follows that Jane Doe E's pre-assault claim must be dismissed. Because the only sexual harassment that Jane Doe E alleges for the purposes of her pre-assault claim occurred "overseas," her attempt to hold Loyola responsible for extra-territorial conduct under Title IX fails. While Jane Doe E may be able to state a post-assault Title IX claim for harassment that occurred *after* she returned to the United States (a possibility that is addressed below), she cannot recover under Title IX for harassment that took place in a foreign jurisdiction. Accordingly, Jane Doe E's pre-assault claim is dismissed.

### 4. Failure to State a Claim

Finally, the Court considers Loyola's argument that the plaintiffs fail to state pre-assault claims under Rule 12(b)(6). To do so, the plaintiffs must allege that (1) Loyola maintained a policy of deliberate indifference to reports of sexual misconduct, (2) the policy created a heightened risk of sexual harassment that was known (3) in a context subject to Loyola's control, and (4) as a result, the plaintiffs suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiffs] of access to the educational

opportunities or benefits provided by the school." *Karasek*, 956 F.3d at 1112 (quoting *Davis*, 526 U.S. at 650).

The parties do not dispute that sexual assault constitutes severe, gender-based harassment under Title IX. *See Davis*, 526 U.S. at 650. Nor do they dispute that Loyola controlled the context in which each of the remaining plaintiffs were sexually assaulted. Instead, Loyola argues that (1) it did not have a policy of deliberate indifference to reports of sexual misconduct, and (2) even assuming such a policy existed, it did not have knowledge that its practices caused a heightened risk of sexual misconduct. (R. 39 at 12–17.) The Court addresses each argument in turn.

### a. Policy of Deliberate Indifference

The Court first considers whether the plaintiffs have adequately alleged a *de facto* policy of deliberate indifference to reports of sexual harassment. In determining whether the plaintiffs have plausibly alleged such a policy, the Court looks to municipal liability decisions assessing "custom, policy, or practice" claims under § 1983. *See Vander Pas,* 2022 WL 1597423 at *5 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978)).

The Seventh Circuit has held that an official policy may be a "widespread, though unwritten, custom or practice." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011). A failure to act, where it reflects "a conscious decision not to take action" can also support liability. *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017) (citing *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011)). In determining whether prior incidents are sufficient to demonstrate a policy or practice at the pleading stage, "the court does not mechanically count the number of incidents,

18

but instead looks for competent evidence tending to show a general pattern of repeated behavior." *Bradford v. City of Chi.*, No. 16 C 1663, 2017 WL 2080391, at *5 (N.D. Ill. May 15, 2017) (quoting *Davis v. Carter*, 452 F.3d 686, 694 (7th Cir. 2006)) (cleaned up).

Here, the plaintiffs have alleged that Loyola had a *de facto* policy of systemically mishandling student complaints of sexual violence and harassment dating back to at least 2011. To support this allegation, they point to the 2016 *Phoenix* article, the apparent discrepancies in Loyola's reporting of sexual assault incidents, and the university's alleged mishandling of their own allegations.

The Court finds that the plaintiffs' allegations are sufficient to state pre-assault claims under Title IX. *See Vander Pas*, 2022 WL 1597423 at *6. The district court's decision in *Vander Pas* is instructive. There, the district court found that allegations of four prior incidents in which the defendant university was accused of mishandling claims of sexual harassment plausibly supported the inference that the university had a policy or practice of deliberate indifference. *See id.* Here, too, the plaintiffs' allegations, accepted as true for the purposes of this opinion, indicate that the university failed to adequately respond to complaints of sexual assault on at least ten separate occasions. The Court finds that the plaintiffs have adequately alleged a policy or practice of deliberate indifference.

### b. Knowledge of a Heightened Risk of Harassment

Next, the Court considers whether the plaintiffs have plausibly alleged that Loyola had knowledge that its *de facto* policy caused a heighted risk of sexual harassment. The parties disagree about the applicable standard for knowledge in the

pre-assault context. (*Compare* R. 39 at 12-13 *with* R. 48 at 18.) Citing the Tenth Circuit's decision in *Simpson*, Loyola argues that actual knowledge of a specific risk in a specific program or organization is required, and that the general knowledge of campus-wide deficiencies is insufficient. (R. 39 at 12.) Because the plaintiffs' allegations reflect "a general policy of indifference to sexual misconduct on campus," rather than an issue with a specific program or organization, Loyola argues that their allegations fail. (*See id.*)

The Court agrees that allegations of actual knowledge of an increased risk of sexual assault are required for a pre-assault claim to proceed. But this knowledge does not need to be limited to a specific problem in a specific program. Instead, as in the municipal liability context, knowledge may be inferred from a number of previous incidents. *Cf. Calderone*, 979 F.3d at 1161 (commenting that, in the § 1983 context, a plaintiff may establish liability for a policy by showing a "series of bad acts[,] creating an inference that [] officials were aware of and condoned the misconduct of their employees.") (citation omitted).

