UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADELINE KANE, *et al.*,<br>Plaintiffs<br><br>v.<br><br>LOYOLA UNIVERSITY OF CHICAGO,<br>Defendant | No. 22 CV 6476<br><br>Judge Jeremy C. Daniel |

### ORDER

For the reasons stated in this order, the plaintiffs' motion for leave to proceed using pseudonyms [70] is granted. The parties must not use the real name of the Jane Doe plaintiffs in any court filings and must take steps to redact or seal exhibits containing the Jane Doe plaintiffs' identifying information. Defendant Loyola University of Chicago's motion to dismiss Count III of the second amended complaint [76] is also granted. Count III is dismissed with prejudice, since this is the plaintiffs' third pleading opportunity, and they do not request leave to amend or indicate how defects in their breach of contract claim might be cured through additional pleading. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018). Loyola shall answer the second amended complaint by September 25, 2024. September 5, 2024, status hearing is stricken.

### STATEMENT

The plaintiffs, former students at Loyola University of Chicago ("Loyola"), filed this action under Title IX of the Civil Rights Act of 1964, 20 U.S.C. 38 § 1681 *et seq.*, alleging that Loyola was deliberately indifferent to on-campus sexual assault. Following a motion to dismiss, the Court granted the plaintiffs leave to file a second amended complaint and ordered additional briefing on whether the five "Jane Doe" plaintiffs could proceed using pseudonyms. *See Kane v. Loyola Univ. of Chi.*, No. 22 C 6476, 2024 WL 1157396, at *19 (N.D. Ill. Mar. 18, 2024). The plaintiffs amended their complaint to include a claim for breach of contract (Count III) and moved for leave to proceed pseudonymously. (R. 69 ("SAC"); R. 70.) The defendants opposed the motion and moved to dismiss Count III under Federal Rule of Civil Procedure 12(b)(6). (R. 76.) The Court now addresses each motion, beginning with the plaintiffs' motion to proceed using pseudonyms.

Federal Rule of Civil Procedure 10 states that "the title of the complaint must name all of the parties." Fed. R. Civ. P. 10. This rule, "though seemingly pedestrian," serves the vital purpose of "facilitating public scrutiny of judicial proceedings." *Doe v. Cook Cnty., Ill.*, 542 F. Supp. 3d 779, 783 (N.D. Ill. 2021) (quoting *Sealed Plaintiff v. Sealed*

*Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008)). The Seventh Circuit "disfavor[s] [ ] parties proceeding anonymously, as anonymous litigation runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 376–77 (7th Cir. 2016).

That said, a plaintiff may proceed pseudonymously if she has "a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings." *Cook Cnty.*, 542 F. Supp. 3d at 784 (quoting *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992)). Though the Seventh Circuit has not fashioned a standard, district courts consider a variety of non-dispositive factors in determining whether plaintiffs may proceed anonymously. *See id.* at 784–85. These include the nature of the allegations, evidence of harm, retaliation or ridicule, the potential chilling effect of the disclosure, the risk of prejudice to the nonmoving party, and whether the opposing party is a government entity or a private individual. *Id.* (collecting cases).

Here, the sensitive and personal nature of the Jane Doe plaintiffs' allegations weighs strongly in favor of pseudonymity. Each plaintiff alleges that she was a victim of sexual assault or domestic violence—allegations that necessarily involve the disclosure of information of the utmost intimacy. *Doe v. Purdue Univ.*, 321 F.R.D. 339, 342 (N.D. Ind. 2017) (citing *John Doe v. Columbia Univ.*, 831 F.3d 46 (2d Cir. 2016)). "Courts often extend the protection of anonymity to victims of sex crime" on the grounds that such individuals are especially vulnerable. *Doe v. Loyola Univ. of Chi.*, 100 F.4th 910, 914 (7th Cir. 2024) (citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)).[1] Unlike a litigant who objects to disclosure of their own "immoral or irresponsible conduct," a victim of sexual assault has no choice in the harm they suffer. *Coe v. Cnty. of Cook*, 162 F.3d 491, 498 (7th Cir. 1998). Pseudonymity also prevents a chilling effect that would deter similarly situated plaintiffs from bringing future lawsuits. *Cook Cnty.*, 542 F. Supp. 3d at 788. The public has a strong interest in "protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights . . . ." *Id.* (quoting *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001)).

