**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MADELINE KANE, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>LOYOLA UNIVERSITY CHICAGO,<br><br>Defendant. | No. 22 CV 6476<br><br>District Judge Daniel<br><br>Magistrate Judge McShain |

## ORDER

Pending before the Court is plaintiffs' motion to compel institutional discovery [211].[1] The Court held a motion hearing on September 2, 2026 [219]. For the following reasons, the motion is denied.

## Background

This is a Title IX case in which plaintiffs–a group of current and former female students who attended Loyola University Chicago–allege that the university systematically mishandled, underreported, and failed to adequately respond to complaints of sexual harassment. *See Kane v. Loyola Univ. of Chicago*, No. 22 CV 6476, 2024 WL 1157396 (N.D. Ill. Mar. 18, 2024).

At issue in the pending motion are four items of fact discovery that plaintiffs characterize as "Institutional Discovery." First, plaintiffs seek an order compelling Loyola to provide an unredacted version of a document production that Loyola made, with redactions, on June 24 and June 25, 2026 (the June 2026 production). [211] 15-19. As part of this request, plaintiffs contend that the nature of the redactions that Loyola made to the June 2026 production "fundamentally altered Plaintiffs' understanding" of the redactions that Loyola had made to its previous document productions. [*Id.*] 16. For that reason, plaintiffs also contend that Loyola should be required to reproduce all its previous document productions–which include roughly 45,000 pages of documents produced on a rolling basis between August 2025 and May 2026–without redactions. [*Id.*] 15-17, 21. Second, plaintiffs seek an order requiring Loyola to produce Thomas Kelly, a former Title IX coordinator whom Loyola did not identify in its initial disclosures or responses to plaintiffs' interrogatories, for a

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

deposition. [*Id.*] 14-15. Third, plaintiffs ask to reopen the deposition of Timothy Love, who became Loyola's Title IX coordinator in 2019, so that he can be questioned about the unredacted version of the June 2026 production as well as "any newly produced documents." [*Id.*] 15, 21. Fourth, plaintiffs ask that Loyola be compelled to produce one or more Rule 30(b)(6) representatives for a deposition. [*Id.*] 19-20. Loyola opposes the motion, contending that the motion is untimely because it was filed after fact discovery closed, plaintiffs have not exhausted their meet-and-confer obligations for several of the discovery items at issue, and plaintiffs are otherwise not entitled to the discovery they seek. [214].

In the Court's view, much of the discovery plaintiffs seek is likely relevant to their claims. But as the Court explains at length below, plaintiffs failed to diligently pursue the discovery at issue despite a very lengthy fact discovery period. What's more, plaintiffs' motion seeks to undo their longstanding acquiescence in Loyola's position that Title IX complaints filed by students who are not plaintiffs in this case or involving assailants who did assault one of the plaintiffs were irrelevant and would not be produced. And granting the motion would require the Court to excuse plaintiffs' multiple failures to comply with Local Rule 37.2 and the undersigned's standing order on discovery motions. Because plaintiffs have not presented the Court with a reasonable and persuasive justification for filing their motion to compel after the close of discovery–let alone a plausible explanation for why so much discovery remained incomplete at the discovery cutoff–the Court denies the motion.

## Legal Standard

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020). Rule 26 "governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at *2 (N.D. Ill. Apr. 15, 2021).

"This [C]ourt has broad discretion in ruling on a motion to compel discovery, and that discretion extends to the determination of whether a motion to compel is timely." *Africano v. Atrium Med. Corp.*, No. 17 CV 7238, 2019 WL 10891868, at *1 (N.D. Ill. Jul. 3, 2019) (internal citation omitted). "Although there are no timing boundaries outlined in Rule 37, in this circuit motions to compel filed after the close of discovery are generally deemed untimely." *Id.* (internal quotation marks omitted). "The court may excuse a late motion to compel where the moving party has reasonable and persuasive justification for its untimeliness, but absent such justification courts' general aversion to unjustified delays usually results in denials of motions to compel filed after the close of discovery. *Id.* (internal quotation marks omitted).