As the Ninth Circuit pointed out in *Karasek*, *Simpson*, which was decided on summary judgment, does not foreclose the possibility that allegations of general, campus-wide policy or practice of deliberate indifference are sufficient at the pleading stage. *Karasek*, 956 F.3d 1093 at 1113. The Ninth Circuit commented that while "it may be easier to *establish* a causal link between a school's policy of deliberate indifference and the plaintiff's harassment when the heightened risk of harassment exists in a specific program," a plaintiff could nonetheless "adequately allege

20

causation even when a school's policy of deliberate indifference extends to sexual misconduct occurring across campus." *Id.* (emphasis added). In other words, while the absence of specific allegations about a specific program may make the plaintiffs' task at summary judgment more difficult, they do not provide grounds for dismissing the pre-assault claims at the pleading stage.

Loyola also attempts to distinguish *Karasek* on its facts by pointing out that, in that case, a comprehensive state audit had found that the university mishandled approximately 76% of the Title IX complaints that it had received. (R. 39 at 14–15.) But in *Karasek*, "it was not the existence of the audit that was dispositive, but rather the audit's individual findings." *Vander Pas*, 2022 WL 1597423 at *7. While the Ninth Circuit concluded that the audit's findings were sufficient to support a *de facto* policy of deliberate indifference, it did not hold that comparable allegations are always necessary at the pleading stage. Here, allegations that Loyola systemically mishandled sexual assault claims since 2011, corroborated by the 2016 news article, the university's reporting, and the plaintiffs' individual allegations are sufficient to plausibly allege pre-assault claims based on a *de facto* policy of deliberate indifference.

In sum, the Court concludes that the plaintiffs (with the exception of Jane Doe E) have stated colorable pre-assault claims by alleging that Loyola adopted a policy of deliberate indifference that subjected students to a heightened risk of being sexually assaulted. Loyola's motion to dismiss the plaintiffs' Title IX pre-assault claims is therefore denied as to all plaintiffs other than Jane Doe E.

### B. Post-Assault Claims

Having found that the plaintiffs have stated pre-assault claims against Loyola based on a *de facto* policy of deliberate indifference, the Court now considers whether the plaintiffs have stated post-assault claims based on the university's failure to respond to their harassment allegations. The plaintiffs allege that the university was deliberately indifferent to their reports of sexual assault because it failed to take disciplinary action, delayed or mishandled their investigations, failed to inform the plaintiffs of resources, and forced them to come into further contact with their harassers. Loyola argues in response that the plaintiffs' individual allegations are time barred and fail to state a claim. The Court addresses each argument below.

### 1. Statute of Limitations

The Court first considers whether the plaintiffs' Title IX post-assault claims are barred by the two-year statute of limitations. For deliberate indifference claims based on a failure to adequately respond to allegations of sexual harassment, accrual "is measured not by incident of the underlying sexual harassment, but from [the plaintiff's] interactions with the [defendant] about his complaint." *Yap v. Nw. Univ.*, 119 F. Supp. 3d 841, 847 (N.D. Ill. 2015).

Unlike the plaintiffs' pre-assault claims, the Court concludes that many of the plaintiffs' individual post-assault claims are clearly time-barred. *Howe Mil. Sch.*, 227 F.3d at 987. Catherine Ann Cappello, Amma Appiagyei-Dankah, and Jane Does A, C, G, H, J, and N all allege that they were sexually assaulted and the university investigated their claims prior to the September 21, 2020, the outside date for Title IX's two-year statute of limitations. These plaintiffs do not allege that they had any

22

interaction with Loyola or its administrators regarding their claims on or after September 21, 2020. Nor do they allege that they lacked knowledge of the university's indifferent response to their allegations. Because the plaintiffs do not allege that they had any interactions with Loyola or its administrators regarding their complaints following September 21, 2020, these plaintiffs' post-assault claims are time-barred. *See Small v. Chao*, 398 F.3d 894, 899 (7th Cir. 2005) (affirming dismissal of Title IX claims where the last act performed by the funding recipient occurred more than two years prior to the date on which the complaint was filed). Consequently, these plaintiffs' post-assault claims are dismissed.