---

[1] Federal caselaw is split on whether allegations of sexual assault victimization alone are sufficient to justify pseudonymity. *See* Eugene Volokh, *The Law of Pseudonymous Litigation*, 73 Hastings L.J. 1353, 1409 (2022) (collecting cases). Based on the Seventh Circuit's *dicta* in *Blue Cross*, 112 F.3d at 872, however, most district courts in this Circuit have granted sexual assault victims' motions for leave to proceed anonymously. *See, e.g.*, *Doe 1 v. Bd. of Educ. of DeKalb Cmty. Unit Sch. Dist. 428*, No. 23 C 50292, 2023 WL 8701082, at *3 (N.D. Ill. Dec. 15, 2023) (granting leave to proceed anonymously); *Doe v. Sproul*, No. 20 C 610, 2022 WL 579488, at *2 (S.D. Ill. Feb. 24, 2022) (same); *Doe v. Purdue Univ.*, No. 19 C 56, 2019 WL 3887165, at *4 (N.D. Ind. Aug. 19, 2019); *Doe v. Marvel*, No. 10 C 1316, 2010 WL 5099346, at *3 (S.D. Ind. Dec. 8, 2010); *Doe No. 62 v. Ind. Univ. Bloomington*, No. 16 C 1480, 2016 WL 11553229, at *2 (S.D. Ind. Aug. 26, 2016) (same); *but see Cook Cnty.*, 542 F. Supp. 3d at 783 (denying leave); *Doe v. Hamilton Cnty. Coal, LLC*, No. 20 C 73, 2020 WL 2042899, at *1–2 (S.D. Ill. Apr. 28, 2020) (same).

Loyola argues that the plaintiffs have not produced evidence of retaliatory harm or harassment sufficient for leave to proceed anonymously. (R. 75 at 5–7.) But the Court is not convinced that such evidence is required given the severity of the allegations of sexual assault and domestic violence at issue. *See, e.g.*, *Purdue Univ.*, 2019 WL 3887165, at *3. Nor has Loyola shown that it would be prejudiced by allowing the Jane Doe plaintiffs to remain anonymous. *See Cook Cnty.*, 542 F. Supp. 3d at 788 (placing the burden of demonstrating prejudice on the opposing party). The university is aware of the Jane Doe plaintiffs' identities, and it does not pinpoint any burdens that pseudonymity would impose during discovery. Loyola contends that it is prejudiced because it must "defend [itself] publicly before a jury while plaintiffs make accusations from behind a cloak of anonymity." (R. 75 at 7–8.) At present, however, there is no jury, and Loyola's argument merely recites the general policy against anonymity. Because Loyola has identified no case-specific prejudice, this factor favors the plaintiffs.

Finally, this is not a suit against the government. While Loyola receives federal funding (*see* SAC ¶ 18), it is not a state university (*id.* ¶ 17), much less a government entity. *Compare Cook Cnty.*, 542 F. Supp. 3d at 789–90 (noting that the public's interest in judicial openness is greater when the suit is against a government entity or public official). No public officials or municipalities are parties to this lawsuit. On balance, the Jane Doe plaintiffs' privacy interest as victims of sexual assault justifies them proceeding anonymously. The plaintiffs' motion is therefore granted.

Next, the Court considers Loyola's motion to dismiss the plaintiffs' breach of contract claim under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a plaintiff must plead 'only enough facts to state a claim to relief that is plausible on its face.'" *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 881 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard is met when "'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To state a claim for breach of contract, the plaintiffs must allege: (1) the existence of a valid and enforceable contractual promise, (2) a breach of that promise, (3) that the plaintiff performed his contractual obligations, and (4) resultant damages. *Dual-Temp of Ill., Inc. v. Hench Control, Inc.*, 821 F.3d 866, 869 (7th Cir. 2016). Because "courts will not second-guess the professional judgment of a university in academic matters," it is especially important in the academic setting that plaintiffs "point to an identifiable contractual promise that the defendant failed to honor." *Gociman*, 41 F.4th at 882 (citations omitted). The complaint "must be specific about the source of [the] . . . contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). Finally, when challenging a university's decision making, "a student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith." *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 858 (7th Cir. 2019). In other words, the

plaintiff must allege that the school acted "without any rational basis." *Id.* (citing *Frederick v. Northwestern Univ. Dental Sch.*, 617 N.E.2d 382, 387 (Ill. App. Ct. 1993)).

The second amended complaint alleges that Loyola entered a contract with the plaintiffs through representations in its "catalogs, handbooks, posters, and bulletins." (SAC ¶ 213.) While such materials can form a contract between a university and its students, *DiPerna v. Chicago School of Professional Psychology*, 893 F.3d 1001, 1006–07 (7th Cir. 2018), the complaint must specify "the exact promises the university made to the student, and the promises the student made in return." *Charleston*, 741 F.3d at 773.