## Discussion

### I. The June 2026 Production and Loyola's Redactions

The Court turns first to plaintiffs' request to compel Loyola to produce the June 2026 production in unredacted form and to reproduce all its prior productions without redactions.

#### A. Background

In June 2025, Loyola served its objections and responses to plaintiffs' first sets of interrogatories and requests for production (RFP). [214-1]. Throughout those responses, Loyola objected that, to the extent that an interrogatory or RFP "seeks the disclosure of information and records regarding students other than Plaintiffs in this lawsuit," the discovery request was "irrelevant, overbroad, and subject to privacy under the Family Educational Rights and Privacy Act ('FERPA')." [*Id.*] 8; *see also* [*id.*] 13, 14, 15, 16, 22, 23, 24, 26, 27, 29, 30, 31, 42, 43, 46, 47, 48, 50, 51, 53, 54, 55 (same objection to multiple interrogatories and RFPs). Loyola also objected to producing documents "regarding all students involved in sexual misconduct complaints" because such discovery "was not proportional to the needs of the case and would largely concern individuals who are not parties to this action." [214] 3 (citing [214-1] 13)). Consistent with those objections, however, Loyola agreed to produce "documents concerning reports [of sexual assaults] involving the named Plaintiffs, as well as reports involving any respondent [*i.e.*, a perpetrator of a sexual assault] alleged by a Plaintiff." [*Id.*]. At the motion hearing, plaintiffs confirmed that they understood during the discovery period that, based on those objections, Loyola would redact documents relating to (1) any victim of sexual assault who was not one of the plaintiffs in this case and (2) any assailant who had not been accused of assaulting one of the plaintiffs.

Loyola completed the vast majority of its document production by May 7, 2026. *See* [214-2] 1-2 (list of document productions and dates on which productions were made). These productions were made pursuant to the parties' protocol for the exchange of electronically stored information (ESI), which was silent on the issue of whether responsive materials could be redacted based on relevance. *See* [211-1] 10-23. Shortly before midnight on June 24, however, and early in the morning of June 25–only hours before plaintiffs were due to depose Timothy Love–Loyola served the June 2026 production on plaintiffs. This production included 271 pages of documents that, according to defense counsel, first came to counsel's attention on June 23, as counsel were preparing Love for his deposition. [214] 6; *see also* [211-1] 398, 400-02.[2] The production was heavily redacted, as is evident from the representative sample of

[2] At the motion hearing, both sides asserted that the existence of the documents contained in the June 2026 production became apparent during the deposition of a deputy Title IX coordinator, Rabia Khan Harvey, on June 11, 2026. *See* [211-1] 39.

the production that plaintiffs attached to their motion to compel. *See* [211-1] 245-387. When Love's deposition began, the parties briefly discussed the production:

> [Plaintiffs' counsel]: Before we begin, I just want to make a brief record that just after midnight today and about an hour before Mr. Love's deposition was scheduled to begin, Loyola produced an additional set of documents, Bates numbered Loyola 055702 through 055916. And based on our initial review, these appear to contain highly relevant OEC investigative materials and many of the documents are heavily redacted.
>
> Given the – the timing and the late production, we have not had a meaningful chance to review these documents or incorporate them in today's examination, and rather than delay the deposition, we will proceed today, but we expressly reserve the right to seek a continued deposition of Mr. Love after we've had a reasonable opportunity to review these materials and address any issues regarding the redactions. So I just want to make that clear that any topics not covered today as a result of this late production are – are not being waived by plaintiffs. And –
>
> [Defense counsel]: For – for the record, first of all, it's not a late production. As soon as we became aware of the documents, as is our obligation under the federal rules, we produced those documents as soon as possible. Also, with respect to the redactions, there are a number of redactions in this case due to FERPA concerns as well as Defendant's consistent position that any information related to individuals who are not plaintiffs in this case is irrelevant. And so the redactions that were part of yesterday's production or this morning's production are consistent with Defendant's redactions throughout its production of discovery in this case.