### 2. Failure to State a Claim

The Court next considers whether the remaining three plaintiffs whose individual post-assault claims are not clearly time barred—Madeline Kane, Marissa Sepulveda, and Jane Doe E—plausibly state a claim.[5] To establish a Title IX post-assault claim, a plaintiff must allege: (1) that the school exercised substantial control over both the harasser and the context in which the known harassment occurred; (2) the plaintiff suffered harassment that is so severe, pervasive, and objectively offensive that it can be said to deprive them of access to the educational opportunities

---

[5] Loyola argues that Kane's claim is untimely because her Title IX investigation concluded in September 2020 (R. 39 at 27.) But the first amended complaint gives no indication whether the investigation concluded within the limitations period. (*See* FAC ¶ 56.) Moreover, Kane alleges that she was drugged at a fraternity party in 2021. (*Id.* ¶ 57.) Similarly, Loyola argues that Sepulveda's claim is untimely because her alleged sexual assault occurred in 2019. (R. 39 at 27.) However, Sepulveda's allegations relate to a complaint that was filed in September 2021, well within the limitations period. (*Id.* ¶ 66); *see also Yap* 119 F. Supp. 3d at, 847 (statute of limitations is measured from the plaintiff's last interaction with the defendant regarding their claim). As to these plaintiffs, the Court concludes that the "safer course" is to address Loyola's Rule 12(b)(6) arguments. *Luna Vanegas, Inc.*, 46 F.4th at 640.

or benefits provided by the school; (3) the school had actual knowledge of the harassment; (4) the school acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference caused the plaintiff to undergo harassment or make that student vulnerable to it. *Pogorzelska v. VanderCook Coll. of Music*, 442 F. Supp. 3d 1054, 1062 (N.D. Ill. 2020) (citing *Davis*, 526 U.S. at 644–45).

### a. Plaintiff Madeline Kane

The Court first considers whether Plaintiff Madeline Kane's allegations are sufficient to state a post-assault claim. Kane alleges that Loyola acted unreasonably by (1) delaying its investigation into her allegations of sexual harassment for more than six months, (2) allowing her assailant to skip interviews, (3) informing Kane (contrary to the university's comprehensive policy) that she did not have a right to an attorney during the investigation, and (4) reaching an erroneous outcome by finding her assailant not guilty of sexual assault.

As a general matter, allegations that a university delayed or violated its own policies in responding to complaints of sexual harassment are not necessarily sufficient to state a claim for deliberate indifference. A delayed response constitutes deliberate indifference only if "it prejudices the plaintiff or if the delay was a 'deliberate attempt to sabotage the plaintiff's complaint or its orderly resolution.'" *Karasek*, 956 F.3d at 1106 (citation omitted). Kane's allegations that Loyola delayed in investigating her claim are not actionable to the extent that they reflect a negligent, rather than intentional, response to harassment. *See id.* (affirming dismissal of plaintiff's individual Title IX claim, despite allegations that the university delayed in responding to the plaintiff's Title IX allegations for over eight

months, where the school's policy provided that complaints must be resolved in 60 days). The first amended complaint is devoid of allegations that the delay in processing Kane's claim was intentional.

Nor is Kane's allegation that Loyola erred in its disciplinary decision necessarily actionable absent facts suggesting that the decision was "clearly unreasonable." *Jauquet*, 996 F.3d at 808. Victims of harassment do not have a right to make particular remedial demands and "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* (citation omitted) (affirming dismissal of Title IX claim).

However, Kane's allegations that the university allowed her assailant to skip interviews and told her that she could not obtain an attorney during her Title IX investigation are a different matter. Accepting these allegations as true, Loyola's actions are clearly unreasonable as they reflect deliberate violations of its own policies, as opposed to mere negligence. *Compare Karasek*, 956 F. 3d at 1108 (finding that defendant's noncompliance with its own policies was "at most, negligent, lazy, and careless"). Kane's allegations are therefore sufficient to allege that Loyola acted with deliberate indifference to her harassment.

Finally, Kane plausibly alleges that Loyola's deliberately indifferent response to the allegations caused her to undergo further harassment, because, after her Title IX investigation, Kane alleges she was "drugged at a different fraternity party." (FAC ¶ 57.) While Kane must present evidence at summary judgment indicating how Loyola's indifference caused this subsequent harassment, the Court finds that this

25

allegation of further harassment is sufficient at the pleading stage. Loyola's motion to dismiss Kane's post-assault deliberate indifference claim is therefore denied.

### b. Plaintiff Marissa Sepulveda

The Court next considers whether Plaintiff Marissa Sepulveda has stated an actionable post-assault claim for deliberate indifference. Sepulveda alleges that she was sexually assaulted twice in 2019 by other Loyola students in on-campus dorm buildings. She reported the first incident to the university but chose not to report the second incident due to Loyola's failure to enforce a no-contact directive that was issued against her assailant.