Here, the second amended complaint fails to do so. The plaintiffs first point to Loyola's "Community Standards," which prohibit, among other things, "intentionally or recklessly caus[ing] or provoke[ing] a disruption to academic pursuits or [ ] infring[ing] upon the rights, privacy, or privileges of another." (SAC ¶ 215.) When read in context, this statement is not a commitment made *by Loyola*, but rather a promise made *to Loyola* by "students, student organizations, guests, and visitors." *See* Loyola University Chicago Community Standards § 201(5) (Aug. 22, 2024), https://perma.cc/KC9P-UEPK (archived August 29, 2024).[2] Even if the statement could be construed as a promise made by Loyola, the complaint does not explain how Loyola intentionally or recklessly interfered with the plaintiffs' academic pursuits or other rights. In their response brief, the plaintiffs argue that the language reflects a promise to regulate its students' conduct. (R. 81 at 3–4.) This is not what the complaint says, however. (*See* SAC ¶ 15); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (it is an "axiomatic rule that a plaintiff may not amend his complaint in his response brief"). And even assuming it was, the complaint indicates that Loyola *did* regulate its students' conduct by conducting Title IX investigations, holding hearings, and imposing discipline. The fact that it may have done so inadequately cannot form the basis of a breach of contract claim absent concrete allegations that the failure was "arbitrary, capricious, or made in bad faith." *Columbia Coll.*, 933 F.3d at 858. Such allegations are not present here.

The plaintiffs also appeal to the Community Standards' prohibition on "abusive conduct" to suggest that Loyola promised to impose specific disciplinary measures against the perpetrators of sexual assault. (*See id.* ¶¶ 217–20.) But while the document identifies probation and suspension as the "likely" outcomes for sexual misconduct, (*id.* ¶ 219), it explicitly provides that "outcomes are assigned on a case-by-case basis while considering precedent and the student's conduct record at the University." Community Standards, § 103. In other words, Loyola does not guarantee any specific disciplinary outcomes from its investigations. This statement is not an enforceable promise.

Searching for additional sources of contractual promises, the plaintiffs point to Loyola's Campus Safety policy and a Comprehensive Policy issued by Loyola's Office for Equity and Compliance. (SAC ¶¶ 31–34, 224.) But the statements that the plaintiffs identity in

---

[2] In evaluating the sufficiency of the complaint, the Court may consider documents "that are critical to the complaint and referred to in it." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013).

these documents are not enforceable promises either, much less ones that Loyola breached. For example, the statement that "Campus Safety Officers have received training on how to handle sexual assault cases," (*id.* ¶ 225), is informative rather than promissory. *See Oyoque v. DePaul Univ.*, 520 F. Supp. 3d 1058, 1064 (N.D. Ill. 2021). Unless statements of fact are "communicated to the plaintiff in such a way as to invite the payment of tuition in reliance" a plaintiff cannot "transform [them] into a binding contract." *Miller v. Lewis Univ.*, 533 F.Supp.3d 678, 686 (N.D. Ill. Apr. 11, 2021) (Kennelly, J.) (citing *Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979)). The Campus Safety policy does not indicate that Loyola trains its officers in exchange for students' tuition payments. And even if the policy could be read in the manner that the plaintiffs suggest, there are not allegations in the complaint that campus safety officers were inadequately trained. (*See* SAC ¶¶ 97–99, 117.)

Similar principles apply to Loyola's representation that its Comprehensive Policy "meets or exceeds the requirements of federal, state, and local civil rights laws and regulations." (SAC ¶ 230.) Like the previous statement, this representation is informative rather than promissory. *Oyoque*, 520 F. Supp. 3d at 1064. Moreover, the complaint does not specify how the Comprehensive Policy fails to conform with federal, state, and local standards. To the extent that this statement reflects a promise to follow federal, state, and local law, such a promise is not supported by consideration and cannot give rise to a breach of contract claim. *See, e.g., Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 WL 423356, at *6 (N.D. Ill. Feb. 4, 2019) (quoting *Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979)) ("[T]he promise to do something one is already legally obligated to do is not consideration, and no new obligation is thereby created."); 3 Williston on Contracts § 7:43 (4th ed.) ("A promise to follow the law is not one supported by consideration and thus cannot form the basis of a breach-of-contract claim.").

Finally, Loyola's promise to make a "committed effort" to provide "a safe and secure campus," (SAC ¶ 224), is not enforceable because it is an "expression[] of hope and desire." *Miller*, 533 F.Supp.3d at 685–86. The safety policy states in the very same sentence that Loyola "cannot guarantee a crime free environment." *See* Safety Programs, Loyola University of Chicago, https://perma.cc/9XW9-8BGW (archived August 28, 2024).

In sum, the plaintiffs have once again failed to identify a specific promise to support their breach of contract claim. Nor do their allegations suggest that Loyola breached any obligations arbitrarily, capriciously, or in bad faith. While the plaintiffs allege that Loyola's response to on-campus sexual assault was deficient, the allegations do not satisfy the high burden of demonstrating that Loyola breached specific contractual promises "without any rational basis." *Columbia Coll.*, 933 F.3d at 858. Accordingly, the Court grants Loyola's motion to dismiss Count III of the second amended complaint with prejudice.

Date: September 3, 2024

JEREMY C. DANIEL
United States District Judge