[*Id.*] 397-98.

### B. Parties' Arguments

Plaintiffs argue that when Loyola redacted the June 2026 production, it did not "merely redact personally identifying information or anonymize student identities, as it had consistently done throughout discovery pursuant to FERPA." [211] 15. Instead, plaintiffs maintain, Loyola went beyond those narrow categories of redactions and "redacted substantial portions of recurring Title IX case-management reports, institutional tracking spreadsheets, native Excel files, and other centralized institutional records[.]" [*Id.*]. Plaintiffs contend that redacting this kind of information is improper because "[c]ourts within this Circuit consistently reject unilateral relevance redactions" and the redactions were not authorized by the parties' ESI protocol. [*Id.*] 15-16. Whereas plaintiffs previously understood that redactions in Loyola's prior document productions were applied only to "documents falling entirely outside the scope of discovery," plaintiffs understood from the June 2026 production that Loyola made "unilateral responsiveness determinations within concededly responsive documents while simultaneously producing institutional records that had not been previously disclosed." [*Id.*] 11.

Loyola responds that plaintiffs have been on notice since June 2025 that it would not produce any documents regarding students involved in Title IX incidents who were not a named plaintiff or an assailant accused of assaulting a named plaintiff–and that Loyola would redact the names of such students from documents that were produced–but plaintiffs never challenged that position until they filed the pending motion to compel. [214] 9. Loyola further contends that the redactions in the June 2026 production "explicitly comport with these long-held and long-unchallenged positions" because the redactions pertain to Title IX incidents involving students who are not plaintiffs in this case or accused of assaulting a plaintiff. [*Id.*] 9-10. Loyola argues that plaintiffs made a strategic choice not to challenge Loyola's position that documents pertaining to students not involved in this case are irrelevant and cannot reverse course this late in the litigation. [*Id.*] 10-11. In any event, Loyola insists, its redactions to the June 2026 production were proper because the production contains "highly sensitive, non-responsive information concerning third parties." [*Id.*] at 11. Finally, Loyola asserts that plaintiffs did not properly meet and confer before filing this motion, and that the motion is untimely because it was filed on July 13, 2026, eleven days after fact discovery closed on July 2.

### C. Analysis

#### 1. Redactions to Loyola's Previous Document Productions

The Court first holds that plaintiffs' motion is untimely to the extent it seeks an order compelling Loyola to reproduce, in unredacted form, all documents it produced before the June 2026 production.

Based on the record before it, the Court finds that plaintiffs have known for more than a year–since June 2025, when Loyola served its responses to their written discovery requests–that Loyola objected to producing discovery involving (1) sexual assault victims who were not plaintiffs and (2) perpetrators who were not alleged to have assaulted one of the plaintiffs. Despite this, plaintiffs never objected to *any* of Loyola's redactions until more than a year later. And they did not specifically challenge the redactions in the earlier productions until filing this motion 11 days after fact discovery closed. *Compare Feit Elec. Co., Inc. v. CFL Techs. LLC*, No. 13 CV 9339, 2023 WL 3436346, at *7 (N.D. Ill. May 12, 2023) (motion to compel filed fourteen months after parties were at impasse was untimely). Accordingly, the motion is untimely as to the challenge to Loyola's previous document productions unless plaintiffs have a reasonable and persuasive justification for waiting so long to challenge the redactions. *See Africano*, 2019 WL 10891868, at *1. But the Court does not credit plaintiffs' assertion that the redactions to the June 2026 production "fundamentally altered" their understanding of how Loyola had redacted its previous document productions, such that the Court could conclude that it was understandable why plaintiffs did not challenge the redactions until the very end of a prolonged discovery period.[3]