The Court finds that Sepulveda's allegations are sufficient to state a "post-assault" claim for deliberate indifference. Allegations that a school imposed a "no contact" order after receiving a report of sexual assault and subsequently allowed the assailant to violate that no-contact order are sufficient to allege that the funding recipient's response to harassment was clearly unreasonable. *See Pogorzelska*, 1054 F. Supp. 3d at 1064 (collecting cases). Being forced to encounter one's assailant can constitute further sexual harassment, thus satisfying the fifth element of the deliberate indifference standard. *See id.*; *Wills v. Brown Univ.*, 184 F.3d 20, 37 (1st Cir. 1999) ("[T]he continuing presence of the harasser may so alter the terms and conditions of education that the victim of harassment may be able to establish a claim for sex discrimination."). Accordingly, Loyola's motion to dismiss Sepulveda's post-assault claim is denied.

### c. Jane Doe E

Lastly, the Court addresses Jane Doe E's post-assault claim. Jane Doe E alleges that, following her return to Loyola after her study abroad program, she learned that the R.A. who sexually assaulted her had been assigned to a freshman dorm, which caused her "great concern." (FAC ¶ 181.)

Jane Doe E's allegations do not state a claim for post-assault deliberate indifference under Title IX. In particular, she fails to allege that Loyola's actions caused or made her vulnerable to additional harassment. Jane Doe E does not allege that she lived in the dorm where her alleged assailant was assigned as an R.A., nor does she allege that she ever saw her assailant on campus while the investigation was pending. Generalized knowledge that a victim's assailant remained on campus is insufficient to state a claim under Title IX. *See Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 625 (6th Cir. 2019) (holding that plaintiff's allegations that she "could have encountered" her harasser on campus at any time due to his "mere presence . . . on campus" was insufficient to state a claim for deliberate indifference); *accord Yoona Ha v. Nw. Univ.*, No. 14 C 895, 2014 WL 5893292, at *2 (N.D. Ill. Nov. 13, 2014) (holding that plaintiff's "claims that knowledge of [her assailants'] presence on the campus caused her considerable grief" were "not actionable under Title IX.").

Because Jane Doe E fails to allege that Loyola's actions subjected her to further harassment or made her vulnerable to it, her post-assault deliberate indifference claim is dismissed.

* * * *

27

In sum, Loyola's motion to dismiss the plaintiffs' pre-assault Title IX claims is granted as to Jane Doe E and denied as to all other plaintiffs. Loyola's motion to dismiss the plaintiffs' post-assault claims is granted as to all other plaintiffs other than Madeline Kane and Marissa Sepulveda and denied as to those two plaintiffs. Since all of Jane Doe E's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over her remaining state law claims. *See, e.g.*, *Leister v. Dovetail, Inc.*, 546 F.3d 875, 882 (7th Cir. 2008) ("When [a] federal claim in a case drops out before trial, the presumption is that the district judge will relinquish jurisdiction over any supplemental claim to the state courts.").

## II. COMMON LAW CLAIMS

Having determined that certain of the plaintiffs' Title IX claims may proceed, the Court now addresses Loyola's motion to dismiss  the plaintiffs' remaining state law claims for violating the PSVHEA (Count II), negligence (Count III), negligent supervision, hiring or retention (Count IV), gross negligence (Count V), NIED (Count VI), IIED (Count VII), breach of contract (Count VIII), breach of fiduciary duty (Count IX), premises liability (Count X), and common law fraud (Count XI). The Court may exercise supplemental jurisdiction over these claims because they are "so related" to the plaintiffs' Title IX claims "that they form part of the same case or controversy." U.S.C. § 1367(a).[6]

---

[6] In their motion to sever and remand, the plaintiffs ask the Court to not exercise supplemental jurisdiction over the plaintiffs' state law claims. Except for their PSVHEA claims (addressed *infra*), however, the plaintiffs do not identify any circumstances that justify declining to exercise supplemental jurisdiction over their state law claims. The plaintiffs' Title IX claims and their state law claims seek damages for their sexual assault and Loyola's allegedly indifferent response, and thus arise from a "common nucleus of operative fact."

### A. PSVHEA (Count II)

First, the Court considers the plaintiffs' PSVHEA claims. Acknowledging that the text of the PSVHEA does not include a private right of action, the plaintiffs ask this Court to infer one. "District courts may decline to exercise supplemental jurisdiction over a claim . . . if the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Whether the PSVHEA implies a private right of action is an issue of first impression in Illinois, and the only other federal court to have considered this issue declined to exercise supplemental jurisdiction over PSVHEA claims brought by private parties. *See, e.g.*, *O'Shea v. Augustana Coll.*, 593 F. Supp. 3d 838, 853 (C.D. Ill. 2022) (declining to exercise supplemental jurisdiction over PSVHEA claim). This Court takes the same approach. Because whether the PVSHEA implies a private right of action is a novel issue that is more appropriately addressed by Illinois courts, the Court declines to exercise supplemental jurisdiction over the plaintiffs' PSVHEA claim. This claim is dismissed without prejudice, and the plaintiffs' motion to remand this claim is therefore denied as moot.