Loyola made it clear in June 2025 that it objected not only to disclosing the names of victims and perpetrators of sexual assault who were not involved in this case, but also to producing any "information and records regarding" those students. [214-1] 8. That is a much broader category of information, and counsel for Loyola explained at the motion hearing that Loyola had, accordingly, not only redacted documents within its productions to ensure that names of students who were not involved in the case were shielded but also withheld entire categories of documents–such as Title IX investigative reports involving claimants who are not part of this suit and assailants who are not accused of assaulting one of the plaintiffs–from its productions. Plaintiffs' motion acknowledges–and plaintiffs' counsel confirmed at the hearing–that they were aware that Loyola was not merely redacting documents but also withholding documents from the productions. *See, e.g.*, [211] 16 (acknowledging that Loyola's prior productions included "pages marked 'WITHHELD-NOT RESPONSIVE'"). Plaintiffs also acknowledged, in an October 5, 2025, meet-and-confer letter, that Loyola was objecting that five ESI custodians proposed by plaintiffs–four victims of sexual assault who did not join this lawsuit and one assailant who was not alleged to have assaulted any plaintiff–were not relevant because of their lack of connection to the named plaintiffs and their assailants. *See* [211-1] 18-19. Plaintiffs initially disputed that position, claiming that these students were appropriate custodians because their "cases were handled by Loyola during the same time frame as plaintiffs' cases" and there were "common investigators, Title IX coordinator, advisors, survivor advocates, disciplinary authorities, hearing panelists, appellate officers, and/or respondents between these custodians and Plaintiffs." [*Id.*] 19. At the motion hearing, however, defense counsel represented that plaintiffs

[3] Fact discovery was open from December 2, 2024, through July 2, 2026. *See* [104, 198].

agreed these five proposed custodians would not be part of the parties' ESI protocol, and plaintiffs' counsel did not dispute that.

At any point during discovery, plaintiffs could have challenged Loyola's position that documents involving students who were not plaintiffs or who were not alleged to have assaulted the plaintiffs were irrelevant and would not be produced. Indeed, as plaintiffs argue in their belated motion, *see* [211] 15-18, Loyola's position was vulnerable to challenge on grounds that (1) Loyola's objection deprived them of evidence relevant to their pattern-or-practice claim, *see Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *1-5 (N.D. Ill. Jan. 24, 2020) (finding that discovery requests relating to Loyola's handling of sexual assaults involving students who were not parties to case were relevant to plaintiff's Title IX pattern-or-practice claim); and (2) a party is generally not permitted to redact what it deems to be irrelevant information within a set of admittedly responsive documents, *see Hansen v. Country Mut. Ins. Co.*, 18 CV 244, 2020 WL 5763588, at *4 (N.D. Ill. Sept. 28, 2020). Plaintiffs did not do so, however. Rather, they acquiesced in defendant's position and waited until after the fact discovery cutoff to raise these arguments.

Finally, there is nothing fundamentally different about the redactions that Loyola made to the June 2026 production compared to the redactions that plaintiffs long knew that Loyola had been making to its earlier productions. Plaintiffs' argument focuses on a lengthy Excel spreadsheet within the June 2026 production that Loyola used to track pending Title IX cases. The spreadsheet has a series of headers at the top of each page with columns for "Complainant," "Respondent," "Brief," "Next Steps," and "Assigned." [211-1] 246. A second component of the spreadsheet features additional headers: "ERP, GP, or PR"; "TIX?"; and "Critical Incident?" [*Id.*] 315. As plaintiffs accurately observe, some entire pages of the spreadsheet are redacted, as are large portions of other pages. The only unredacted portions of the spreadsheet appear to refer to Title IX complaints filed by a plaintiff or involving an assailant who assaulted a plaintiff. *E.g.*, [*id.*] 245-58, 296, 328, 331-32, 347-52, 368. Plaintiffs characterize these redactions as "unilateral relevance redactions" made by defense counsel, but the Court finds that that characterization is inaccurate. At the motion hearing, defense counsel explained that all redactions to the spreadsheet related to sexual assault complaints either (1) made by a student who is not one of the plaintiffs or (2) involving an assailant not alleged to have assaulted one of the plaintiffs. Those redactions are therefore entirely consistent with the relevance objections that Loyola announced in its June 2025 responses to written discovery–and that plaintiffs knew that Loyola was making throughout its rolling production of ESI. But even if plaintiffs' characterization of the redactions were accurate–and it is not–that does not provide a reasonable and persuasive justification for their belated decision to seek unredacted versions of all prior defense productions. Accordingly, the Court denies the motion to compel as to plaintiffs' request for unredacted versions of Loyola's prior document productions as untimely. *See Africano*, 2019 WL 10891868, at *1.