### B. Negligence (Counts III, IV, and V)

The Court next considers the plaintiffs' claims for negligence (Count III), negligent failure to train, supervise, or retain (Count IV), and gross negligence (Count V). While ordinary negligence and negligent supervision claims turn on differing theories of liability, they require proof of the same elements. *See Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) ("One claim supported by

---

*Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008). Consequently, the Court denies the plaintiffs' motion to sever and remand these claims.

multiple theories does not somehow become multiple claims."). Additionally, "Illinois does not recognize gross negligence as an independent ground for recovery." *Burke v. Nationstar Mortg., LLC*, No. 21 C 1549, 2022 WL 888811, at *12 (N.D. Ill. Mar. 25, 2022) (quoting *Merit Ins. Co. v. Colao*, 603 F.2d 654, 659 (7th Cir. 1979)). The Court therefore analyzes these causes of action together.

In Illinois, a plaintiff asserting a common law negligence claim "must establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Choate v. Ind. Harbor Belt R.R. Co.*, 980 N.E.2d 58, 64 (Ill. 2012). To allege the existence of a duty, a plaintiff must point to "a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* Whether a duty exists is a question of law. *Bruns v. City of Centralia*, 21 N.E.3d 684, 688−89 (Ill. 2014).

The plaintiffs' negligence claims fail on the first element. The first amended complaint does not point to any legally cognizable duty between the university and its students that would obligate Loyola to protect them from sexual assaults perpetrated by fellow students. There is no affirmative duty to protect another from criminal attack by a third party absent a special relationship. *See Iseberg v. Gross*, 879 N.E.2d 278, 284 (Ill. 2007). In the context of higher education, "[c]ourts consistently find that the university-student relationship is not the type of 'special relationship such that the university has a duty to protect students from the harmful acts of third parties." *Doe v. Columbia Coll.*, 299 F.Supp.3d 939, 962 (N.D. Ill. 2017)

(collecting cases); *accord Totten v. Benedictine Univ.*, No. 20 C 6107, 2021 WL 3290926, at *11 (N.D. Ill. Aug. 2, 2021); *see also Bogenberger v. Pi Kappa Alpha Corp., Inc.*, 104 N.E.3d 1110, 1123 (Ill. 2018) (commenting that "appellate court[s] ha[ve] rejected attempts to hold universities liable for harm perpetrated by one student upon another"). This is true even in circumstances where the university exercises control over the context in which the act took place. *Totten*, 2021 WL 3290926 at *12.

Here, the plaintiffs allege that they were sexually assaulted at different times, by different individuals, at different locations on and around Loyola's campus. There are insufficient facts pleaded in the complaint to conclude that the sexual assaults were reasonably foreseeable such that Loyola had a duty to prevent them.

Jane Does A, G, and H each allege that they were assaulted by students who had been previously reported for sexual assault. (FAC ¶¶ 132, 139 166–171.) These allegations raise the possibility that Loyola may be liable based on its "unique knowledge" that the assailants posed a threat. *Doe-2*, 593 F.3d at 514–515. Even as to these plaintiffs, however, the Court is not convinced that the first amended complaint plausibly alleges a common law duty to protect. The cases in which Illinois courts have held that a school has a duty to protect students from their peers involved plaintiffs who were minors and were especially vulnerable or placed into close contact with their assailant by the school. *See, e.g.*, *Ortega–Piron ex rel. Doe v. Chi. Bd. of Educ.*, 820 N.E.2d 418, 423 (Ill. 2004) (recognizing a claim for a school board's failure to prevent a known sexually aggressive student from assaulting a known mentally disabled student). The plaintiffs cite no authority that recognizes a comparable duty

to protect college-aged students on a large university campus from criminal acts committed by their peers.

Regardless, even if Jane Does A, G, and H's allegations were sufficient to state a claim for negligence, their claims would be barred by the two-year statute of limitations since they were sexually assaulted in 2019, nearly three years before the initial complaint was filed. *See, e.g.*, *Hollander v. Brown*, 457 F.3d 688, 695 (7th Cir. 2006) (affirming dismissal of negligence claims under Illinois' two-year statute of limitations).

Bereft of common law authority, the plaintiffs allege that Title IX, the Clery Act, and the PSVHEA give rise to a duty to protect. But as the Supreme Court explained in *Gebser*, the scope of Title IX's private right of action should be construed narrowly to preclude liability based on *respondeat superior* and constructive notice. *Gebser*, 524 U.S. at 287. Finding that Title IX implies a duty to protect students from the criminal acts of third parties would eviscerate this limitation. *Cf. Davis*, 526 U.S. at 648 ("We stress that our conclusion here . . . does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment. . . ."); *see also Ross v. Univ. of Tulsa*, No. 14 C 484, 2015 WL 4064754, at *3 (N.D. Okla. July 2, 2015) (holding that Title IX's "general nondiscrimination mandate . . . does not establish any statutory standard that may substitute for the general common law standard."). Likewise, the Clery Act specifically states that it may not be construed to "(i) create a cause of action . . . for any civil liability; or (ii) establish any standard

of care." 20 U.S.C. § 1092(f)(14)(A). And, as stated above, the Court declines to wade into the PSVHEA's uncharted waters to imply a private right of action.