### 2. Redactions to the June 2026 Production

Given the Court's resolution of plaintiffs' challenge to Loyola's prior document productions, *supra*, the Court also denies the motion as it relates to the June 2026 production.

The Court credits defense counsel's explanation in the briefing and at the September 2, 2026, motion hearing that the redactions to the June 2026 production concern only sexual assault complaints made by students who are not plaintiffs in this lawsuit or that involve an assailant who is not alleged to have assaulted one of the plaintiffs. Thus, the redactions represent a reiteration of the same objections that Loyola has stood on for more than a year, that were repeatedly made known to plaintiffs during fact discovery, and that plaintiffs did not challenge until after fact discovery closed. Contrary to plaintiffs' position, this was not a new issue that arose unexpectedly at the tail end of discovery because Loyola had made unforeseen "unilateral relevance redactions." Instead, the redactions in the June 2026 production are a direct product of Loyola's June 2025 objections and their decision to withhold "information and records regarding students other than Plaintiffs in this lawsuit." [214-1] 8. Just as Loyola previously withheld from their productions of Title IX complaints and investigative materials relating to non-plaintiff students and non-plaintiff assailants, Loyola redacted the June 2026 production to remove information pertaining to those same categories of students. The only difference–and the reason why the June 2026 production appears to contain more redactions than defendant's prior productions–is that the June 2026 production contains multiple documents in which information about plaintiffs and/or their assailants is combined with information about students whose Title IX cases were, according to Loyola, irrelevant. Plaintiffs' failure to challenge Loyola's objections earlier in the litigation is a direct cause of why the June 2026 document production was given to them in redacted form. In other words, this is a foreseeable iteration of defendant's longstanding objections and its repeated indication to plaintiffs that Loyola would not produce documents relating to complaints not made by one of the plaintiffs and not involving one of the plaintiffs' assailants. And despite receiving the production before the fact discovery cutoff, plaintiffs did not seek judicial intervention into the dispute until after fact discovery closed. For these reasons, the Court denies this part of the motion to compel as untimely. *See Africano*, 2019 WL 10891868, at *1.

## II. Deposition of Thomas Kelly

Plaintiffs next argue that Loyola should be required to produce Thomas Kelly for a deposition. Kelly was Loyola's Title IX coordinator from 2013 to 2016 and, according to plaintiffs, "participated in resolving [one plaintiff's] Title IX complaint." [211] 14. Plaintiffs contend that, despite Kelly being one of the two Title IX coordinators during the relevant period, Loyola failed to identify him in its Rule 26(a)(1) disclosures or in response to four of plaintiffs' interrogatories. [*Id.*]. As a

result, plaintiffs contend that they did not learn about Kelly or appreciate his significance to the case until plaintiffs deposed Khan Harvey on June 11. [*Id.*] 8. Finally, plaintiffs contend that they requested Kelly's deposition after June 11 and before the close of discovery, but Loyola "declined," [*id.*] 8, and "refused," [*id.*] 14, to produce him. Defendant responds that it had no obligation to disclose Kelly in its initial disclosures because it does not intend to use Kelly to support its defense. [214] 15. Loyola also disputes that it was required to identify Kelly in response to interrogatories 1, 2, 10, and 11. [214] 6 n.3, 15. Loyola also emphasizes that Kelly was identified as its Title IX coordinator in a 2015 audit document that was produced to plaintiffs on August 27, 2025, and that plaintiffs discussed this audit at Khan Harvey's deposition and "used those same audit documents as exhibits during multiple depositions." [*Id.*] 15. Finally, Loyola argues that plaintiffs never served a notice for Kelly's deposition after they allegedly discovered his importance on June 11. [*Id.*].