In sum, because the plaintiffs fail to plausibly allege the existence of a duty that would give rise to liability, and because their claims are otherwise time-barred, their negligence claims are dismissed.

### C.    NIED (Count VI)

The Court next considers the plaintiffs' claims for negligent infliction of emotional distress ("NIED"). To state a claim for NIED under Illinois law, a plaintiff "must allege the traditional elements of negligence: duty, breach, causation, and damages." *Doe v. Loyola Univ. of Chi.*, No. 18 C 7335, 2019 WL 3801819, at *3 (N.D. Ill. Aug. 13, 2019) (citing *Schweihs v. Chase Home Fin., LLC*, 77 N.E.3d 50, 58 (Ill. 2016)). "Direct victims," *i.e.* those who suffer harm as a direct consequence of the defendant's negligence must also satisfy the "impact rule" by showing that the emotional distress was accompanied by a contemporaneous physical injury to or impact. *Schweihs*, 77 N.E.3d at 59.

As stated above, the plaintiffs have largely failed to allege that Loyola owed an actionable common law duty to the plaintiffs, hence they have failed to allege "the traditional elements of negligence." *Loyola*, 2019 WL 3801819, at *3. To the extent that the plaintiffs seek to hold Loyola liable for post-assault conduct, they do not allege any contemporaneous physical impact. Finally, even if certain of the plaintiffs had adequately alleged a duty, their claims would be barred by the statute of limitations. *Doe v. Hastert*, 133 N.E.3d 1249, 1255 (Ill. App. Ct. 2019) (NIED claims

33

are subject to a two-year statute of limitations). The plaintiffs' NIED claims are therefore dismissed.

### D.    IIED (Count VII)

Next, the Court addresses the plaintiffs' claims for intentional infliction of emotional distress ("IIED"). IIED requires the plaintiffs to allege that (1) Loyola engaged in extreme and outrageous conduct; (2) Loyola either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) Loyola's conduct caused severe emotional distress. *S.J.* v. *Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 859 (N.D. Ill. 2010) (citing *Tuite v. Corbitt*, 830 N.E.2d 779, 789 (Ill. App. Ct. 2005) (*rev'd on other grounds*). "Illinois has a high standard for extreme and outrageous conduct." *Totten*, 2021 WL 3290926, at *11 (citation omitted). The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The first amended complaint alleges several instances of rude, offensive, or uncooperative conduct by Loyola. For example, Catherine Ann Cappello alleges that Loyola professors referred to her as a "troublemaker" after she complained about being forced to work in the same small group as her assailant (FAC ¶ 42), and Jane Doe H alleges that an R.A. called her a "whiny little brat" after she informed the R.A. of her sexual assault. (*Id.* ¶ 135.) Other plaintiffs allege the school failed to adequately support them during their Title IX investigations, failed to prevent them from encountering their attackers on campus, or failed to inform them of available resources. (*See generally id.*)

34

As an initial matter, many of the plaintiffs' IIED claims are subject to a two-year statute of limitations and are therefore time barred. *See, e.g.*, *Kiebala v. Boris*, No. 16 C 7478, 2017 WL 1161177, at *2 (N.D. Ill. Mar. 29, 2017). Even if the Court were to ignore this deficiency, the alleged actions do not constitute intentional, outrageous conduct that would plausibly give rise to liability for IIED. Courts in this district have rejected IIED claims based on allegations that funding recipients failed to investigate or respond to complaints of sexual harassment. *Totten*, 2021 WL 3290926, at *12; *Columbia Coll.*, 299 F. Supp. 3d at 964. Allegations that a victim of sexual harassment was "inconvenienced, ignored, and treated worse than her aggressors" are also insufficient to state a claim. *Totten*, 2021 WL 3290926, at *12.

In their response, the plaintiffs fail to cite any cases in which analogous IIED claims were allowed to proceed. (*See generally* R. 43.) Even if Loyola's actions could be construed as extreme or outrageous, however, the plaintiffs fail to allege facts suggesting that Loyola intended or knew that there was a high likelihood that its actions would cause severe emotional distress. Instead, they claim that Loyola "should have reasonably concluded" that its conduct would inflict emotional distress. (*See* FAC ¶¶ 256, 258.) At best, these allegations suggest that the university was inattentive and acted irresponsibly in responding to the plaintiffs' concerns. Such allegations are insufficient to plausibly allege an intentional tort. The plaintiffs' IIED claims are therefore dismissed.