The Court denies this part of the motion to compel for two reasons.

First, plaintiffs have not offered a "reasonable and persuasive" justification for seeking Kelly's deposition after fact discovery closed. *Africano*, 2019 WL 10891868, at *1. While plaintiffs contend that they did not learn of Kelly's role in the case until June 11, the Court does not credit that claim. The 2015 audit document that defendant produced on August 27, 2025, makes multiple references to "Thomas M. Kelly – Title IX Coordinator" and is even addressed to Kelly. *See* [214-11]. Plaintiffs' counsel confirmed at the motion hearing that this document was produced to her side in August 2025. Audit documents were on plaintiffs' radar, moreover, as plaintiffs' counsel questioned Khan Harvey about them at her deposition. *See* [211-1] 99 (asking whether "between 2012 and 2015 there were any audits conducted of the Title IX office at Loyola"). The Court therefore finds that plaintiffs discovered or could have discovered Kelly's identity and the role he played in the case before June 11, notwithstanding the omission of Kelly from defendant's responses to plaintiffs' interrogatories.[4]

[4] At the motion hearing, the Court heard argument on whether Kelly should have been identified in response to plaintiffs' interrogatories. On the one hand, the Court finds it surprising that Kelly, one of Loyola's two Title IX coordinators during the relevant period, would not be identified in response to interrogatories asking for the identities of all individuals involved in the investigation and decision-making processes regarding plaintiffs' sexual assault complaints and the findings related to those complaints. [214-1] 3, 17. On the other, Loyola objected to interrogatory 10–perhaps the interrogatory that most clearly sought Kelly's identity, *see* [*id.*] 17–on multiple grounds, including that plaintiffs had already exceeded the 25-interrogatory cap set by Rule 33(a)(1) because their previous interrogatories contained multiple subparts that inquired into discrete areas. *See* [*id.*] 17-18. That objection does not appear to have been challenged by plaintiffs, and it was never the subject of motion practice before the Court. Given how the Court is resolving the request to depose Kelly, the Court need not also decide if Kelly should have been identified in Loyola's interrogatory responses. But the Court finds that Loyola was not obligated to identify Kelly in its Rule

Second, and timeliness aside, plaintiffs could simply have served Kelly with a deposition notice after June 11, 2026, when they claim to have more fully understood his importance to the case. Fact discovery was open for another three weeks, yet plaintiffs took no action to secure Kelly's appearance at a deposition. And though plaintiffs claim that defendant declined and refused to produce Kelly for a deposition, they cite no evidence showing that defendant did so while discovery was open. The only evidence the Court could find relating to this claim is a meet-and-confer letter that defense counsel served on plaintiffs on July 13–more than ten days after the discovery cutoff–and that reflects Loyola's position that it "will not produce Thomas Kelly for deposition" because "discovery is over." [211-1] 475. Refusing to produce a witness for a deposition after the close of discovery is not the same as refusing to produce that witness before a discovery cutoff and in response to a proper notice. For this reason, too, the motion is denied.

## III. Reopening Timothy Love's Deposition

Plaintiffs also seek to reopen the deposition of Timothy Love, the Title IX coordinator who succeeded Kelly. Plaintiffs contend that their ability to depose Love was prejudiced when Loyola served the June 2026 production only hours before his deposition, thus preventing plaintiffs from meaningfully questioning him about those documents. [211] 15.