### E. Breach of Contract (Count VIII)

The Court next turns to the plaintiffs' breach of contract claim. To establish a breach of contract in Illinois, a plaintiff must prove: (1) the existence of a valid and

35

enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) damages. *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 883 (7th Cir. 2022).

The plaintiffs do not allege that they executed an express contract with Loyola. Nonetheless, "[i]n the educational context, courts recognize that a contractual relationship exists between a college or university and its students," the terms of which may be implied from "the school's catalogs, bulletins, circulars, regulations, and other publications, and customs." *Id.* (citations omitted). To state a claim, however, "a student must point to an identifiable contractual promise that the defendant failed to honor." *Id.* (quoting *Ross v. Creighton Univ.*, 957 F.2d 410, 417 (7th Cir. 1992)). The complaint "must be specific about the source of the implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013) (citation omitted). For breach of contract claims based on "adverse academic decisions," students must allege that the "decision was made arbitrarily, capriciously, or in bad faith." *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 699 (Ill. App. Ct. 2004).

Here, the first amended complaint does not allege the terms of an implied contract or the facts surrounding Loyola's breach with requisite specificity. While the complaint quotes broadly from Loyola's policy handbook, it does not specifically indicate which promises were not honored. (*See generally* FAC ¶ 36.) The portions of policy handbook that are quoted in the first amended complaint are phrased in

permissive, rather than mandatory, terms. For example, the policy provides that Loyola "*may* implement a no-contact directive" in response to a request; that complainants "*may* be accompanied by one advisor of their choice; and that "the University *aims to complete* all investigations into students' report (*sic*) of sexual misconduct within six months of receipt of the initial complaint." (*Id.* (emphases added).) These statements are insufficient to state a claim for breach of an implied contract. *Charleston*, 741 F.3d at 773; *Svigos v. Petry Television, Inc.*, No. 95 C 5899, 1996 WL 388416, at *3 (N.D. Ill. July 9, 1996) (rejecting breach of implied contract claim based on "permissive language" in the company's harassment policy and holding that statements in the policy like "such behavior *may* result in disciplinary action" were not a binding obligation to impose discipline).

To the extent that the plaintiffs challenge Loyola's discretionary decision-making under the policy, the first amended complaint fares no better. The plaintiffs have not pleaded facts indicating that Loyola acted arbitrarily, capriciously, or in bad faith. *Raethz*, 805 N.E.2d at 699.

As a fallback, the plaintiffs point to allegations that the plaintiffs violated Title IX and the Clery Act as evidence that Loyola breached a contract with the plaintiffs. (FAC ¶ 265.) But a plaintiff cannot use a breach of contract claim to enforce statutory provisions that lack a private right of action. *Ochoa v. State Farm Life Ins. Co.*, 910 F.3d 992, 995 (7th Cir. 2018) (citing *Vill. of McCook v. Ill. Bell Tel. Co.*, 780 N.E.2d 335, 341 (Ill. App. Ct. 2002)). The plaintiffs' breach of contract claims are therefore dismissed.

37

### F.     Breach of Fiduciary Duty (Count IX)

Next, the Court address the plaintiffs' breach of fiduciary duty claims. "To establish a breach of fiduciary duty in Illinois, a plaintiff . . . must show: (1) that a fiduciary duty exists; (2) that the duty was breached; and (3) injury proximately caused by the breach." *Breedlove v. Museum of Sci. & Indus.*, No. 16 C 5861, 2017 WL 56641, at *1 (N.D. Ill. Jan. 5, 2017) (citation omitted).

There appears to be no Illinois authority recognizing a fiduciary duty between college-aged students and the educational institutions they attend, much less one that would obligate institutions to protect students from the criminal acts of third parties. (R. 39 at 38 (citing *Phillips v. DePaul Univ.*, No. 12 CH 3523, 2012 WL 4000001 (Ill. Cir. Ct. Sep. 11, 2012) ("There is no Illinois authority finding that a fiduciary relationship exists between a student and an educational institution.")).) The plaintiffs do not cite any cases under Illinois law recognizing the existence of a fiduciary duty in an analogous context, nor do they attempt to distinguish the authority cited by Loyola. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument [in a motion to dismiss] . . . results in waiver."). Because the plaintiffs have failed to plausibly allege that a fiduciary duty exists, their claim is dismissed.