The Court denies this portion of the motion for three reasons. First, there is no indication in plaintiffs' motion or Rule 37.2 certificate that the parties met and conferred in-person or by videoconference regarding this request, as the undersigned's standing order on discovery motions requires. *See* [211] 8-9; [211-1] 6-8. Loyola also points out that, when plaintiffs' counsel sent defense counsel an email on July 2, 2026, as a "final good-faith effort to determine whether the outstanding discovery deficiencies" could be resolved, the email did not include a request to discuss reopening Love's deposition. *See* [214-8] 1-2. The Court therefore finds that plaintiffs did not exhaust their meet-and-confer obligations as to this dispute before moving to compel, and the motion is denied on that basis. *See Int'l Star Registry of Illinois, Ltd. v. RGifts Ltd.*, No. 21 CV 6446, 2025 WL 3070877, at *2 (N.D. Ill. Jan. 10, 2025) (recognizing that "failure to comply with Local Rule 37.2 . . . is itself grounds to deny a discovery motion"). Second, this part of the motion is also untimely, and plaintiffs do not explain why they could not have moved to compel a reopened deposition of Love before the July 2 discovery cutoff. *See Africano*, 2019 WL 10891868, at *1. Third, the Court denies the motion because plaintiffs have not demonstrated that reopening

26(a)(1) disclosures given its representation that it does not intend to rely on him to support its case. *See, e.g.*, *Midkiff v. Navient Sols., Inc.*, No. 1:20-cv-1962-TWP-MJD, 2021 WL 3810356, at *3 (S.D. Ind. Aug. 26, 2021) (concluding that defendant was "not obligated to provide . . . information" sought by plaintiff's motion to compel supplements to initial disclosures where "[d]efendant does not intend to use any of the individuals in question or the information they have as witnesses in this case").

Love's deposition is necessary to cure the "substantial[ ] prejudice[ ]" allegedly caused by Loyola's production of the June 2026 production shortly before Love's deposition. [211] 15. Plaintiffs contend that they could not meaningfully review the production before the deposition, "particularly given the extensive substantive redactions throughout the production." [*Id.*] 15. As discussed above, however, the redactions all pertain to evidence that Loyola has long contended–without timely objection from plaintiffs–was irrelevant: sexual assault complaints that were not made by any plaintiff and that do not involve any assailant who allegedly assaulted a plaintiff. Furthermore, defendant represents that the unredacted portions of the June 2026 production relating to plaintiffs merely reflect information from or about plaintiffs' own complaint files, which were "produced to Plaintiffs by February 20, 2026." [214] 11. In these circumstances, the Court cannot find that Loyola's service of the June 2026 production hours before Love's deposition prejudiced plaintiffs' ability to depose him, such that fairness requires the deposition to be reopened.

## IV. Rule 30(b)(6) Deposition

Finally, plaintiffs ask that Loyola be compelled to produce one or more 30(b)(6) representatives for a deposition. In support, plaintiffs contend that they timely served a Rule 30(b)(6) notice, but Loyola objected to their request and simply "refused to produce any Rule 30(b)(6) witness." [211] 19.

On June 8, 2026, plaintiffs served a Rule 30(b)(6) notice on Loyola stating that plaintiffs would depose Loyola's representative(s) on July 1. *See* [211-1] 424-33.[5] Ten days later, Loyola served plaintiffs with a lengthy objection to the notice. [*Id.*] 436-53. Loyola contended that the twenty proposed topics were excessive, unreasonable, and represented "a laundry list of nearly every conceivable facet of this litigation." [*Id.*] 436. Loyola also requested that plaintiffs amend and narrow the proposed topics. [*Id.*] 437. The parties met and conferred on this issue on June 26, during the lunch break of a different deposition, after which plaintiffs agreed to reply to the defense objections no later than June 29. *See* [214-5] 1. However, plaintiffs never served that reply. Rather, on June 30, plaintiffs told Loyola that "we are calling [*sic*] down the deposition notice for tomorrow" based on Loyola's refusal to produce a representative until the parties' dispute over the scope of the deposition was resolved. [214-10] 1-2. Plaintiffs also stated that they expected Loyola to agree to a proposed motion to extend the discovery cutoff so that the parties could continue to confer on the deposition topics and, if necessary, litigate a motion to compel. [*Id.*] 1. But plaintiffs did not seek to extend the July 2 discovery cutoff, instead filing this motion to compel 11 days after it passed.