### G.     Premises Liability (Count X)

The Court next considers the plaintiffs' premises liability claims. Under Illinois law, property owners owe their invitees a duty to maintain the premises in a reasonably safe condition. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). To state

a claim for premises liability, a plaintiff must allege: (1) the existence of a condition that presents an unreasonable risk of harm to persons on the premises; (2) that the defendants knew, or should have known, that the condition posed an unreasonable risk of harm; (3) that the defendants should have anticipated that individuals on the premises would fail to discover or recognize the danger or otherwise fail to protect themselves against it; (4) a negligent act or omission on the part of the defendant; (5) an injury suffered by the plaintiff; and (6) that the condition of the property was a proximate cause of the injury to the plaintiff.

These claims fail too. First, many plaintiffs allege that they were assaulted off campus without also alleging that their sexual assaults can fairly be attributed to a condition of Loyola's property. There is "no liability on the part of a college for non-curricular activities taking place on property not owned by the college." *Leonardi v. Bradley Univ.*, 625 N.E.2d 431, 436 (Ill. App. Ct. 1993).

The plaintiffs who lived in and were sexually assaulted in on-campus housing also fail to state a claim for premises liability. First, each plaintiff who alleges that they were sexually assaulted in Loyola dorms indicates that their assault occurred prior to September 21, 2020, rendering their claims time barred. *See, e.g.*, *Mular v. Ingram*, 33 N.E.3d 771, 777 (Ill. App. Ct. 2015) (holding that premises liability claims are subject to a two-year statute of limitations under Illinois law).

Even if these plaintiffs' claims were not time barred, however, they would still fail. A landowner generally has no duty to protect others from criminal activities by third persons on its property. *Rowe v. State Bank of Lombard*, 531 N.E. 2d 1358, 1364

(Ill. 1988). The plaintiffs argue that "a landlord may be held liable for the criminal acts of third parties when it voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of injury to the Plaintiff." (R. 43 (citing *Rowe*, 531 N.E. 2d at 1365).) But the plaintiffs have not alleged that Loyola provided security measures, did so negligently, or that its negligence proximately caused the plaintiffs' assaults. Cases in which courts have allowed similar premises liability claims to go forward have involved much more specific allegations as to the security measures employed and the steps that the defendant failed to take. In *Doe v. Allegheny College*, for example, the district court denied the defendant college's motion to dismiss premises liability claims for sexual assault that occurred in a college dorm because the plaintiff had alleged that the defendant had failed to properly maintain access card systems, hire security, or install video cameras at its dormitories. No. 20 C 212, 2021 WL 4479709, at *2 (W.D. Pa. Sept. 30, 2021). No comparable allegations are present here.

Because the plaintiffs' allegations are untimely and insufficient to state a claim, their premises liability claims are dismissed.

### H. Fraud (Count XI)

Finally, the Court briefly addresses the plaintiffs' claims for common law fraud. To state a claim for fraud under Illinois law, the plaintiffs must allege: (1) a false statement of a material fact; (2) made with knowledge of its falsity; (3) intending to induce the plaintiff to act; (4) that plaintiffs relied on the statement; and (5) the damage from such reliance. *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 727–28 (N.D. Ill. 2022) (citing *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E. 2d 584 (Ill. 1996)).

Allegations of fraud are subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to "describ[e] the 'who, what, when, where, and how' of the fraud." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (citation omitted).

The plaintiffs allege that Loyola published false statistics regarding the prevalence of sexual assault and made false representations about the safety of its facilities. The plaintiffs do not identify the content of any false statements with particularity, nor who made them. These threadbare allegations are not sufficient to state a claim, much less satisfy Rule 9(b)'s heightened pleading standard. Even if the plaintiffs are correct that the statistics contained in Loyola's Clery Act and PSVHEA reporting are false, this does not make it plausible that the university knew that the statements were false when it published them, or that the university intended to induce reliance. Accordingly, the plaintiffs' common law fraud claims are dismissed.

## CONCLUSION

For the reasons stated in this order, defendant Loyola University of Chicago's motion to dismiss [38] is granted in part and denied in part. Jane Doe E's Title IX claims are dismissed for failure to state a claim, and the Court declines to exercise supplemental jurisdiction over her state law claims. The remaining plaintiffs' pre-assault Title IX claims, as well as Madeline Kane's and Marissa Sepulveda's post-assault Title IX claims, will be allowed to proceed. All other claims are dismissed without prejudice. The plaintiffs' motions to remand and sever [18]; [19] are denied as moot. The plaintiffs will have 28 days to file an amended complaint if they can do so consistent with this opinion and the Federal Rules of Civil Procedure. Finally,

within 28 days, the plaintiffs must file a memorandum of law of no longer than ten pages addressing leave to proceed using pseudonyms. *See Doe v. City of Chi.*, 360 F.3d 667, 669–70 (7th Cir. 2004). The defendant will have one week to respond to the plaintiffs' memorandum. No reply will be allowed. Status hearing set for April 30, 2024, at 9:30 a.m.

Date: March 18, 2024

_____

JEREMY C. DANIEL
United States District Judge