Given the course of events just described, the Court exercises its discretion to find this part of the motion untimely and meritless. *See Chicago Reg'l Council of*

[5] The notice is dated May 8, 2026, but it was not served on Loyola until the following month. *Compare* [214-3] 1, 13, *with* [*id.*] 12.

*Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018) ("the resolution of discovery disputes is committed to the court's extremely broad discretion"). The motion is presumptively untimely because it was filed after the discovery cutoff, and plaintiffs have not offered a "reasonable and persuasive" justification for seeking the deposition after the close of fact discovery. *Africano*, 2019 WL 10891868, at *1. Plaintiffs emphasize that "Loyola objected and refused to produce any Rule 30(b)(6) witness," [211] 14, but objecting in good-faith[6] to a Rule 30(b)(6) notice is par for the course in civil litigation, as is a party's refusal to produce a 30(b)(6) designee when its objections to the notice have not even been replied to by–let alone resolved with–its opponent. Loyola served its objections only ten days after receiving the notice, and in the Court's view it was reasonable for Loyola to seek a resolution of those objections before undertaking the burden of identifying, educating, and producing one or more designees for a 30(b)(6) deposition. After all, "[f]or a Rule 30(b)(6) deposition to operate effectively, the deposing party must designate the areas of inquiry with reasonable particularity, and the corporation must designate and adequately prepare witnesses to address these matters." *Lang v. Colonial Penn Life Ins. Co.*, No. 21-cv-6290, 2022 WL 4465719, at *2 (N.D. Ill. Sept. 26, 2022). Because "[t]he task of educating and presenting a representative deponent to testify on the topics in the notice can be burdensome," *Centurylink Commc'ns LLC v. Peerless Network, Inc.*, Case No. 18 C 3114, 2020 WL 11647818, at *1 (N.D. Ill. Jan. 28, 2020), the fact that Loyola sought to resolve its objections before producing a Rule 30(b)(6) and also would have needed additional time once those objections had been resolved to produce a properly educated witness cannot excuse plaintiffs' failure to ensure that the deposition occurred within the fact discovery period or to file an appropriate discovery motion before the cutoff. The Court therefore finds that plaintiffs' motion is untimely to the extent that it seeks to compel Loyola to produce a 30(b)(6) representative for a deposition.

Timeliness aside, plaintiffs are not entitled to take a Rule 30(b)(6) deposition now. For one thing, plaintiffs did not exhaust their meet-and-confer obligations before moving to compel. Although plaintiffs represented that they would reply to defendant's objections to the 30(b)(6) notice, they never did so and, in fact, withdrew the Rule 30(b)(6) deposition notice. The scope of any Rule 30(b)(6) deposition is therefore as unsettled now as it was at the end of June because plaintiffs failed to bring to impasse the parties' dispute over the propriety of the proposed topics. For another, plaintiffs failed to obtain 30(b)(6) testimony during the discovery period because they waited until June 8–less than a month before discovery was set to close–to begin the process of noticing and taking the deposition. Given the complexity of this case (which involves ten plaintiffs suing over events that took place during a decade-long period), the foreseeable need to meet and confer about the scope of any

[6] Plaintiffs do not contend that defendant's objections to the 30(b)(6) notice were made in bad faith or a stalling tactic. *See* [214-10] 2 (June 30, 2026, email from plaintiffs' counsel to defense counsel stating that "Plaintiffs are amenable to narrowing certain Rule 30(b)(6) topics in a good-faith effort to move the deposition forward").

30(b)(6) notice, and their simultaneous pursuit of multiple other discovery items, *see* [211-1] 5-6, plaintiffs simply left themselves too little time to complete the 30(b)(6) deposition. For these additional reasons, the motion is denied as to the Rule 30(b)(6) deposition.

## Conclusion

Plaintiffs' motion to compel institutional discovery [211] is denied.

Heather K. McShain

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 13, 2026**